# EXHIBIT B

# All other process, pleadings, discovery, and orders Defendants have received to date in this action

Electronically Filed
10/7/2025 3:37 PM
Steven D. Grierson
CLERK OF THE COURT

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,
Ecoark, Inc., and Hyperscale Data, Inc.*

CASE NO. A-25-929990-B
Department 9

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation;<br><br>Plaintiffs,<br><br>v.<br><br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual;<br><br>Defendants. | CASE NO.<br>DEPT. NO.<br><br><br>**INITIAL APPEARANCE FEE DISCLOSURE** |

Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for parties appearing in the above-entitled action as indicated below:

**NAME OF PLAINTIFF(S):**

RiskOn International, Inc. ............................................................................$1,530.00

Ecoark, Inc. ................................................................................................. $30.00

Hyperscale Data, Inc. .................................................................................. $30.00

HOWARD & HOWARD ATTORNEYS PLLC

TOTAL REMITTED..................................................................................$1,590.00

Dated: this 7th day of October, 2025

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By:    /s/ Todd E. Kennedy,
Todd E. Kennedy, Esq.
Martin A. Little, Esq.
Jonathan W. Fountain, Esq.
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483

*Attorneys for Plaintiffs RiskOn International,
Ecoark, Inc., and Hyperscale Data, Inc.*

**Electronically Filed**
**10/13/2025 8:46 AM**
**Steven D. Grierson**
**CLERK OF THE COURT**

Todd E. Kennedy, Esq.

Nevada Bar No. 6014

Martin A. Little, Esq.

Nevada Bar No. 7067

Jonathan W. Fountain, Esq.

Nevada Bar No. 10351

HOWARD & HOWARD ATTORNEYS PLLC

3800 Howard Hughes Parkway, Suite 1000

Las Vegas, Nevada 89169

Telephone: (702) 257-1483

Email: tek@h2law.com

Email: mal@h2law.com

Email: jwf@h2law.com

Attorneys for Plaintiffs RiskOn International,

Ecoark, Inc., and Hyperscale Data, Inc.

## DISTRICT COURT, CLARK COUNTY, NEVADA

| **Plaintiff / Petitioner:** RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation | **Case No:** A-25-929990-B Department 9 |
|---|---|
| **Defendant / Respondent:** ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual | AFFIDAVIT/DECLARATION OF SERVICE ZEST LABS HOLDINGS, LLC |

I, MAKAYLA JENKINS, R-2024-01065, being duly sworn, or under penalty of perjury, state that at all times relevant, I was over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents.

That on Fri, Oct 10 2025 at 01:16 PM, at the address of 8275 SOUTH EASTERN AVENUE #200, within LAS VEGAS, NV, the undersigned duly served the following document(s): SUMMONS, VERIFIED COMPLAINT (JURY DEMAND) in the above entitled action upon ZEST LABS HOLDINGS, LLC, by then and there, personally delivering 1 true and correct copy(ies) of the above documents to CORPORATE CREATIONS NETWORK INC., REGISTERED AGENT by leaving with Marcy Wyatt, PER NEVADA REVISED STATUTE 14.020 2. as a person of suitable age and discretion at the address above, which address is the most recent street address of the registered agent shown on the information filed with the

///

///

///

Secretary of State pursuant to chapter 77 of NRS.

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct. No Notary is Required per NRS 53.045.

**Date:**   10/11/2025

MAKAYLA JENKINS, R-2024-01065

ACE Executive Services, LLC (NV #2021C)
8275 S EASTERN AVE STE 200
LAS VEGAS, NV 89123
Job: 14346016 (130350.1)

Electronically Filed
10/14/2025 3:28 PM

CLERK OF THE COURT

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,
Ecoark, Inc., and Hyperscale Data, Inc.*

**EIGHTH JUDICAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation;<br><br>Plaintiffs,<br><br>v.<br><br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual;<br><br>Defendants. | Case No. A-25-929990-B<br><br>Dept. No. 9<br><br>**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND REQUEST FOR ORDER SHORTENING TIME**<br><br>(Hearing Requested on Order Shortening Time) |

Pursuant to Rule 65 of the Nevada Rules of Civil Procedure, Plaintiffs RiskOn International, Inc. (formerly known as BitNile Metaverse, Inc. and Ecoark Holdings, Inc.), Ecoark, Inc., and Hyperscale Data Inc. (collectively "Plaintiffs"), hereby move the Court, pursuant to E.D.C.R. 2.26 on shortened time, for entry of a temporary restraining order and preliminary injunction maintaining the status quo and enjoining and restraining Defendants Zest Labs Holdings, LLC ("Zest Holdings") and Gary Metzger ("Metzger" and collectively with Zest Holdings, "Defendants") from spending or transferring any portion of the proceeds received by Defendant Zest Holdings in connection with litigation against Walmart in the United States District Court for the District of Arkansas without the express consent of Plaintiffs or written order of this Court.

- 1 -

HOWARD & HOWARD ATTORNEYS PLLC

4902-5548-4787, v. 1

This motion is supported by the following Declaration of Jonathan W. Fountain, by the Verified Complaint, and the exhibits thereto, by the following memorandum of points and authorities, and by any oral argument the Court may request.

Dated: this 14th day of October, 2025.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ Jonathan W. Fountain
Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International, Ecoark, Inc., and Hyperscale Data, Inc.*

## ORDER SHORTENING TIME

Good cause appearing, **IT IS HEREBY ORDERED**, that the foregoing PLAITIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

October 23, 2025, at 10:00 AM, special setting

shall be heard on the _____th day of October, 2025, at the hour of _____ am/pm.

The October 23, 2025, hearing is for the temporary restraining order only.  Notice of this motion and the hearing must be immediately provided to Zest with a certificate of service/notice filed identifying how and when notice was made.

Dated:_____

**Dated this 14th day of October, 2025**

**8A1 635 7E56 A947**
**Maria Gall**
**District Court Judge**

- 2 -

4902-5548-4787, v. 1

**DECLARATION OF JONATHAN W. FOUNTAIN IN SUPPORT OF PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

I, Jonathan W. Fountain, state the following:

1.      I am over eighteen (18) years of age and am an attorney with the law firm of Howard & Howard Attorneys PLLC. I am licensed to practice law in the State of Nevada and Michigan, have personal knowledge of the facts set forth herein, and would competently testify to the same if called to do so. I am counsel for Plaintiffs in the above-captioned action and make this declaration in support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

2.      This motion arises out of Defendant Zest Labs Holdings LLC's ("Zest Holdings") stated intention to distribute tens of million dollars of litigation proceeds to an unrelated third party in violation of Zest Holdings' contractual obligations to Plaintiffs Ecoark, Inc. ("Ecoark") and its parent company RiskOn International ("RiskOn"). Without this court's immediate action to preserve the status quo, there is imminent risk that Zest Holdings will either spend or irrevocably transfer the funds, which are its sole asset, irreparably harming Plaintiffs.

3.      Under a Stock Purchase Agreement (the "SPA"), dated August 28, 2023 (attached to the Complaint as Exhibit 1), Plaintiffs RiskOn and Ecoark transferred a valuable claim against Walmart Inc. ("Walmart") to Defendant Zest Holdings, a company formed for the sole purpose of acquiring the claim. In exchange, Defendant Zest Holdings agreed to "facilitate the distribution of net proceeds derived from" litigation against Walmart to Plaintiff RiskOn's "security holders of record as of November 15, 2022." (Verified Compl. Ex. 1, 1.) Defendants, however, never took steps to identify RiskOn's shareholders as of November 15, 2022. Now, unable to make the required distributions, Defendants have threatened to *irrevocably* transfer those discrete funds to unrelated third parties who were not the intended recipients, rendering Zest Holdings without assets to answer to Plaintiffs and RiskOn shareholders for their wrongdoing and/or squander them on excessive and inappropriate expenses, including fees not allowed by the SPA.

4.      The Verified Complaint in this action was filed on October 7, 2025.

5.      It alleges that under the SPA, Zest Holdings is obligated to "facilitate the distribution of net proceeds derived from" litigation against Walmart to Plaintiff RiskOn's "security holders of

- 3 -

4902-5548-4787, v. 1

record as of November 15, 2022." (Verified Compl. Ex. 1, 1.) Zest Holdings' obligation under the SPA to make a distribution to RiskOn security holders has since been triggered. Notwithstanding that obligation, correspondence with Zest Holdings' counsel over the last two months has revealed that: (a) Zest Holdings intends to distribute approximately 80% of the net proceeds to unintended recipients, from which the proceeds would be irretrievable; (b) it refuses to inform Plaintiffs how it plans to calculate "net" proceeds; (c) it has incurred tens of millions of dollars in "expenses" that it intends to deduct from the litigation proceeds; and (d) it will further inflate these so-called "expenses" by retaining unnecessary and costly professionals. In sum, Defendants intend to either shuttle proceeds off to third parties from whom Plaintiffs cannot recover the proceeds and/or to squander such proceeds on unnecessary and inappropriate fees.

6. The Walmart Litigation proceeds are a discrete fund. As a result, any transfer of those funds to unintended third parties, or any reckless spending by Defendants, will necessarily deplete the funds, which properly belong to Plaintiffs and RiskOn's shareholders. Defendant Zest Holdings has no other business or assets; the distribution of the funds will leave Plaintiffs without any remedy whatsoever. The Court's immediate action is, therefore, required to preserve the status quo and avoid irreparable harm.

7. Indeed, on October 7, 2025, counsel for Zest Holdings distributed a letter to RiskOn's shareholders detailing Zest Holdings' intent to imminently distribute funds to the Depository Trust Company ("DTC"), rather than to RiskOn's actual, qualified shareholders. A true and correct copy of that letter is attached as Exhibit 1.

8. In that letter, Zest Holdings stated that it "will be distributing to all Record Holders a certain percentage and share in the net proceeds from" the Walmart Litigation. (*10/7/25 Letter*, Ex. 1, emphasis added).

9. This innocuous phrasing masks the true impact of the letter. In correspondence with counsel for Zest Holdings, Defendants have taken the position that because approximately 80% of shares are recorded in the company's ledgers as "Cede & Co." as the nominee company for DTC, DTC is a "security holder of record as of November 15, 2022" and thereby it, DTC, is entitled to a distribution of the proceeds. (Verified Compl. Ex. 1, 1.). By stating that Zest Holdings intends to

- 4 -

4902-5548-4787, v. 1

distribute the net proceeds to "all Record Holders," Defendants confirm that they intend to imminently send millions of dollars to DTC, from whom Plaintiffs will be unable to recover.

10.    As explained in the Declaration of Henry Nisser, a member of the Board of Directors of RiskOn and the President and General Counsel of Hyperscale Data, Inc., Defendants' plan fundamentally misunderstands the role of DTC, would irreparably harm Plaintiffs, and is contrary to the intent of the parties to the SPA. A true and correct copy of Mr. Nisser's declaration is attached as Exhibit 2.

11.    Accordingly, an expedited hearing to consider Plaintiffs' request for immediate injunctive relief is required to maintain the status quo and protect Plaintiffs' rights under the SPA.

12.    This application for an order shortening time and accompanying motion are made in good faith and not for the purpose of delay.

13.    Defendant Zest Holdings was served with the Complaint on October 10, 2025. Contemporaneously with the submission of this Motion and Request for Order Shortening Time, I have emailed the out of state counsel representing Zest Holdings and presumably Mr. Metzger, Mr. Dhaivat Shah (ds@grellas.com) a copy of the Complaint and this Motion.

* * *

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 14, 2025        /s/ Jonathan W. Fountain
                                     JONATHAN W. FOUNTAIN

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Without immediate action from the Court to preserve the status quo, Defendants will transfer funds that are due to Plaintiffs and Plaintiff RiskOn's qualified shareholders to unintended third parties, or otherwise squander those funds on unnecessary and costly professional services. Immediate injunctive relief is required to preserve the status quo.

This dispute centers on Defendant Zest Holdings' failure to satisfy its contractual obligations under the SPA. In that document, Ecoark agreed to sell its entire interest in Zest Subsidiary (which,

- 5 -

HOWARD & HOWARD ATTORNEYS PLLC

at the time, held valuable claims against Walmart) to Zest Holdings. (Verified Compl. at ¶ 13.) In exchange, Zest Holdings—which was created "for the purpose of acquiring Zest Subsidiary and later distributing any proceeds from the Walmart Litigation"—agreed to "facilitate the distribution of net proceeds derived from" the Walmart Litigation to Plaintiff RiskOn's shareholders who held shares of RiskOn as of November 15, 2022. (*Id.* at ¶¶ 12-13.) Defendant Zest Holdings made no other payment to RiskOn (or Ecoark) in exchange for 100% of the shares of Zest Subsidiary. (*Id.*) Zest Holdings' sole obligation under the SPA was to receive the proceeds from the Walmart Litigation and distribute the net proceeds to RiskOn's qualified shareholders. (*Id.* at ¶ 14.) In a Current Report on Form 8-K filed on September 1, 2023 with the Securities and Exchange Commission, Plaintiff RiskOn explained that Zest Holdings was a "new entity specifically created for this spin-off" intended to "preserve and monetize ongoing lawsuits involving Zest Labs" and that the transaction was "intended to fulfill the Company's previous commitment to spin-off Zest Labs to those shareholders who held the Company's common stock as of November 15, 2022." The Form 8-K is attached to the Verified Complaint as Exhibit 2.

But after the SPA was executed, Defendants failed to take any steps necessary to properly identify the stockholders who owned RiskOn stock as of November 15, 2022 and were owed a distribution. (*Id.* at ¶ 15.) This was a fatal error. Approximately 80% of RiskOn's shares were held through brokerage accounts. (*Id.*) As a result, approximately 80% of RiskOn's shares appeared on its stock ledger collectively as "Cede & Co.," a nominee name for the Depository Trust Company ("DTC"). (*Id.* at ¶ 20, *Nisser Decl.,* Ex. 2 at ¶ 4.) But DTC does not maintain records of shares held in individual brokerage accounts, and instead only records the ownership of shares held by its "participants," large broker-dealers who act as clearing brokers. (*Id.*, Ex. 2 at ¶ 7.) As a result, Defendants are unable to reliably identify approximately 80% of RiskOn shareholders entitled to receive distributions and are, therefore, unable to fulfill their contractual and fiduciary duties under the SPA. (Verified Compl. at ¶ 15.)

In June 2025, it was publicly reported that Zest Subsidiary had secured a $222.7 million verdict against Walmart in the Walmart Litigation. (*Id.* at ¶ 16.) (A June 2025 press report is attached to the Verified Complaint as Exhibit 3). And on July 30, 2025, press reports announced that the

- 6 -

parties had reached a post-verdict settlement of the litigation, which provided Zest Holdings with a substantial cash payment. (*Id.*) (A July 30, 2025, press report is attached to the Verified Complaint as Exhibit 4). Despite their obligations under the SPA, Defendants have failed to make any distribution from the Walmart Litigation proceeds to date.

In fact, Defendants have totally refused to cooperate with Plaintiffs and have instead embarked on a plan to squander the proceeds and irrevocably transfer those funds to unintended third parties. First, Defendants have run up significant "expenses" that they intend to deduct from the Walmart Litigation proceeds, such that only one-third or less of the proceeds may be available for distribution. (*Id.* at ¶ 18.) These expenses include charges for defendant Metzger's services that were not authorized by the SPA. Defendants have firmly rejected multiple requests from Plaintiffs for documentation of these expenses, claiming that Plaintiffs have no rights under the SPA to that information. (*Id.*)

Second, Defendants have stated that they will distribute the proceeds not to investors who actually owned RiskOn shares on November 15, 2022, but instead to DTC. On October 7, 2025, Defendants issued a letter to dozens of RiskOn shareholders stating that they intend to imminently issue a multi-million dollar check to DTC. (*Id.* at 21.) Neither DTC nor its participants can determine share ownership by individual account holders three years after the fact. (*Id.* at ¶ 20, *Nisser Decl., Ex. 2 at ¶ 11.*) Defendants' conduct would irreparably harm Plaintiffs by shuttling the proceeds into a black hole from which they could not be retrieved. (*Id.* at ¶ 21.) As a matter of law and equity, all undistributed funds should be returned to Plaintiffs RiskOn and Ecoark.

Through this motion, Plaintiffs seek to preserve the status quo, preventing Defendants from depleting the proceeds through their reckless spending spree or their haphazard plan to irrevocably send many millions of dollars to an unrelated third party.

## II.    LEGAL STANDARD

Nevada Rule of Civil Procedure 65 governs injunctions and restraining orders. It states, in most relevant part, the following:

**Rule 65. Injunctions and Restraining Orders**

(a) Preliminary Injunction.

- 7 -

4902-5548-4787, v. 1

(1) Notice. The court may issue a preliminary injunction only on notice to the adverse party.

(2) Consolidating the Hearing With the Trial on the Merits. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

(b) Temporary Restraining Order.

(1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

(2) Contents; Expiration. Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry — not to exceed 14 days — that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

(3) Expediting the Preliminary-Injunction Hearing. If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

(4) Motion to Dissolve. On 2 days' notice to the party who obtained the order without notice — or on shorter notice set by the court — the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

(c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The State, its officers, and its agencies are not required to give security.

(d) Contents and Scope of Every Injunction and Restraining Order.

(1) Contents. Every order granting an injunction and every restraining order must:

(A) state the reasons why it issued;

(B) state its terms specifically; and

4902-5548-4787, v. 1

(C) describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required.

(2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

(e) Applicability.

(1) When Inapplicable. This rule is not applicable to actions for divorce, alimony, separate maintenance, or custody of children. In such actions, the court may make prohibitive or mandatory orders, with or without notice or bond, as may be just.

(2) Other Laws Not Modified. These rules supplement and do not modify statutory injunction provisions.

Nev. R. Civ. P. 65.

The grant or denial of preliminary injunctive relief is entrusted to the sound discretion of the district court. *Labor Comm'r of State of Nev. v. Littlefield*, 123 Nev. 35, 38, 153 P. 3d 26, 28 (2007), which the Nevada Supreme Court reviews deferentially, for abuse of discretion. *S.O.C., Inc. v. Mirage Casino–Hotel*, 117 Nev. 403, 407, 23 P.3d 243, 246 (2001). A preliminary injunction is proper when the moving party can demonstrate that it will suffer irreparable harm for which compensatory damages would not suffice if the action complained of is not halted and that it has a reasonable likelihood of success on the merits. *See* NRS 33.010; *Boulder Oaks Cmty. Ass'n v. B & J Andrews Enters.*, LLC, 125 Nev. 397, 403, 215 P.3d 27, 31 (2009). Courts also weigh the potential hardships to the relative parties and others, and the public interest. *Univ. & Cmty. Coll. Sys. of Nevada v. Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004).

III.   **ARGUMENT**

A.   **Plaintiffs are Reasonably Likely to Succeed on the Merits of their Breach of Contract Claims Because Defendants Failed To Perform**

The Complaint alleges the following causes of action against Defendants: Count I (declaratory relief); Count II (Breach of Contract); Count III (Breach of Implied Covenant of Good

- 9 -

Faith and Fair Dealing); Count IV (Accounting); Count V (Constructive Trust); Count VI (Replevin). For the purposes of this motion, Plaintiffs will focus only on their likelihood of success on the breach of contract claim.

To prevail on a breach of contract claim, the plaintiff must "demonstrate that a valid contract exists, there was a breach of the contract, and that damages occurred." *Sherman v. Smead*, No. 83603-COA, 2023 Nev. App. Unpub. LEXIS 144, at *9 (Nev. Ct. App. Apr. 14, 2023). A contract is breached where a contractual party materially fails "to perform 'a duty arising under or imposed by [the] agreement.'" *Id.* (quoting *Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 135, 734 P.2d 1238, 1240 (1987)).

There is no dispute that the SPA is a valid contract between Plaintiff Ecoark and Defendant Zest Holdings. As alleged in the Complaint, "[o]n August 28, 2023, Plaintiff RiskOn's subsidiary, Plaintiff Ecoark, entered into a Stock Purchase Agreement (the "SPA") with Defendant Zest Holdings." (Verified Compl. at ¶ 13.) Similarly, it is undisputed that Plaintiff Ecoark performed its obligations under the SPA, as it sold 100% of its shares of Zest Subsidiary to Zest Holdings. (*Id.*)

The Complaint further alleges that Zest Holdings has materially breached its obligations under the SPA. Under the SPA, Zest Holdings was obligated to "facilitate the distribution of net proceeds derived from" the Walmart Litigation to Plaintiff RiskOn's shareholders as of November 15, 2022. (*Id.*) But Zest Holdings took no steps to ensure that the distribution could actually be facilitated. Specifically, Zest Holdings failed to identify the RiskOn shareholders who owned RiskOn stock as of November 15, 2022, which is now impossible on a retroactive basis. (*Id.* at ¶¶ 15, 19.) Moreover, Plaintiffs are in further breach because, to date, they have failed to make any distribution of proceeds to any RiskOn shareholders, including those, like Plaintiff Hyperscale, that have proactively provided Zest Holdings with evidence of their holdings as of November 15, 2022. (*Id.* at ¶¶ 19-23; 30-31.)

These breaches have materially damaged Plaintiffs and threaten them with irreparable harm. The Complaint alleges that Defendants' breach is "material and substantial to such a degree as to treat the SPA as terminated and/or rescinded, and indeed, that actions and threatened actions of Defendants are such that the purpose and intent of the SPA has been destroyed." (*Id.* at ¶ 30.)

- 10 -

HOWARD & HOWARD ATTORNEYS PLLC

Plaintiffs' stated intent to distribute the net proceeds to DTC further breaches the contract and threatens to permanently and irrevocably deprive Plaintiffs of those funds. (*Id.* at ¶ 21; *10/7/25 Letter*, Ex. 1.) Moreover, a distribution to DTC is contrary to the clear intent of the SPA for Zest Holdings to facilitate a distribution to RiskOn shareholders, including the majority of RiskOn shareholders who hold shares through brokerage accounts. The SPA does not intend for Zest Holdings to complete a technical "distribution," which would rob those beneficial owners of ever receiving a distribution. (*Nisser Decl.,* Ex. 2 at ¶¶ 13, 15-16.) The harm arising from "Defendants' failure to distribute the Walmart Litigation proceeds to RiskOn's eligible shareholders is unquantifiable." (Verified Compl. at ¶ 31.)

Plaintiffs' breach of contract count states a textbook claim for the recovery of restitution. A plaintiff who has fully performed under a contract "has a claim to restitution for the profit realized by the promisor as a result of the breach" when "a deliberate breach of contract results in profit to the defaulting promisor and the available damage remedy affords inadequate protection to the promisee's contractual entitlement." Restatement (Third) of Restitution and Unjust Enrichment § 39(1) (Am. Law Inst. 2011). *Korte Constr. Co. v. State on Relation of Board of Regents of Nevada System of Higher Edu.,*137 Nev 378, 381, 492 P.3d 540, 543 (2021) ("Nevada jurisprudence relies on the First and Third Restatements of Restitution and Unjust Enrichment for guidance.") Here, there is no dispute that Plaintiff Ecoark "fully performed under" the SPA: Plaintiff Ecoark undeniably transferred its shares in Zest Subsidiary to Defendant Zest Holding. (Verified Compl. at ¶ 13.) By receiving the Walmart Litigation proceeds and retaining them, spending them, or distributing them to unintended third-party recipients, Zest Holdings has deliberately breached its obligation to "facilitate a distribution" and has profited from that breach. (*Id.* at ¶¶ 13, 22.) As described below and as alleged, Defendants' actions will "leave Plaintiffs without any remedy whatsoever" and "[a]ccordingly, Plaintiffs have no adequate remedy at law." (*Id.* at ¶ 31.)[1]

The clear intent of the SPA was to monetize the assets of Zest Subsidiary for the benefit of RiskOn shareholders. (Ex. 2 at ¶ 16.) Any plan to do so would only make sense if shareholders who

---

[1]  To be clear, Plaintiffs here are not asserting a claim for unjust enrichment (quantum meruit) but, rather, a claim for a restitution remedy for breach of contract.

- 11 -

receive funds via a brokerage account were included in the planned distribution. (*Id.* at ¶ 13.) By creating Zest Holdings for the purpose of receiving the Walmart Litigation proceeds for the benefit of RiskOn shareholders, and then effecting an agreement in which Zest Holdings was obligated to facilitate a distribution of those funds, Plaintiffs RiskOn and Ecoark "repose[d] special confidence" in Zest Holdings, such that "in equity and good conscience" Zest is "bound to act in good faith and with due regard to the interests of" Plaintiffs and RiskOn shareholders. *Long v. Towne*, 98 Nev. 11, 13, 639 P.2d 528, 530 (1982). By accepting funds in trust that were intended for the benefit of RiskOn's shareholders, Defendants took on certain fiduciary and fiduciary-like obligations to Plaintiffs' and Plaintiff RiskOn's shareholders. *Perry v. Jordan*, 111 Nev. 943, 947, 900 P.2d 335, 338 (1995) (explaining that a confidential relationship exists where a "party gains the confidence of the other and purports to act or advise with the other's interests in mind," and that such relationships create obligations to "act in good faith and with due regard to the interests of the other party"). Defendants' reckless spending spree and plan to distribute to DTC is a wholesale abandonment of those obligations and a fundamental breach of the SPA.

In sum, Plaintiffs are reasonably likely to succeed on the merits of their breach of contract claim. It is undisputed that Plaintiffs have fully performed under the SPA, whereas Defendants have wholly failed to satisfy their obligations under the SPA, and that failure has caused significant harm to Plaintiffs.

**B.    Plaintiffs Will Suffer Irreparable Harm in the Absence of a TRO and Preliminary Injunction**

The moving party bears the burden of proving that there exists a reasonable probability of irreparable harm. *S.O.C., Inc.* 117 Nev. at 408. A finding of irreparable harm is appropriate where "compensatory damage is an inadequate remedy." *Id.*

As alleged in the Complaint, Plaintiffs face the prospects of "unquantifiable" losses due to Defendants' breaches of contract and associated reckless behavior. (Verified Compl. at ¶ 31.) To start, because Zest Holdings was created "for the purpose" of acquiring Zest Subsidiary and receiving Walmart Litigation proceeds (Verified Compl. at ¶ 12), it is very likely that once those proceeds are distributed or spent, Zest Holdings will have no assets left, and it will be too late for

- 12 -

Plaintiffs to recover any money judgment whatsoever. *See, e.g., Jacobson v. Cox Paving Co.*, 1991 WL 328445, at *20 (D. Ariz. May 16, 1991) (finding irreparable harm where "Plaintiffs will never be able to collect a judgment for money damages because [Defendant] is a one-man corporation owned and controlled exclusively by its president … and maintained in a judgment-proof state").

Moreover, the Walmart Litigation proceeds are discrete funds, the product of the claim transferred by the SPA, and Defendants' sole asset. Defendants' threatened and planned actions to distribute or otherwise squander those proceeds, would leave Plaintiffs without any remedy whatsoever. *Cf. Hospitality Intern. Grp. v. Gratitude Grp., LLC*, 132 Nev. 980, 387 P.3d 208, at *2 (2016) (upholding a preliminary injunction where "the district court determined that [the defendants] failed to provide financial information and make distributions as required by the operating agreement(s), causing damage to [plaintiffs]; and that [defendant] and its principals intended to sell [assets] … without notifying [plaintiffs], which sale would subject [plaintiff] to loss of its initial investment" and "incalculable future losses"). Because "80% of RiskOn's shares were held in brokerage accounts and thus appear on the stock ledger collectively as 'Cede & Co., a nominee name for the Depository Trust Company ("DTC"),'" Defendants have informed Plaintiffs and other RiskOn shareholders that they intend to "issue a multi-million dollar check to DTC." (Verified Compl. at ¶¶ 20-21.) But doing so will "send those monies into a black hole" because neither DTC nor its "participants have [the] ability to determine share ownership by individual account holders three years after the fact" and so DTC will likely "keep the funds for itself, or distribute them to its participants." (*Id.* at ¶¶ 20-21.) Because DTC does not maintain stock ownership records based on the individual and institutional accounts that beneficially own the shares, Defendants' planned transfer would shuttle millions of dollars to an entity that is incapable of completing the intended transfer to RiskOn shareholders. (*Nisser Decl.,*Ex. 2 at ¶ ¶ 7, 9.)   In either case, Plaintiffs will be permanently and irreparably harmed.

Further, because the Walmart Litigation proceeds are discrete funds, Defendants' reckless spending also threatens irreparable harm. Defendants have already incurred "tens of millions of dollars in 'expenses,'" which "they intend to deduct from the proceeds, including an unauthorized multi-million-dollar fee demanded by Defendant Metzger personally." (Verified Compl. at ¶ 17.) As

- 13 -

a result of this spending spree, "Defendant Zest Holdings has indicated that only one-third or less of the Walmart Litigation proceeds may be available for distribution with the balance consumed by expenses." (*Id.* at ¶ 18.) Every dollar spent by Defendants is a dollar that will be permanently removed from the Walmart Litigation proceeds, and therefore, any further spending constitutes additional, irreparable harm. NRS § 33.010(3) ("("An injunction may be granted in the following cases: . . . (3) When it shall appear, during the litigation, that the defendant is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual.").

### C.    The Balance of Hardships Weighs in Favor of Plaintiffs

Plaintiffs seek a limited injunction preserving the status quo and preventing Defendants from unilaterally spending or transferring millions of dollars that are properly the property of Plaintiffs and Plaintiffs' shareholders. That injunctive relief will maintain the status quo and allow the parties to continue working to resolve their dispute—either collaboratively or through the legal process—without the threat that Plaintiffs will permanently and irretrievably lose access to their funds. The only harm that the requested injunction will have on Defendants is to restrict them from distributing millions of dollars to an unrelated non-party to this action or to spend without any meaningful oversight.

### D.    The Public Interest Favors the Requested Injunctive Relief

The public interest also favors the requested injunction insofar as the public benefits from the predictable and fair enforcement of contracts that are not unconscionable, illegal, or in violation of public policy. *Cf. Holcomb Condominium Homeowners Assoc., Inc. v. Stewart Venture, LLC*, 129 Nev. 181, 187-188, 300 P. 3d 124, 128-29 (2013); *Rivero v. Rivero*, 125 Nev. 410, 429, 216 P.3d 213, 226 (2009) ("[p]arties are free to contract, and the courts will enforce their contracts if they are not unconscionable, illegal, or in violation of public policy"). Defendants' breaches have materially deprived Plaintiffs of the fundamental benefit of their bargain: a distribution of litigation proceeds to Plaintiff RiskOn's shareholders. An injunction vindicates Plaintiffs' rights and upholds the public's interest in enforceable contracts.

///

- 14 -

**HOWARD & HOWARD ATTORNEYS PLLC**

**E.      The Court Should Only Require Nominal Security**

Rule 65(c) of the Nevada Rules of Civil Procedure calls for security prior to the issuance of a restraining order or injunction. Any security to be given is left to the discretion of the court and is intended for the payment of costs or damages that may be incurred or suffered by a party that is wrongfully restrained or enjoined. *Am. Bonding Co. v. Roggen Enters.,* 109 Nev. 588, 591, 854 P.2d 868, 870 (1993) ("The expressed purpose of posting a security bond is to protect a party from damages incurred as a result of a wrongful injunction ….") Here, the possibility of damages arising from any injunction is slim to none.  Enjoining the distribution or expenditure of the litigation proceeds will simply protect those funds from being distributed to the wrong persons or from being wasted. Accordingly, any bond which this Court may order should be nominal and should not exceed $5,000. In the interest of expediency, Plaintiffs respectfully request entry of an order permitting them to post a cash deposit with the Clerk of Court in lieu of a bond.

**IV.      CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order maintaining the status quo and enjoining and restraining Defendants from spending or transferring any portion of the proceeds received by Zest Holdings in connection with litigation against Walmart in the United States District Court for the District of Arkansas without the express consent of Plaintiffs or written order of this Court.

Dated: this 14th day of October, 2025.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ Jonathan W. Fountain
Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483

*Attorneys for Plaintiffs RiskOn International,
Ecoark, Inc., and Hyperscale Data, Inc.*

- 15 -

4902-5548-4787, v. 1

# EXHIBIT 1

**ZEST LABS HOLDINGS, LLC.**

11411 Southern Highlands Parkway,
Suite 240 Las Vegas, NV 89141

October 7th, 2025

Ladies and Gentlemen:

This letter is written to you as holders of record of BitNile Metaverse, Inc. formerly known as Ecoark Holdings, Inc. ("BitNile") as of November 15, 2022 ("Record Holders"), or potential beneficial owners of BitNile as of November 15, 2022 ("Beneficial Owners"). Zest Labs Holdings LLC ("Zest Labs Holdings") will be distributing to all Record Holders a certain percentage and share in the net proceeds from the settlement of Zest Labs, Inc.'s litigation against Walmart, Inc. ("Zest Proceeds").

The terms of settlement of the Zest litigation are not public and Zest Labs Holdings is bound by a strict non-disclosure agreement. We are able to provide the limited information contained herein but by your acceptance of this letter you hereby agree to maintain this disclosure in strict confidence in recognition of Zest Labs Holdings' obligation to comply with third party obligations.

1. <u>Banking and Shareholder Verification.</u> We are pleased to announce that we have engaged Western Alliance Bank to oversee the proper retention and disbursement of Zest Proceeds to the Record Holders. To facilitate timely access to the Record Holders to their respective funds, Western Alliance Bank has established a dedicated escrow account exclusively for the benefit of the Record Holders.

2. <u>Remittance Zest Proceeds.</u> We are currently working on the proper dispersal and remittance of the funds to each Record Holder and appreciate your cooperation during this time. Our aim is to ensure that the dispersal is compete by November 10th, 2025. We are presently encountering delays as we work to resolve outstanding clarifications related to our tax obligations.

3. <u>Taxation Obligations.</u> While we have finalized the disbursement process, we have sought a tax opinion for the transaction. Our objective is to ensure that any taxation of the settlement amount to Zest Labs, Inc., is properly reserved and that all tax consequences of the transaction are understood. We will likely receive the tax opinion by early next week and will continue with the disbursement process accordingly.

We appreciate you understanding and cooperating during this time. If you have any questions or concerns, please do not hesitate to contact us.

Very truly yours,

ZEST LABS HOLDINGS, LLC

By: _____
Name: Gary Metzger
Title: Manager

# EXHIBIT 2

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,*
*Ecoark, Inc., and Hyperscale Data, Inc.*

**EIGHTH JUDICAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation;<br><br>Plaintiffs,<br><br>v.<br><br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual;<br><br>Defendants. | Case No. A-25-929990-B<br><br>Dept. No. 9<br><br>**DECLARATION OF HENRY NISSER IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

I, Henry Nisser, state the following:

1.      I am a member of the Board of Directors of Plaintiff RiskOn International, Inc. ("RiskOn"), which is the parent company of Plaintiff Ecoark, Inc. ("Ecoark"). I also serve as President, General Counsel of Plaintiff Hyperscale Data, Inc. ("Hyperscale"), which is the controlling shareholder of RiskOn. I make this declaration based upon my personal knowledge, except where I indicate my information and belief.

2.      I submit this declaration in support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (the "Motion"), first to address the harm that would arise should Defendants send funds to the Depository Trust Company ("DTC"), and second to

HOWARD & HOWARD ATTORNEYS PLLC

- 1 -

4900-2997-6434, v. 1

explain why Defendants' claim that the Stock Purchase Agreement (the "SPA"), dated August 28, 2023, requires distribution to DTC is contrary to the parties' intent and common sense.

## My Background

3.     I was admitted to the New York Bar in 2006 and my legal career has been devoted to representing publicly traded companies in corporate matters. I have served as general counsel for several such companies, including Hyperscale Data, Inc. (NYSE American, GPUS), Alzamend Neuro, Inc. (NASDAQ Capital Market, ALZN) and Ault Disruptive Technologies Corporation (NYSE American, ADRT). Prior to those positions, I was a partner at Sichenzia Ross Ference Carmel LLP, a boutique securities law firm in New York. Through my legal practice, I have developed extensive knowledge of the securities industry as applied to publicly traded companies.

## The Role of DTC

4.     The Depository Trust Company serves as the primary securities depository for companies that have shares that trade in U.S. public markets. According to its website, DTC holds record ownership of roughly $87 trillion of securities through its nominee company, "Cede & Co." DTC serves as a clearinghouse to process and settle securities transactions for virtually every broker dealer in the United States.

5.     DTC is owned by its "participants," who are the broker-dealers that act as clearing firms, selling, buying and holding securities for their customers. The list of participants appears on the DTC website. When companies issue shares in the public markets, those shares are issued to DTC, which becomes the record holder on the issuer's stock ledger. The shares are allocated among DTC's participants based on the holdings of their customers, namely institutional and individual account holders that buy shares through their brokerage accounts. Trading in the public markets is then reflected in ledger entries within DTC, not the issuance of new share certificates by the Company.

6.     Individuals or institutions that hold shares in brokerage accounts hold their securities through clearing brokers. The brokers, in the aggregate, hold all of the publicly traded securities of each issuer, and their combined position reflects the share ownership of DTC, which serves as the single record holder on the books of the issuer.

HOWARD & HOWARD ATTORNEYS PLLC

- 2 -

4900-2997-6434, v. 1

7. DTC does not maintain stock ownership records based on the individual and institutional accounts that are actually invested in an issuer. Rather, it records the positions of its participants, the clearing brokers, which aggregate their own customer accounts.

8. In my professional career, I have regularly worked on setting record dates for clients, including for annual meetings, dividends and other purposes. Under Rule 10b-17 of the Securities Exchange Act of 1934, publicly listed issuers are required to advise their principal exchanges (e.g., the NASDAQ or New York Stock Exchange) ten days prior to setting a record date. The exchanges need this time to alert the broker-dealers to determine the identity of the shareholders on their books as of the record date. If that process is not followed, it is likely not possible to identify a complete list of record date holders at the individual-shareholder level, especially where shares are broadly held and actively traded.

9. No such notice was provided to segregate RiskOn shareholders as of November 15, 2022, the record date under the SPA. As a result, there is no reliable method for DTC, or its participants, to identify who owned RiskOn shares as of that date. For this reason, sending funds to DTC will not result in the intended recipients receiving payment.

10. I am familiar with this process through first-hand experience. In 2023, RiskOn announced that it would issue a stock dividend for one of its subsidiaries. The announcement included a specific record date. Management, however, did not provide the required ten-day notice to NASDAQ. As a result, NASDAQ and the broker-dealers were unable to identify the holders as of the record date. RiskOn contacted both NASDAQ and DTC to attempt to correct its self-inflicted problem, for example by obtaining a list of the record date shareholders. During those conversations, both entities made it clear that it would be impossible to retroactively provide RiskOn with a list of shareholders. Because the error was identified shortly after it occurred, RiskOn was able to identify some, but not all, shareholders eligible for the dividend, through forensic efforts.

11. Based on RiskOn's prior communications with DTC, I am virtually certain that DTC will not, and indeed cannot, help Zest Holdings identify shareholders three years after the fact.

<u>The Parties Never Intended a Transfer to DTC</u>

12. I served on the Board of Directors of RiskOn when the SPA was executed and am

- 3 -

4900-2997-6434, v. 1

familiar with the underlying purpose of the agreement. Defendant's plan to distribute millions of dollars to DTC is in my view based on a flawed understanding of the contract.

13.    RiskOn had a business plan to spin off its subsidiaries in the form of stock dividends to its shareholders. This program made sense only if shareholders who held through brokerage accounts received the dividends. They were the intended beneficiaries of RiskOn's strategy.

14.    RiskOn initially planned to spin off Zest Labs, Inc. ("Zest Subsidiary"), the subsidiary that held the underlying claims. RiskOn disclosed this plan in an SEC filing. The Board of Directors later determined that a spin-off was not workable, but an alternate transaction could achieve the same goal, to a large extent. The Recitals in the SPA are instructive and make clear that defendant Zest Holdings was "formed for the benefit of [RiskOn] security holders entitled to participate" in that prior spinoff. In the September 1, 2023, SEC filing on Form 8-K (which I signed) disclosing the SPA, RiskOn explained that the sale to Zest Holdings was "intended to fulfill the Company's previous commitment to spin-off Zest Labs to those shareholders who held the Company's common stock as of November 15, 2022."

15.    Defendants' counsel has taken the position that Zest Holdings' only obligation is to make a distribution to those who appear on RiskOn's stock ledger. According to Defendants, this is the meaning of the SPA language referring to "security holders of record as of November 15, 2022." DTC, through Cede & Co., is the largest holder on the stock ledger. Defendants' plan is to send millions of dollars to DTC, which has no ability to deliver the money to the intended recipients.

16.    The principal purpose of the SPA and the formation of Zest Holdings was to vindicate the Board's prior decision to monetize the assets of Zest Subsidiary for the benefit of RiskOn shareholders. The SPA was not entered into so that Zest Holdings could cut a check to DTC for tens of millions of dollars and wash its hands. Instead, the clear intent of the document was for Zest Holdings to receive the proceeds of the Walmart Litigation and distribute those proceeds to RiskOn's beneficial owners who held the stock on November 15, 2022. That Zest Holdings failed to properly create a list of qualified shareholders as of November 15, 2022 neither excuses that duty nor allows for a distribution to DTC, which would frustrate the rights of Plaintiffs as well as the RiskOn shareholders.

4900-2997-6434, v. 1

* * *

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

Executed on: October 10, 2025

HENRY NISSER

4900-2997-6434, v. 1

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

RiskOn International Inc,
Plaintiff(s)

vs.

Zest Labs Holdings LLC,
Defendant(s)

CASE NO: A-25-929990-B

DEPT. NO.  Department 9

## AUTOMATED CERTIFICATE OF SERVICE

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Order Shortening Time was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 10/14/2025

| | |
|---|---|
| Martin Little | mal@h2law.com |
| Jonathan Fountain | jwf@h2law.com |
| Brandy Sanderson | bsanderson@howardandhoward.com |
| Kelly McGee | kom@h2law.com |
| Todd Kennedy | tek@h2law.com |
| Misty Pettiford | mpettiford@howardandhoward.com |
| Jana Chaffee | jlc@h2law.com |

Electronically Filed
10/17/2025 11:39 AM

CLERK OF THE COURT

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,*
*Ecoark, Inc., and Hyperscale Data, Inc.*

**EIGHTH JUDICAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation;<br><br>Plaintiffs,<br><br>v.<br><br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual;<br><br>Defendants. | Case No. A-25-929990-B<br><br>Dept. No. 9<br><br>**MOTION TO ASSOCIATE ANTHONY JOSEPH BOCCAMAZZO AS COUNSEL PURSUANT TO SCR 42 AND REQUEST FOR ORDER SHORTENING TIME** |

Pursuant to Nevada Supreme Court Rule 42 (SCR 42), Plaintiffs move the court for an Order permitting Anthony Joseph Boccamazzo of the law firm Olshan Frome Wolosky LLP to practice before this Court for this matter only. Because there is a Temporary Restraining Order hearing set in this matter for Thursday, October 23, 2025, Plaintiffs further request that the Court hear this application on shortened time, either prior to or at the same time of the TRO hearing so that Mr. Boccamazzo may participate in the proceedings and argue on behalf of the Plaintiffs.

Dated: this 17th day of October 2025.

- 1 -

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ Todd E. Kennedy, Esq
Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International, Ecoark, Inc., and Hyperscale Data, Inc.*

## DECLARATION OF TODD KENNEDY IN SUPPORT OF

## ORDER SHORTENING TIME

Todd E. Kennedy, Esq. declares as follows:

1. Pursuant to EDCR 2.26, I make this Declaration in support of Plaintiffs' *ex parte* Application for Order Shortening Time. I have personal knowledge of the facts set forth here and could testify if called upon to do so.

2. I am an attorney for Plaintiffs in this matter.

3. There is good cause to grant an *ex parte* Order Shortening Time and determine Plaintiff's Motion to Associate Counsel on shortened time. The Olshan Frome Wolosky LLP firm is Plaintiffs' preferred counsel who will serve as lead for this litigation and Mr. Boccamazzo is the counsel from that firm who is intending to present argument at the hearing set in this matter.

4. There is a TRO hearing set for Thursday, October 23, 2025, at 10:00 a.m., and Plaintiffs would like this motion to be heard prior to or at the time of that hearing so that Mr. Boccamazzo may participate and present argument.

////

- 2 -

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on October 17, 2025.

/s/ Todd E. Kennedy

_____
TODD E. KENNEDY

**ORDER SHORTENING TIME**

This Court, having examined the Declaration of Counsel in support of the Order Shortening time, being fully advised in the premises, and GOOD CAUSE APPEARING:

IT IS HEAREBY ORDERED, ADJUDGED AND DECREED, that the hearing on the **PLAINTIFFS' MOTION TO ASSOCIATE COUNSEL ANTHONY BOCCAMAZZO** be heard on Order Shortening Time and time is hereby shortened for hearing on the _____ day of _____, 2025, at ___:____, ___.M.

October 23, 2025, at 10:00 AM

Dated this 17th day of October, 2025

_____

549 399 297C 554E
Maria Gall
District Court Judge

**POINTS & AUTHORITIES**

SCR 42 provides, in part:

A lawyer who has been retained to represent a client in this state in an action or proceeding set forth in subsection 1(a) of this rule may file a written application to appear as counsel in that action or proceeding if the following conditions are met:

(a) The lawyer is not a member of the State Bar of Nevada;
(b) The lawyer is not a resident of the State of Nevada;
(c) The lawyer is not regularly employed in the State of Nevada;
(d) The lawyer is not engaged in substantial business, professional, or other activities in the State of Nevada;
(e) The lawyer is a member in good standing and eligible to practice before the bar of any jurisdiction of the United States; and
(f) The lawyer associates an active member in good standing of the State Bar of Nevada as counsel of record in the action or proceeding.

- 3 -

This Motion is supported by the following:

Exhibit A:    Verified Application For Association of Counsel;

Exhibit B:    Certificates of Good Standing From The State of New York; Connecticut and New Jersey

Exhibit C:    State Bar of Nevada Statement; and,

Exhibit D:    Proposed Order.

The attached exhibits demonstrate that the requirements of SCR 42 are met and the Court should grant the Plaintiffs' Motion and allow Mr. Boccamazzo to be associated as counsel.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ Todd E. Kennedy, Esq
Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International, Ecoark, Inc., and Hyperscale Data, Inc.*

- 4 -

# EXHIBIT A

## Suzy Moore

| | |
|---|---|
| **From:** | SBN Website <noreply@nvbar.org> |
| **Sent:** | Friday, October 17, 2025 10:05 AM |
| **To:** | Prohac; Suzy Moore; Mary Jorgensen; sbnprohacs@gmail.com |
| **Subject:** | New Pro Hac Submission |

A new pro hac application has been submitted.

### Case Information

**Name of Court**

Eighth Judicial District Court

**Case No. (Required for all state court cases).**

A-25-929990-B

**Dept. No. (Required for all state court cases).**

9

**Plaintiff**

RiskOn International, Inc. f/k/a Bitnile Metaverse, Inc. and/or Ecoark Holdings, Inc.; Ecoark, Inc.; and Hyperscale Data Inc.

**Defendant (Enter N/A if the case caption does not include a defendant).**

Zest Labs Holdings, LLC and Gary Metzger

### Petitioner Information

**Name - First, Middle, Last, Suffix**

Anthony Joseph Boccamazzo

**Petitioner is an attorney at law and a member of the law firm: (enter firm name)**

Olshan Frome Wolosky LLP

**Firm Address**

1325 Avenue of the Americas
New York, New York 10019
United States
Map It

**Telephone No. xxx-xxx-xxxx**

212-451-2365

**Petitioner's Email**

aboccamazzo@olshanlaw.com

**Petitioner has been retained personally or as a member of the above named law firm to provide legal representation in connection with the above-named matter by:**

Plaintiffs

**Select all state(s) in which you are an attorney in good standing and regularly practice law. Hold ctrl key to select multiple states. The highlight lines may disappear but the data will be saved. Upload state certificates of good standing below.**

1

- Connecticut
- New Jersey
- New York

**Upload Certificate(s) of Good Standing, from each state, issued within the past 30 days; do not include certificates from federal courts. If your certificate was emailed to you from your bar or Supreme Court, include the email.**

- Certificates-of-Good-Standing1.pdf

**List the court(s) and other state(s) to which you have been ADMITTED to practice AND the date of admission for each. Upload certificate(s) for each state below.**

Connecticut - 6/9/2014
New York - 5/16/2014
New Jersey - 12/11/2014

**Is Petitioner currently suspended or disbarred in any court?**

No

**Has Petitioner ever received discipline including, but not limited to, suspension or disbarment, by any organization with the authority to discipline attorneys at law? If yes, provide details below.**

No

**Has Petitioner ever had any certificate or privilege to appear and practice before any regulatory administrative body suspended or revoked?**

No

**Has Petitioner, either by resignation, withdrawal, or otherwise, ever terminated or attempted to terminate Petitioner's office as an attorney in order to avoid discipline, disbarment or suspension proceedings?**

No

**Has Petitioner filed an application under Nevada SCR 42 in the past three years?**

No prior applications have been submitted in the past three years by petitioner.

## Nevada Counsel Information

**Name - First, Middle, Last, Suffix**

Todd E. Kennedy

**Nevada Counsel Bar No.**

6014

**Firm Information**

Howard & Howard Attorneys PLLC
3800 Howard Hughes Parkways, Suite 1000
Las Vegas, Nevada 89169
United States
Map It

**Telephone No. xxx-xxx-xxxx**

702-257-1483

**Nevada Counsel Email**

tkennedy@howardandhoward.com

**Petitioner agrees to comply with the provisions of Nevada SCR 42(3) and (13) and Petitioner consents to the jurisdiction of the courts and disciplinary boards of the State of Nevada in accordance with provisions as set forth in SCR 42(3) and (13).**

Petitioner respectfully requests that Petitioner be admitted to practice in the above-entitled court for the purposes of this matter only.

- I agree

Petitioner has disclosed in writing to the client that the applicant is not admitted to practice in this jurisdiction and that the client has consented to such representation.

- I agree

**Petitioner Affirmations**

- I am the Petitioner in the above-entitled matter.
- I hereby swear and affirm under penalty of perjury that the assertions of this application are true.
- I have received a copy of, read, and will adhere to the Nevada Creed of Professionalism and Civility available on the instruction page.
- I have read Supreme Court Rule (SCR) 42 and meet all requirements contained therein.
- I am not a licensee of the State Bar of Nevada.
- I am not a resident of the state of Nevada.
- I am not regularly employed as a lawyer in the state of Nevada.
- I am not engaged in substantial business, professional, or other activities in the state of Nevada.
- I am a member in good standing and eligible to practice before the bar of any jurisdiction of the United States.
- I have associated a lawyer who is an active licensee in good standing of the State Bar of Nevada as counsel of record in this action or proceeding.
- I have read the foregoing application and know the contents thereof; that the same is true of my own knowledge except as to those matters therein stated on information and belief; and as to the matter I believe them to be true.
- I further certify that I am subject to the jurisdiction of the Courts and disciplinary boards of this state with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the State Bar of Nevada.
- I understand and shall comply with the standards of professional conduct required by members of the State Bar of Nevada;
- I am subject to the disciplinary jurisdiction to the State Bar of Nevada with respect to any of my actions occurring in the course of such appearance.
- The accompanying certificate(s) of standing are copies of original documents which are in my possession.
- I understand the fee paid for this application is non-refundable.

- 

I will notify my Nevada counsel (Nevada sponsoring attorney) to ensure they submit their Nevada Consent for my application. I understantd my application will NOT be processed without Nevada counsel's signed consent page. The Nevada consent page may be found at https://nvbar.org/pro-hac-vice-nevada-counsel-consent/

- I understand and agree.

I understand that by typing my name and clicking "Submit", I am electronically signing this document.

- I understand and agree.

- 

**Typed Signature**

Anthony J. Boccamazzo

**Date Submitted**

10/17/2025

3

**Payment Method**

Credit Card

**Name on Credit Card**

Anthony J Boccamazzo

**Credit Card**

American Express
XXXXXXXXXXX5007

**Billing Address**

162 Arbor Drive
Southport, CT 06890
Map It

**Order**

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| **Expedited Processing $750 (2 - 4 days)** | 1 | $750.00 | $750.00 |
| | | **Sub Total** | **$750.00** |
| | | **Total** | **$750.00** |

4

## Suzy Moore

| | |
|---|---|
| **From:** | SBN Website <noreply@nvbar.org> |
| **Sent:** | Friday, October 17, 2025 10:11 AM |
| **To:** | Mary Jorgensen; Prohac; Suzy Moore; sbnprohacs@gmail.com |
| **Subject:** | New Nevada Consent for Pro Hac |

## DESIGNATION, CERTIFICATION AND CONSENT OF NEVADA COUNSEL

**Nevada Counsel Name - First, Middle, Last, Suffix**

Todd Elric Kennedy

**Nevada Counsel Bar No.**

6014

**Nevada Counsel Email**

tkennedy@howardandhoward.com

**Petitioner/Out-of-State Counsel Name**

Anthony Joseph Boccamazzo

**Petitioner/Out-of-State Counsel Email**

aboccamazzo@olshanlaw.com

**Case No.**

A-25-929990-B

## SCR 42(14) Responsibilities of Nevada Attorney of Record

**The Nevada attorney of record shall be responsible for and actively participate in the representation of a client in any proceeding that is subject to this rule.**

I agree

**The Nevada attorney of record shall be present at all motions, pre-trials, or any matter in open court unless otherwise ordered by the court.**

I agree

**The Nevada attorney of record shall be responsible to the court, arbitrator, mediator, or administrative agency or governmental body for the administration of any proceeding that is subject to this rule and for compliance with all state and local rules of practice. It is the responsibility of the Nevada counsel to ensure that the proceeding is tried and managed in accordance with all applicable Nevada procedural and ethical rules.**

I agree

**I hereby agree to associate with Petitioner referenced above and further agree to perform all duties and responsibilities as required by Nevada Supreme Court Rule 42.**

I agree

**I understand that by typing my name and clicking "Submit", I am electronically signing this document.**

- I understand and agree.

**Typed Signature**

1

| Todd Elric Kennedy | |
|---|---|
| Date Submitted | |
| 10/17/2025 | |

# EXHIBIT B

## STATE OF CONNECTICUT
## JUDICIAL BRANCH
*www.jud.ct.gov*



## STATEWIDE GRIEVANCE COMMITTEE
Fifth Floor
999 Asylum Avenue, Hartford, CT 06105

**Elizabeth M. Rowe**
**First Assistant Bar Counsel**

I,       Elizabeth Rowe, First Assistant Bar Counsel       , do hereby certify, based upon information received from the Clerk's Office of the Superior Court for the Judicial District of Hartford, and from the records received from the local grievance committees and grievance panels, and from the records of the Statewide Grievance Committee that

# *ANTHONY J. BOCCAMAZZO*

*of*

# *SOUTHPORT, CT*

is a member in good standing of the Connecticut Bar, and has been admitted to same since June 09, 2014.

*Elizabeth Rowe, First Assistant Bar Counsel*
*October 17, 2025*

JD-GC-001C  Rev. 5-23
P.B. §§ 2-34(b)(4), 2-65

# Supreme Court of New Jersey



# Certificate of Good Standing

This is to certify that **ANTHONY JOSEPH BOCCAMAZZO** (No. **100692014** ) was constituted and appointed an Attorney at Law of New Jersey on **December 11, 2014** and, as such, has been admitted to practice before the Supreme Court and all other courts of this State as an Attorney at Law, according to its laws, rules, and customs.

I further certify that as of this date, the above-named is an Attorney at Law in Good Standing. For the purpose of this Certificate, an attorney is in "Good Standing" if the Court's records reflect that the attorney: 1) is current with all assessments imposed as a part of the filing of the annual Attorney Registration Statement, including, but not limited to, all obligations to the New Jersey Lawyers' Fund for Client Protection; 2) is not suspended or disbarred from the practice of law; 3) has not resigned from the Bar of this State; and 4) has not been transferred to Disability Inactive status pursuant to Rule 1:20-12.

Please note that this Certificate does not constitute confirmation of an attorney's satisfaction of the administrative requirements of Rule 1:21-1(a) for eligibility to practice law in this State.



In testimony whereof, I have hereunto set my hand and affixed the Seal of the Supreme Court, at Trenton, this 17th day of October, 2025.

_Clerk of the Supreme Court_



*Appellate Division of the Supreme Court*
*of the State of New York*
*Third Judicial Department*

———————

I, Robert D. Mayberger, Clerk of the Appellate Division of the Supreme Court of the State of New York, Third Judicial Department, do hereby certify that

## Anthony Joseph Boccamazzo

was duly licensed and admitted to practice as an Attorney and Counselor at Law in all the courts of this State on **May 16, 2014**, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors at Law on file in this office, is duly registered with the Office of Court Administration, and according to the records of this Court is currently in good standing as an Attorney and Counselor-at-Law.



In Witness Whereof, I have hereunto set my hand in the City of Albany on October 15, 2025.

*Clerk of the Court*

CertID-00255319

# EXHIBIT C

STAT

**DISTRICT COURT
CLARK COUNTY, NEVADA**

Case No. A-25-929990-B
Dept. No. IX

RiskOn International, Inc.

vs.

Zest Labs Holdings, LLC
_____/

<u>**STATE BAR OF NEVADA STATEMENT PURSUANT TO SUPREME COURT RULE
42(3)(b)**</u>

THE STATE BAR OF NEVADA, in response to the application of Petitioner, submits the following statement pursuant to SCR42(3):

SCR42(6)**Discretion.** The granting or denial of a motion to associate counsel pursuant to this rule by the court is discretionary. The court, arbitrator, mediator, or administrative or governmental hearing officer may revoke the authority of the person permitted to appear under this rule. Absent special circumstances, repeated appearances by any person or firm of attorneys pursuant to this rule shall be cause for denial of the motion to associate such person.

    (a)    **Limitation.** It shall be presumed, absent special circumstances, and only upon showing of good cause, that more than 5 appearances by any attorney granted under this rule in a 3-year period is excessive use of this rule.

    (b)    **Burden on applicant.** The applicant shall have the burden to establish special circumstances and good cause for an appearance in excess of the limitation set forth in subsection 6(a) of this rule. The applicant shall set forth the special circumstances and good cause in an affidavit attached to the original verified application.

1. DATE OF APPLICATION: <u>10/17/2025</u>

2. APPLYING ATTORNEY: <u>Anthony Joseph Boccamazzo, Esq.</u>

///
///
///

3. FIRM NAME AND ADDRESS: <u>Olshan Frome Wolosky, LLP, 1325 Avenue of the Americas, New York, NY 10019</u>

4. NEVADA COUNSEL OF RECORD: <u>Todd E. Kennedy, Esq., Howard & Howard, 3800 Howard Hughes Pkwy., Ste. 1000, Las Vegas, NV 89169</u>

5. There is no record of previous applications for appearance by petitioner within the past three (3) years.

DATED this October 17, 2025

_____

Suzy Moore
Member Service Admin.
Pro Hac Vice Processor
STATE BAR OF NEVADA

# EXHIBIT D

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,*
*Ecoark, Inc., and Hyperscale Data, Inc.*

**EIGHTH JUDICAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation; <br><br> Plaintiffs, <br><br> v. <br><br> ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual; <br><br> Defendants. | Case No. A-25-929990-B <br><br> Dept. No. 9 <br><br> **ORDER ADMITTING ANTHONY JOSEPH BOCCAMAZZO PURSUANT TO SCR 42** |

Before the Court is Plaintiffs RiskOn International, Inc.'s (formerly known as BitNile Metaverse, Inc. and Ecoark Holdings, Inc.), Ecoark, Inc.'s, and Hyperscale Data Inc.'s (collectively "Plaintiffs") Motion to Associate Anthony J. Boccamazzo as counsel under Nevada Supreme Court Rule 42 on Order Shortening Time.

The Court finds that the Motion includes the verified application, certificate of good standing, and state bar statements as required by SCR 42(3)(c) and that therefore GRANTS the Motion.

- 1 -

IT IS HEREBY ORDERED that the application is GRANTED and Anthony J. Boccamazzo is admitted to practice in the above-entitled Court for the purpose of the above-entitled matter only.

IT IS FURTHER ORDERED that pursuant to SCR 42(13)(a) pro hac counsel agrees to submit to the jurisdiction of and appear without subpoena for any proceedings required by the Court that relate to their conduct in the above-entitled matter, including motions, depositions, and evidentiary hearings.

_____

Submitted by:

**Howard & Howard Attorneys PLLC**

By: /s/ Todd E. Kennedy, Esq
Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International, Ecoark, Inc., and Hyperscale Data, Inc.*

- 2 -

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

RiskOn International Inc,
Plaintiff(s)

vs.

Zest Labs Holdings LLC,
Defendant(s)

CASE NO: A-25-929990-B

DEPT. NO.  Department 9

## AUTOMATED CERTIFICATE OF SERVICE

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Order Shortening Time was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 10/17/2025

| | |
|---|---|
| Martin Little | mal@h2law.com |
| Jonathan Fountain | jwf@h2law.com |
| Brandy Sanderson | bsanderson@howardandhoward.com |
| Kelly McGee | kom@h2law.com |
| Todd Kennedy | tek@h2law.com |
| Misty Pettiford | mpettiford@howardandhoward.com |
| Jana Chaffee | jlc@h2law.com |

**Electronically Filed**
**10/20/2025 3:13 PM**
**Steven D. Grierson**
**CLERK OF THE COURT**

Todd E. Kennedy, Esq.

Nevada Bar No. 6014

Martin A. Little, Esq.

Nevada Bar No. 7067

Jonathan W. Fountain, Esq.

Nevada Bar No. 10351

HOWARD & HOWARD ATTORNEYS PLLC

3800 Howard Hughes Parkway, Suite 1000

Las Vegas, Nevada 89169

Telephone: (702) 257-1483

Email: tek@h2law.com

Email: mal@h2law.com

Email: jwf@h2law.com

Attorneys for Plaintiffs RiskOn International,

Ecoark, Inc., and Hyperscale Data, Inc.

## DISTRICT COURT, CLARK COUNTY, NEVADA

| Plaintiff / Petitioner:<br>RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation | Case No: A-25-929990-B<br>Dept. No. 9 |
|---|---|
| Defendant / Respondent:<br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual | AFFIDAVIT/DECLARATION OF SERVICE ZEST LABS HOLDINGS, LLC |

I, Jennifer Harhay, 2021, being duly sworn, or under penalty of perjury, state that at all times relevant, I was over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents.

That on Wed, Oct 15 2025 at 11:31 AM, at the address of 8275 SOUTH EASTERN AVENUE #200, within LAS VEGAS, NV, the undersigned duly served the following document(s): PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND REQUEST FOR ORDER SHORTENING TIME in the above entitled action upon ZEST LABS HOLDINGS, LLC, by then and there, personally delivering 1 true and correct copy(ies) of the above documents to CORPORATE CREATIONS NETWORK INC., REGISTERED AGENT by leaving with MARCI WYATT, PER NEVADA REVISED STATUTE 14.020 2. as a person of suitable age and discretion at the address above, which address is the most recent street address of the registered agent shown on the information filed with the

///

///

///

Secretary of State pursuant to chapter 77 of NRS. The documents were also mailed via FEDEX OVERNIGHT DELIVERY to: Gary Metzger at 609 W. Dickson St, Suite 102 G, Fayetteville, AR, 72701 on Wed, Oct 15 2025 at 11:35 AM.

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct. No Notary is Required per NRS 53.045.

**Date:**   10/15/2025

Jennifer Harhay, 2021

ACE Executive Services, LLC (NV #2021C)
8275 S EASTERN AVE STE 200
LAS VEGAS, NV 89123
Job: 14376407 (130350.1)

Electronically Filed
10/20/2025 3:13 PM
Steven D. Grierson
CLERK OF THE COURT

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,*
*Ecoark, Inc., and Hyperscale Data, Inc.*

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation;<br><br>Plaintiffs,<br><br>v.<br><br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual;<br><br>Defendants. | CASE NO.: A-25-929990-B<br>DEPT. NO.: 9<br><br>**CERTIFICATE OF SERVICE OF MOTION TO ASSOCIATE ANTHONY JOSEPH BOCCAMAZZO AS COUNSEL PURSUANT TO SCR 42 AND REQUEST FOR ORDER SHORTENING TIME**<br><br>**Date of Hearing: October 23, 2025**<br>**Time of Hearing: 10:00 a.m.** |

**HOWARD & HOWARD ATTORNEYS PLLC**

Counsel for Plaintiff's certifies that on October 17, 2025, a copy of the **Motion to Associate Anthony Joseph Boccamazzo as Counsel Pursuant to SCR 42 and Request for Order Shortening Time and Order Shortening Time** was emailed to Defendants counsel, Dhaivat Shah of Grellas Shah LLP.

Dated: this 20th day of October, 2025.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By:    /s/ Todd E. Kennedy,
Todd E. Kennedy, Esq.
Martin A. Little, Esq.
Jonathan W. Fountain, Esq.
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483

*Attorneys for Plaintiffs RiskOn International, Ecoark, Inc., and Hyperscale Data, Inc.*

- 2 -

4937-9040-2420, v. 1

Electronically Filed
10/20/2025 3:13 PM
Steven D. Grierson
CLERK OF THE COURT

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,*
*Ecoark, Inc., and Hyperscale Data, Inc.*

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation;<br><br>Plaintiffs,<br><br>v.<br><br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual;<br><br>Defendants. | CASE NO.: A-25-929990-B<br>DEPT. NO.: 9<br><br>**CERTIFICATE OF SERVICE OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ON ORDER SHORTENING TIME**<br><br>**Date of Hearing: October 23, 2025**<br>**Time of Hearing: 10:00 a.m.** |

HOWARD & HOWARD ATTORNEYS PLLC

Counsel for Plaintiff's certifies that Defendants counsel, Dhaivat Shah of Grellas Shah LLP, was served a copy of **Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Request for Order Shortening Time and Order Shortening Time** on October 15, 2025, and has acknowledged receipt of the same in the attached Receipt of Copy.

Dated: this 20th day of October, 2025.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By:    */s/ Todd E. Kennedy*,
Todd E. Kennedy, Esq.
Martin A. Little, Esq.
Jonathan W. Fountain, Esq.
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483

*Attorneys for Plaintiffs RiskOn International, Ecoark, Inc., and Hyperscale Data, Inc.*

- 2 -

4935-1633-0100, v. 1

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,*
*Ecoark, Inc., and Hyperscale Data, Inc.*

**EIGHTH JUDICAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation;<br><br>Plaintiffs,<br><br>v.<br><br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual;<br><br>Defendants. | Case No. A-25-929990-B<br><br>Dept. No. 9<br><br>**RECEIPT OF COPY OF MOTION FOR TEMPORARY RESTRAING ORDER AND PRELIMINARY INJUNCTION ON ORDER SHORTENING TIME**<br><br>**Date of Hearing: October 23, 2025**<br>**Time: 10:00 a.m.** |

Dhaivat Shah, of the law firm Grellas Shah LLP, as counsel and authorized agent of Zest Labs Holdings, LLC and Gary Metzger, acknowledges receipt of a copy of PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND REQUST FOR ORDER SHORTENING TIME on Tuesday, October 14, 2025.

Signed by:

*Dhaivat H. Shah*

45E7D7811CDF4B3...

Dhaivat Shah, Esq.
Grellas Shah LLP
20400 Stevens Creek Blvd, Ste. 280
Cupertino, CA 95014

HOWARD & HOWARD ATTORNEYS PLLC

- 1 -

Docusign Envelope ID: 6AD598F1-E3F8-4DEA-929E-B4C33C780FFF

**Electronically Filed**
**10/20/2025 3:13 PM**
**Steven D. Grierson**
**CLERK OF THE COURT**

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,*
*Ecoark, Inc., and Hyperscale Data, Inc.*

**EIGHTH JUDICAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation; <br><br> Plaintiffs, <br><br> v. <br><br> ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual; <br><br> Defendants. | Case No. A-25-929990-B <br><br> Dept. No. 9 <br><br> **ACCEPTANCE OF SERVICE** |

Dhaivat Shah, of the law firm Grellas Shah LLP, as counsel and authorized agent for Gary Metzger, hereby acknowledges and accepts service of process on behalf of Gary Metzger the attached: (1) Summons; (2) Complaint. Mr. Metzger preserves and reserves all defenses.

Dated this 15th day of October 2025.

Signed by:

*Dhaivat H. Shah*

45E7D7811CDF4B3...

Dhaivat Shah, Esq.
Grellas Shah LLP
20400 Stevens Creek Blvd, Ste. 280
Cupertino, CA 95014

HOWARD & HOWARD ATTORNEYS PLLC

- 1 -

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,*
*Ecoark, Inc., and Hyperscale Data, Inc.*

CASE NO: A-25-929990-B
Department 9

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation; <br><br> Plaintiffs, <br><br> v. <br><br> ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual; <br><br> Defendants. | CASE NO. <br> DEPT. NO. <br><br> **SUMMONS** |

**NOTICE!   YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 21 DAYS.  READ THE INFORMATION BELOW.**

  **TO THE DEFENDANT: GARY METZGER**

   A civil Complaint has been filed by the Plaintiff against you for the relief set forth in the Complaint.

HOWARD & HOWARD ATTORNEYS PLLC

1

SUMMONS

1. If you intend to defend this lawsuit, within 21 days after this Summons is served on you, exclusive of the day of service, you must do the following:

(a) File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

(b) Serve a copy of your response upon the attorney whose name and address is shown below.

2. Unless you respond, your default will be entered upon application of the Plaintiff and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3. If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4. The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

SUBMITTED BY:

**HOWARD & HOWARD ATTORNEYS PLLC**

*/s/ Todd Kennedy*

Todd E. Kennedy, Esq. (NBN 6014)
Martin A. Little, Esq. (NBN 7067)
Jonathan W. Fountain, Esq. (NBN 10351)
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com;mal@h2law.com;
jwf@h2law.com
*Attorneys for Plaintiffs RiskOn International,*
*Ecoark, Inc., and Hyperscale Data, Inc.*

STEVEN D. GRIERSON
CLERK OF THE COURT

10/7/2025

DEPUTY CLERK      DATE
Regional Justice Center
200 Lewis Avenue
Las Vegas, Nevada 89155

Haynd Kirksey

**HOWARD & HOWARD ATTORNEYS PLLC**

2

SUMMONS

Docusign Envelope ID: 6ADF98E1-E3F8-4DEA-929E-B4C33G780FFF

Electronically Filed
10/7/2025 3:37 PM
Steven D. Grierson
CLERK OF THE COURT

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,*
*Ecoark, Inc., and Hyperscale Data, Inc.*

CASE NO: A-25-929990-B
Department 9

**EIGHTH JUDICIAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation;<br><br>Plaintiffs,<br><br>v.<br><br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual;<br><br>Defendants. | **VERIFIED COMPLAINT**<br><br>**(JURY DEMAND)**<br><br>**[BUSINESS COURT MATTER – EDCR 1.61(a)(2)(iii) – CLAIMS ARISING FROM THE PURCHASE OR SALE OF THE STOCK OF A BUSINESS]**<br><br>**[EXEMPT FROM ARBITRATION – NAR 5(a)(1)(G), (I), (J) – ACTION SEEKING DECLARATORY AND EQUITABLE/EXTRAORDINARY RELIEF IN BUSINESS COURT]** |

Plaintiffs RiskOn International, Inc. (formerly known as BitNile Metaverse, Inc. and/or Ecoark Holdings, Inc.), Ecoark, Inc. and Hyperscale Data Inc., by and through their attorneys Howard & Howard Attorneys PLLC, file this Complaint against Defendants Zest Lab Holdings, LLC and Gary Metzger, and alleges the following:

**THE PARTIES**

1.       Plaintiff RiskOn International, Inc. ("RiskOn") is a Nevada corporation headquartered in Las Vegas, Nevada. RiskOn was formerly known as BitNile Metaverse, Inc. and/or Ecoark Holdings, Inc., and is identified here to include its operations under each of those former names. RiskOn is the parent company of Plaintiff Ecoark, Inc.

HOWARD & HOWARD ATTORNEYS PLLC

13008190-14

2. Plaintiff Ecoark, Inc. ("Ecoark") is a Delaware corporation, whose headquarters are located in Las Vegas, Nevada. Ecoark is a subsidiary of Plaintiff RiskOn.

3. Plaintiff Hyperscale Data, Inc. ("Hyperscale") is a Delaware corporation whose headquarters are located in Las Vegas, Nevada. Hyperscale is a public company, and its shares trade on the NYSE American under the symbol "GPUS." Hyperscale owns approximately 85% of the voting stock of Plaintiff RiskOn.

4. Defendant Zest Labs Holdings, LLC ("Zest Holdings") is a Nevada limited liability company formed by Defendant Gary Metzger.

5. Defendant Gary Metzger ("Metzger") is an Arkansas resident. On information and belief, Metzger is the sole member and manager of Zest Holdings.

## JURISDICTION AND VENUE

6. This Court has original, subject matter jurisdiction over this action, pursuant to Article 6, Section 6, of the Constitution of the State of Nevada, because this is a case excluded by law from the original jurisdiction of the justices' courts.

7. This Court has personal jurisdiction over each of the Defendants pursuant to NRS § 14.020 or alternatively based on their acts and omissions relevant to this action, which, on information and belief, were committed in Nevada, making jurisdiction appropriate under NRS § 14.065. The contract at issue is between Nevada businesses and has significant ties to Nevada and the exercise of personal jurisdiction over the Defendants is otherwise reasonable.

8. Venue is appropriate in this judicial district, pursuant to NRS § 13.010, because Defendant Zest Holdings agreed to perform the contract at issue with or for the benefit of Plaintiffs, which are Nevada businesses located in Las Vegas, Nevada.

## GENERAL ALLEGATIONS

### The Walmart Litigation and its Proceeds

9. In 2022, Plaintiff RiskOn, then known as Ecoark Holdings, Inc., decided to divest its principal operating assets through a series of spin-offs or stock dividends to the Company's stockholders. Plaintiff RiskOn's Quarterly Report on Form 10-Q for its fiscal quarter ended December 31, 2022 filed with the Securities and Exchange Commission (the "SEC") on February

- 2 -

21, 2023, disclosed that, "the Company had decided it was in the best interests of its stockholders that it divest all of its principal operating assets through a series of spin-offs or stock dividends to the Company's stockholders."

10. One of RiskOn's subsidiaries was Zest Labs, Inc. ("Zest Subsidiary"), which was then in litigation with Walmart Inc. over alleged theft of trade secrets (the "Walmart Litigation"). Zest Subsidiary also owned a portfolio of more than 60 patents relating to its food preservation methods.

11. To achieve its corporate objective, Plaintiff RiskOn initially decided to spin off 100% of Zest Subsidiary's common stock to Plaintiff RiskOn's shareholders. In anticipation of the spinoff, on October 28, 2022, Plaintiff RiskOn and Plaintiff Ecoark each assigned to Zest Subsidiary all of their respective intellectual property rights in Zest Subsidiary's patents and their claims against Walmart.

12. Plaintiff RiskOn subsequently decided to consummate an alternative transaction, which it believed would provide an equivalent benefit to its shareholders. On information and belief, on May 23, 2023, Defendant Metzger formed Defendant Zest Holdings for the purpose of acquiring Zest Subsidiary and later distributing any proceeds from the Walmart Litigation to Plaintiff RiskOn's shareholders. Defendant Metzger was then, and as of the date hereof remains, a member of RiskOn's Board of Directors and was therefore familiar with RiskOn's plans.

13. On August 28, 2023, Plaintiff RiskOn and its subsidiary, Plaintiff Ecoark, entered into a Stock Purchase Agreement (the "SPA") with Defendant Zest Holdings. A true and correct copy of the SPA is annexed as Exhibit 1. Under the SPA, Plaintiff Ecoark agreed to sell its entire interest in Zest Subsidiary to Defendant Zest Holdings. In exchange, Defendant Zest Holdings agreed to "facilitate the distribution of net proceeds derived from" the Walmart Litigation to Plaintiff RiskOn's shareholders who held shares of RiskOn as of November 15, 2022. Defendant Zest Holdings made no other payment to RiskOn (or Ecoark) in exchange for 100% of the shares of Zest Subsidiary. Plaintiff RiskOn filed a Current Report on Form 8-K with the SEC on September 1, 2023, disclosing the transaction as follows:

Pursuant to a stock purchase agreement (the "SPA"), the Company [RiskOn] has

- 3 -

HOWARD & HOWARD ATTORNEYS PLLC

agreed to sell all its outstanding shares of Zest Labs to Zest Labs Holdings, LLC, ("Zest Holdings") a new entity specifically created for this spin-off (the "Transaction"). The purpose of Zest Holdings is to preserve and monetize ongoing lawsuits involving Zest Labs, as of November 15, 2022, including Zest Labs' lawsuit against Walmart, Inc. (the "Pending Litigation").

The Transaction is also intended to fulfill the Company's previous commitment to spin-off Zest Labs to those shareholders who held the Company's common stock as of November 15, 2022 ("Record Date Holders").

A true and correct copy of the Form 8-K is annexed as Exhibit 2.

14.    The principal parties to the SPA (Plaintiffs Ecoark and RiskOn, on one hand, and Defendant Zest Holdings, on the other) acknowledged and understood that Defendant Zest Holdings was created "for the benefit of [Plaintiff RiskOn's] security holders entitled to participate in [the] distribution" contemplated by the SPA. In light of the reason and purpose for which Defendant Zest Holdings was formed and for which the SPA was executed—namely to distribute any proceeds from the Walmart Litigation to Plaintiff RiskOn's stockholders, Defendants Metzger and Zest Holdings assumed the role of fiduciaries to Plaintiffs and, therefore, owed fiduciary duties of care and loyalty to Plaintiffs (as well as duties of good faith and fair dealing) to operate Defendant Zest Holdings in the best interests of Plaintiffs and RiskOn's stockholders and for the express and sole purpose of distributing any proceeds from the Walmart Litigation to RiskOn's stockholders. As the SPA makes clear, Defendant Zest Holdings had no stake in the Walmart Litigation and its sole obligation was to receive the proceeds from the Walmart Litigation and distribute the net proceeds to RiskOn's stockholders.

15.    Unfortunately, after the SPA was executed and Defendant Zest Holdings received ownership of Zest Subsidiary, Defendants took no steps to identify the stockholders who owned RiskOn stock as of November 15, 2022 and were supposed to be entitled to receive a distribution. Upon information and belief, when the SPA was executed, approximately 80% of RiskOn's shares were held through brokerage accounts and not in the name of the individuals and entities who actually owned the shares. Upon further information and belief, Defendants are unable to reliably identify those RiskOn stockholders entitled to receive distributions and are, therefore, unable to distribute the bulk of the proceeds from the Walmart Litigation, in violation of their fiduciary and contractual duties.

- 4 -

*Events Subsequent to the Walmart Litigation Settlement*

16.     In June 2025, it was publicly reported that Zest Subsidiary had secured a $222.7 million verdict against Walmart in the Walmart Litigation. On July 30, 2025, press reports announced that the parties had reached a post-verdict settlement of the litigation. Upon information and belief, the settlement provided Zest Holdings with a substantial cash payment (the "Walmart Litigation Proceeds"). True and correct copies of these press reports are annexed as Exhibits 3 and 4.

17.     Since the July, 2025 settlement, Defendants have failed to make any distribution from the Walmart Litigation Proceeds to RiskOn's stockholders and have instead: (a) indicated they will distribute 80% of the net proceeds to an unintended recipient; (b) refused to account for and substantiate tens of millions of dollars in "expenses" they intend to deduct from the proceeds including an unauthorized multi-million-dollar fee demanded by Defendant Metzger personally; and (c) threatened to further inflate these so-called "expenses" by unnecessarily hiring professionals, including a costly legal team, and other outside advisors. As it presently stands, there is no assurance that a proper distribution of the Walmart Litigation Proceeds will ever occur, and the litigation proceeds, which are held by Defendants in trust for the sole benefit of RiskOn's stockholders, is in danger of being wasted through Defendants' reckless actions and/or being depleted by Defendants through their deduction of excessive, improper, and unauthorized expenses and fees.

18.     For example, Defendant Zest Holdings has indicated that only one-third or less of the Walmart Litigation Proceeds may be available for distribution with the balance consumed by expenses. Furthermore, Defendants have rejected multiple requests to document the alleged expenses, claiming that Plaintiffs have no rights under the SPA to that information and that Defendants can spend the Walmart Litigation Proceeds as they see fit.

19.     Defendants have now threatened to retain a costly professional team to locate originally intended recipients of the proceeds. Plaintiffs previously undertook the exercise of locating stockholders for another dividend to RiskOn stockholders and shared their work product with Defendants. Without explanation, Defendants have stated that they will spend unspecified sums in an effort to duplicate this work. Any problems in locating the RiskOn stockholders entitled to

- 5 -

receive the Walmart Litigation Proceeds arise from Defendants' reckless, grossly negligent, and/or negligent failure to act earlier.

20.    As an alternative, Defendants have announced they will distribute the litigation proceeds in a manner that will defeat the SPA and cause substantial loss. According to Defendants, the distributions should go, not to investors who actually owned RiskOn stock as of November 15, 2022, but only to those named on RiskOn's stock ledger as of that date. This, however, would deprive the majority of RiskOn stockholders of their share of the proceeds. Approximately 80% of RiskOn's shares were held in brokerage accounts and thus appear on the stock ledger collectively as "Cede & Co.," a nominee name for the Depository Trust Company ("DTC"). DTC does not maintain records of shares held in individual brokerage accounts. DTC's records concern the ownership of shares held by its "participants," which are large broker-dealers who act as clearing brokers, often holding shares for smaller broker dealers referred to as "introducing brokers." DTC's participants have no ability to determine share ownership by individual account holders three years after the fact and often have no records at all concerning the individual accounts held with introducing brokers.

21.    Rather than distribute the Walmart Litigation Proceeds to the actual RiskOn stockholders entitled to receive them, Defendants announced in an October 7, 2025 letter to the handful of RiskOn shareholders they have managed to identify that they intend to issue a multi-million dollar check to DTC. If this occurs, Plaintiffs believe DTC will either keep the funds for itself, or distribute them to its participants, who will keep them for themselves. Sending any litigation proceeds to DTC will, in effect, send those monies into a black hole, depriving RiskOn's stockholders of their dividend and depriving Plaintiffs of the benefit of their bargain under the SPA. For example, Plaintiff Hyperscale held a significant number of RiskOn shares in its brokerage accounts. The proposed distribution would deprive Plaintiff Hyperscale of the litigation proceeds it is entitled to.

22.    Defendants have made clear that they intend to pocket any litigation proceeds returned by DTC and/or if RiskOn's eligible stockholders cannot be located. If Defendants are unwilling or unable to comply with the SPA, there is no reason for them to receive an unjust windfall, which in this case might well exceed $10 million, to the substantial detriment RiskOn and the RiskOn

- 6 -

stockholders who are actually entitled to receive the litigation proceeds. Accordingly, if some RiskOn stockholders cannot be located—and it is a certainty that some or even most of them cannot be— then any undistributed funds should be returned to RiskOn.

23.      Defendants have acted in bad faith and in breach of their fiduciary duties in a bid to capture and retain the Walmart Litigation Proceeds that belong to RiskOn's stockholders. Defendant Zest Holdings is owned and controlled by Defendant Metzger. Defendant Metzger dominates Defendant Zest Holdings, influencing and governing its actions with absolute control, answering only to himself and for his personal benefit. Accordingly, there is such a unity of interest and ownership between Defendant Metzger and Defendant Zest Holdings that one is inseparable from the other. Based on Defendants' bad faith conduct, including the formation of Defendant Zest Holdings to acquire Zest Subsidiary and its assets for the express purpose of distributing the Walmart Litigation Proceeds to RiskOn's eligible stockholders, adherence to the corporate form would sanction a fraud or promote injustice. Defendants Metzger and Zest Holdings are each the alter-ego of the other such that Defendant Metzger should be personally responsible for Defendant Zest Holdings' obligations and liabilities.

## COUNT I

### Declaratory Relief

24.      Plaintiffs restate the allegations in paragraphs 1 through 23 above, as though fully restated here.

25.      As set forth above, there is an active, present and justiciable controversy regarding the rights and obligations of the parties under the SPA and common law.

26.      By reason of the foregoing, Plaintiffs are entitled to a declaratory judgment declaring the rights of the parties to the SPA, including but not limited to, the following:

a.      That Plaintiffs RiskOn and Ecoark are parties to the SPA, entitled to enforce its terms;

b.      That Defendants may not distribute the proceeds of the Walmart Litigation to DTC;

c.      That Defendants must promptly distribute the net proceeds of the Walmart Litigation to RiskOn stockholders based on their actual beneficial ownership, according to their brokerage

HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

account or other proof;

d.    That Defendants must use the list of RiskOn stockholders previously prepared by Plaintiffs;

e.    That, to the extent RiskOn's eligible stockholders cannot be located, Defendants must return any net proceeds allocated to those stockholders to Plaintiff RiskOn;

f.    That Plaintiff Hyperscale is entitled to receive a distribution of the net proceeds of the Walmart Litigation in an amount equal to its ownership of RiskOn's common stock as of November 15, 2022 and its Class A preferred shares on an as-converted basis, which equals approximately 14.9% of the net proceeds of the Walmart Litigation;

g.    That, under Section 7.1 of the SPA, Defendants must provide an accounting of: (a) the amount of settlement proceeds received by Zest Holdings in connection with the Walmart Litigation; (b) Zest Holdings' calculation of what the "net" proceeds from the Walmart Litigation settlement are; and (c) each of the expenses Zest Holdings has incurred to distribute the net proceeds of the Walmart Litigation settlement;

h.    That Defendant Metzger has no right to charge fees without the consent of Plaintiffs;

i.    That Defendants are not permitted under the SPA to use the net proceeds of, or any interest derived from, the Walmart Litigation Proceeds to defend against this action; and

j.    That Defendant Metzger is the alter ego of Defendant Zest Holdings, and vice versa such that adherence to the corporate form of Zest Holdings would sanction a fraud or promote injustice.

## COUNT II

### Breach of Contract

27.    Plaintiffs RiskOn and Ecoark restate the allegations in paragraphs 1 through 26 above, as though fully restated here.

28.    The SPA constitutes a valid and enforceable contract between Plaintiff Ecoark and Defendant Zest Holdings.

29.    Plaintiffs RiskOn and Ecoark have fully performed their obligations under the SPA.

30.    Defendants, having received full performance through the transfer of Zest

Subsidiary's shares (and its assets) to Defendant Zest Holdings, have failed to distribute the net proceeds from the Walmart Litigation, and are unable to distribute a significant portion, estimated at 80%, of those proceeds, to RiskOn stockholders who owned shares as of November 15, 2022. As a result, Defendants are in material and substantial breach of the SPA. The breach is material and substantial to such a degree as to treat the SPA as terminated and/or rescinded, and indeed, the actions and threatened actions of Defendants are such that the purpose and intent of the SPA has been destroyed.

31. As the direct and proximate result of Defendants' breach of the SPA, Plaintiffs are suffering and, unless Defendants are temporarily, preliminarily, and/or permanently enjoined, will continue to suffer irreparable harm and injury because the harm and injury to Plaintiffs arising from Defendants' failure to distribute the Walmart Litigation Proceeds to RiskOn's eligible stockholders is unquantifiable. Furthermore, the Walmart Litigation Proceeds constitute a discrete fund, the imminently threatened depletion of which by Defendants, will leave Plaintiffs without any remedy whatsoever. Accordingly, Plaintiffs have no adequate remedy at law.

32. As the direct and proximate result of Defendants' breach of the SPA, and in addition to the irreparable harm they are suffering, Plaintiffs have been damaged in an amount exceeding $15,000.

33. Any retention of the Walmart Litigation Proceeds by Defendants would be inequitable and would unjustly enrich the Defendants who failed to perform the core purpose of the SPA. Accordingly, the interests of justice and fairness require the transfer of the net proceeds of the Walmart Litigation to Plaintiffs RiskOn and Ecoark.

34. In the alternative, Plaintiffs are entitled to entry of an order requiring specific performance of the SPA and directing Defendants to promptly distribute promptly the net proceeds of the Walmart Litigation to RiskOn's stockholders based on their actual beneficial ownership according to their brokerage account or other proof. To the extent RiskOn's eligible stockholders cannot be located, any net proceeds allocated to those stockholders should be delivered to Plaintiff RiskOn.

35. It has been necessary for Plaintiffs to retain the services of attorneys to bring this

HOWARD & HOWARD ATTORNEYS PLLC

action and so Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs.

## COUNT III

### Breach of The Implied Covenant of Good Faith And Fair Dealing

### (Contractual and Tortious)

36.    Plaintiffs RiskOn and Ecoark restate the allegations in paragraphs 1 through 35 above, as though fully restated here.

37.    The SPA constitutes a valid and enforceable contract between Plaintiffs Ecoark and RiskOn on one hand, and Defendant Zest Holdings on the other.

38.    There is implied into every contract in Nevada a covenant of good faith and fair dealing.

39.    By and through the formation of Defendant Zest Holdings to receive and distribute the Walmart Litigation Proceeds to RiskOn's eligible stockholders and by and through Defendants execution of the SPA for that express purpose, a special relationship of trust and confidence was created between Plaintiffs and Defendants, pursuant to which Defendants were required, at all relevant times, to act in good faith, with reasonable care, and with undivided loyalty to Plaintiffs and their best interests.

40.    Plaintiffs relied upon the special trust and confidence they placed in Defendants by, among other things, authorizing Defendant Metzger to form Defendant Zest Holdings and enter into the SPA, thereby transferring the shares of Zest Subsidiary to Defendant Zest Holdings along with all of its assets, including the right to recover Walmart Litigation Proceeds.

41.    Notwithstanding the special relationship between Plaintiffs and Defendants, Defendants acted in bad faith and in a grievous and perfidious manner inconsistent with the spirit, intent, and purpose of the SPA. By and through their actions and inactions, Defendants have breached the SPA and deprived Plaintiffs of the intended benefits and performance of the SPA. They have done so by, among other actions and inactions, improperly and unnecessarily depleting the Walmart Litigation Proceeds, attempting to make unauthorized charges against the Walmart Litigation Proceeds, and intending to imminently dissipate the Walmart Litigation Proceeds, and to otherwise impose extraordinary delay in the distribution of the Walmart Litigation Proceeds,

- 10 -

depriving RiskOn's stockholders of those funds while Defendants unjustly benefit by retaining them.

42.     As the direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs are suffering and, unless Defendants are temporarily, preliminarily, and/or permanently enjoined, will continue to suffer irreparable harm and injury because the harm and injury to Plaintiffs arising from Defendants' failure to distribute the Walmart Litigation Proceeds to RiskOn's eligible stockholders is unquantifiable. Furthermore, since the Walmart Litigation Proceeds constitute a discrete fund, the imminently threatened depletion thereof by Defendants will leave Plaintiffs without any remedy whatsoever. Accordingly, Plaintiffs have no adequate remedy at law.

43.     As the direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, and in addition to the irreparable harm they are suffering, Plaintiffs have been damaged in an amount exceeding $15,000.

44.     It has been necessary for Plaintiffs to retain the services of attorneys to bring this action and Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs.

**COUNT IV**

**Accounting**

45.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 44 above.

46.     Under the SPA, Defendant Zest Holdings agreed that, in consideration for its acquisition of Zest Subsidiary's stock, it would facilitate "the distribution of net proceeds derived from Zest Subsidiary's litigation against Walmart "to RiskOn stockholders as of November 15, 2022," i.e., every registered holder and beneficial owner as of such date. In doing so, Defendants acted as fiduciaries for the true owners of the Walmart Litigation Proceeds.

47.     Plaintiffs have made multiple requests to Defendants seeking a full accounting of the "net" proceeds of the Walmart Litigation, as well as other information regarding the settlement between Zest Subsidiary and Walmart.

48.     Defendants have firmly and unreasonably refused Plaintiffs' requests, claiming that Plaintiffs have no right to the information they are seeking under the SPA.

49.     However, Defendant's unreasonable position is contradicted by, among other things,

the "further assurances" clause in the SPA, which requires Defendant Zest Holding to take "any further action" that is "necessary or desirable to carry out the purposes of [the SPA]."

50.     Because Plaintiff Ecoark and RiskOn are parties to the SPA, and because the express purpose of the SPA was to "facilitate" a distribution of Defendant Zest Holdings' assets to RiskOn stockholders, it is plainly "necessary and desirable" for Plaintiffs to receive basic information regarding the settlement and how Defendant Zest Holdings has gone about calculating its paltry "net" proceeds amount and exorbitant expenses.

51.     As an intended recipient of the discrete fund, Plaintiff Hyperscale is also entitled to an accounting.

52.     Information regarding the settlement, its terms, and any expenses incurred by Defendant Zest Holdings is peculiarly within the knowledge of Defendant Zest Holdings.

53.     Plaintiffs have satisfied their obligations under the SPA, whereas Defendant Zest Holdings has breached its obligations. Because Plaintiffs have no adequate remedy at law, they are entitled to an order requiring Defendant Zest Holdings to provide an accounting of the total quantum of the settlement, its fee arrangements with various vendors involved in securing the settlement, its calculation of "net" proceeds, and to damages for any sums spent in property.

## COUNT V

### Constructive Trust

54.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 53 above.

55.     Under the SPA, Defendant Zest Holdings agreed to "facilitate the distribution of net proceeds derived from the Company's litigation to" eligible RiskOn stockholders.

56.     Defendants have made clear that they intend to waste and/or loot the net proceeds of the Walmart Litigation.

57.     A constructive trust was created by Defendant Zest Holdings' express promise under the SPA and by virtue of the special relationship that arose between Defendant Zest Holdings and Plaintiffs for the purpose of receiving and distributing the Walmart Litigation Proceeds to RiskOn's eligible stockholders.

58.     Defendants' retention of the net proceeds of the Walmart Litigation and/or

- 12 -

HOWARD & HOWARD ATTORNEYS PLLC

Defendants' improper distribution of those proceeds would be inequitable.

59.    Accordingly, the imposition of a constructive trust for the benefit of Plaintiffs and RiskOn's eligible stockholders is essential to effect justice.

60.    Plaintiffs are, therefore, entitled to entry of a judgment imposing a constructive trust on the net proceeds of the Walmart Litigation, for the benefit of Plaintiffs and RiskOn's eligible stockholders.

<b><u>COUNT VI</u></b>

Replevin

61.    Plaintiffs incorporate by reference the allegations in paragraphs 1 through 60 above.

62.    Plaintiffs are entitled to the receipt of the net proceeds from the Walmart Litigation.

63.    Those funds are currently in the possession of Defendant Zest Holdings, which has, to date, failed and refused to timely distribute them to RiskOn's eligible stockholders.

64.    Accordingly, Plaintiffs are entitled to an order requiring Defendant Zest Holdings to transfer the net proceeds of the Walmart Litigation to Plaintiffs for distribution to RiskOn's eligible stockholders.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Plaintiffs pray that this Court grant judgment against Defendants, jointly and severally, as follows:

A.    Awarding Plaintiffs RiskOn and Ecoark restitution of the proceeds of the settlement of the Walmart Litigation;

B.    Declaring the following in favor of Plaintiffs:

i.    That Plaintiffs RiskOn and Ecoark are parties to the SPA, entitled to enforce its terms;

ii.    That Defendants may not distribute the proceeds of the Walmart Litigation to DTC;

iii.    That Defendants must promptly distribute the net proceeds of the Walmart Litigation to RiskOn stockholders based on their actual beneficial ownership, according to their brokerage account or other proof;

- 13 -

iv.    That Defendants must use the list of RiskOn stockholders previously prepared by Plaintiffs;

v.    That, to the extent RiskOn's eligible stockholders cannot be located, Defendants must return any net proceeds allocated to those stockholders to Plaintiff RiskOn;

vi.    That Plaintiff Hyperscale is entitled to receive a distribution of the net proceeds of the Walmart Litigation in an amount equal to its ownership of RiskOn's common stock as of November 15, 2022 and its Class A preferred shares as converted to common shares, which equals approximately 14.9% of the net proceeds of the Walmart Litigation;

vii.    That, under Section 7.1 of the SPA, Defendants must provide an accounting of: (a) the amount of settlement proceeds received by Zest Holdings in connection with the Walmart Litigation; (b) Defendant Zest Holdings' calculation of what the "net" proceeds from the Walmart Litigation settlement were; and (c) each of the expenses Defendant Zest Holdings has incurred to distribute the net proceeds of the Walmart Litigation settlement;

viii.    That Defendant Metzger has no right to charge fees without the consent of Plaintiffs;

ix.    That Defendants are not permitted under the SPA to use the net proceeds of, or any interest derived from, the Walmart Litigation Proceeds to defend against this action; and

x.    That Defendant Metzger is the alter ego of Defendant Zest Holdings, and vice versa such that adherence to the corporate form of Defendant Zest Holdings would sanction a fraud or promote injustice.

C.    Awarding Plaintiffs specific performance under the SPA directing Defendants to promptly distribute the net proceeds of the Walmart Litigation to RiskOn's eligible stockholders based on their actual beneficial ownership according to their brokerage account or other proof and to the extent such stockholders cannot be located, directing Defendants to return any net proceeds allocated to those stockholders to Plaintiff RiskOn;

D.    Directing Defendant to provide an accounting of the total quantum of the settlement, its fee arrangements with various vendors involved in securing the Walmart Litigation settlement, its calculation of "net" proceeds, and damages for any sums spent improperly;

HOWARD & HOWARD ATTORNEYS PLLC

E.    Declaring that a constructive trust exists for the benefit of RiskOn's stockholders in relation to the net Walmart Litigation Proceeds, such that any distribution of expenses related to those net proceeds requires the express consent of RiskOn;

F.    Requiring Defendant to immediately transfer the net proceeds from the Walmart Litigation to Plaintiff RiskOn for distribution by Plaintiff RiskOn to its eligible stockholders; and

G.    Granting such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: this 7th day of October, 2025

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By:    /s/ Todd E. Kennedy,
Todd E. Kennedy, Esq.
Martin A. Little, Esq.
Jonathan W. Fountain, Esq.
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483

*Attorneys for Plaintiffs RiskOn International, Ecoark, Inc., and Hyperscale Data, Inc.*

## VERIFICATION

I, Henry Nisser, declare that I am an authorized agent of the above-named Plaintiffs, a member of the Board of Directors of RiskOn International, Inc. and President, General Counsel of Hyperscale Data, Inc. and have read the above allegations and that they are true based upon my personal knowledge and/or the knowledge of the Plaintiff entities and/or I believe them to be true based upon information available.

I declare under the penalty of perjury under the law of the State of Nevada the foregoing is true and correct.

_____
Henry Nisser
Dated October 7, 2025.

- 15 -

# Exhibit 1

## STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT (the "Agreement") entered into this ___ day of August, 2023, by and between Ecoark, Inc., a Delaware corporation (the "Seller") and Zest Labs Holdings, LLC (the "Purchaser"), and, for purposes of certain provisions set forth herein, BitNile Metaverse, Inc. a Nevada corporation formerly known as Ecoark Holdings, Inc ("Ecoark").  The Seller and the Purchaser may sometimes be referred to herein collectively as the "Parties".

WHEREAS, the Seller owns 100% of the outstanding shares of capital stock (the "Shares") of Zest Labs, Inc., a Delaware corporation (the "Company");

WHEREAS, Ecoark, the parent company of the Seller, has previously indicated in public filings with the Securities and Exchange Commission that it intends to spin-off the common stock of the Company held by the Seller to Ecoark's security holders of record as of November 15, 2022 (the "Record Date Owners");

WHEREAS, following the announcement of the spin-off of the Company, Ecoark recognized that the Company did not have the revenue to and could not otherwise operate as a public company and determined to instead distribute the net proceeds from certain assets of the Company, including from the litigation proceeds, to the Record Date Owners, and the Purchaser was formed for the benefit of Ecoark's security holders entitled to participate in such distribution in the furtherance thereof;

WHEREAS, in order to facilitate the above-described distribution by Ecoark, and for the other consideration described herein, the Seller desires to sell the Shares to the Purchaser, and the Purchaser desires to purchase such Shares from the Seller, on the terms set forth in this Agreement and to protect the rights of the Record Date Owners.

NOW THEREFORE, in consideration of the mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      **Sale and Purchase of Shares**.  The Seller agrees to sell and the Purchaser agrees to purchase the Shares for the consideration contained in this Agreement and subject to the terms and conditions of this Agreement.

2.      **Consideration for Purchase**.

(a)      The Seller hereby acknowledges the valuable consideration in full to be received by the Seller, by virtue of transferring the Shares to the Purchaser, which transfer will facilitate the distribution of net proceeds derived from the Company's litigation  to  the Record Date Owners and is consistent with the expectations of  such Record Date Owners.  Each party hereto further acknowledges and agrees that it will receive good and valuable consideration for entering into this Agreement.

(b)      Upon the execution and delivery of this Agreement, in exchange for the

0002

Docusign Envelope ID: 6ADF98E1-E3F8-4DEA-929E-B4C33G780FFF

consideration described above, the Shares shall be delivered by the Purchaser to the Seller and the certificates for the Shares and a stock power endorsed in blank shall be delivered by the Seller to the Purchaser.

(c)      Each of Ecoark and the Seller hereby waives any and all claims it has, or may have in the future, against the Purchaser or the Company arising from, relating to, or with respect to the sale of the Shares and the related transactions contemplated hereby or described herein.

3.      **Representations and Warranties of the Seller and Ecoark**.  As an inducement to the Purchaser to enter into this Agreement and consummate the transactions contemplated hereby, each of the Seller and Ecoark hereby makes the following representations and warranties, each of which is materially true and correct on the date of this Agreement:

3.1      The Seller is the record and beneficial owner of all of the Shares and the Seller owns the Shares, free of any claim, lien, security interest or encumbrance of any nature or kind and, as such, has the exclusive right and full power to sell, transfer and assign the Shares free of any such claim, lien, security interest or encumbrance;

3.2      Each of the Seller and Ecoark has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder.  This Agreement constitutes the valid and legally binding obligation of the Seller and Ecoark, enforceable in accordance with its terms. The execution, delivery, and performance of this Agreement and all other agreements contemplated hereby have been duly authorized by the Seller and Ecoark;

3.3      The execution and delivery of this Agreement by the Seller and Ecoark, and the observance and performance of the terms and provisions contained herein do not constitute a violation or breach of any applicable law, or any provision of any other contract or instrument to which the Seller or Ecoark is a party or by which it is bound, or any order, writ, injunction, decree, statute, rule, by-law or regulation applicable to the Seller or Ecoark;

3.4      There are no actions, suits, or proceedings pending or, to the best of the Seller's knowledge or Ecoark's knowledge, threatened, which could in any manner restrain or prevent the Seller from effectually and legally selling the Shares pursuant to the terms and provisions of this Agreement;

3.5      Neither the Seller nor Ecoark has any liability or obligation to pay fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement.

4.      **Representations and Warranties of the Purchaser**.  As an inducement to the Seller and Ecoark to enter into this Agreement and to consummate the transactions contemplated hereby, the Purchaser hereby makes the following representations and warranties, each of which is true and correct on the date of this Agreement:

4.1      The Purchaser has full power and authority to execute and deliver this

2

0003

Agreement and to perform its obligations hereunder. This Agreement constitutes the valid and legally binding obligation of the Purchaser, enforceable in accordance with its terms. The execution, delivery, and performance of this Agreement and all other agreements contemplated hereby have been duly authorized by the Purchaser;

4.2    The execution and delivery of this Agreement by the Purchaser and the observance and performance of the terms and provisions of this Agreement on the part of the Purchaser to be observed and performed will not constitute a violation of applicable law or any provision of any contract or other instrument to which the Purchaser is a party or by which it is bound, or any order, writ, injunction, decree statute, rule or regulation applicable to it;

4.3    No insolvency proceedings of any character, including without limitation, bankruptcy, receivership, reorganization, composition or arrangement with creditors, voluntary or involuntary, designating the Purchaser as the bankrupt or the insolvent, are pending or, to the knowledge of the Purchaser, threatened and the Purchaser has not made an assignment for the benefit of creditors, nor has Purchaser taken any action with a view to, or which would constitute the basis for, the institution of any such insolvency proceedings;

4.4    There are no actions, suits, or proceedings pending or, to the best of the Purchaser's knowledge, threatened, which could in any manner restrain or prevent the Purchaser from effectually and legally purchasing the Shares pursuant to the terms and provisions of this Agreement;

4.5    The Purchaser has no liability or obligation to pay fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement;

4.6    The Purchaser is acquiring the Shares for its own account for investment and not with a view to, or for sale in connection with, any distribution thereof, nor with any present intention of distribution or selling the same, and, except as contemplated by this Agreement, and has no present or contemplated agreement, undertaking, arrangement, obligation, indebtedness or commitment providing for the disposition thereof. The Purchaser understands that the Shares may not be sold, transferred or otherwise disposed of without registration under the Securities Act of 1933 (the "Act") or an exemption therefrom, and that in the absence of an effective registration statement covering the Shares or an available exemption from registration under the Act, the Shares must be held indefinitely; and

4.7    The offer to sell the Shares was directly communicated to the Purchaser by the Seller. At no time was the Purchaser presented with or solicited advertisement, articles, notice or other communication published in any newspaper, television or radio or presented at any seminar or meeting, or any solicitation by a person not previously known to the undersigned in connection with the communicated offer.

5.    **Survival of Representations and Warranties and Agreements**.    All representations and warranties of the parties contained in this Agreement shall survive the date of this Agreement and shall not be affected by any investigation made prior to the date of this Agreement.

0004

6.    **Indemnification**.

6.1    <u>Indemnification Provisions for Benefit of the Purchaser</u>.  In the event the Seller or Ecoark breaches any of its representations, warranties, and/or covenants contained herein and provided that the Purchaser makes a written claim for indemnification against the Seller or Ecoark, then each of the Seller or Ecoark, severally and not jointly agrees to indemnify the Purchaser from and against the entirety of any losses, damages, amounts paid in settlement of any claim or action, expenses, or fees including court costs and reasonable attorneys' fees and expenses.

6.2    <u>Indemnification Provisions for Benefit of the Seller</u>.  In the event the Purchaser breaches any of its representations, warranties, and/or covenants contained herein and provided that the Seller make a written claim for indemnification against the Purchaser, then the Purchaser agree to indemnify the Seller from and against the entirety of any losses, damages, amounts paid in settlement of any claim or action, expenses, or fees including court costs and reasonable attorneys' fees and expenses.

7.    **Additional Covenants.** The Parties covenant and agree as follows:

7.1    <u>General.</u>  If any further action is necessary or desirable to carry out the purposes of this Agreement, each of the Parties will take such further action (including the execution and delivery of such further instruments and documents) as the other Party may request, all at the sole cost and expense of the requesting Party (unless the requesting Party is entitled to indemnification therefore under Section 6).

7.2    <u>Seller.</u>  The Seller hereby covenants that the Seller will, at the request of the Purchaser, execute, acknowledge and deliver to the Purchaser without further consideration, all such further assignments, conveyances, consents and other documents, and take such other action, as the Purchaser may reasonably request (a) to transfer to, vest and protect in the Purchaser and its right, title and interest in the Shares, and (b) otherwise to consummate or effectuate the transactions contemplated by this Agreement.

8.    **Expenses**.  Except as otherwise provided in this Agreement, all parties hereto shall pay their own expenses, including legal and accounting fees, in connection with the transactions contemplated herein.

9.    **Severability**.  In the event any parts of this Agreement are found to be void, the remaining provisions of this Agreement shall nevertheless be binding with the same effect as though the void parts were deleted.

10.    **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  The execution of this Agreement may be by actual or facsimile signature.

11.    **Benefit**.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their legal representatives, successors and assigns.  Nothing in this Agreement,

0005

expressed or implied, is intended to confer on any person other than the Parties or their respective heirs, successors and assigns any rights, remedies, obligations, or other liabilities under or by reason of this Agreement.

12.  **Notices and Addresses**. All notices, offers, acceptance and any other acts under this Agreement (except payment) shall be in writing, and shall be sufficiently given if delivered to the addressees in person, by Federal Express or similar overnight next business day delivery, or by facsimile delivery followed by overnight next business day delivery, as follows:

To the Seller or Ecoark:                Zest Labs, Inc.
                                        303 Pearl Parkway
                                        Suite 200
                                        San Antonio, TX
                                        Attention: Randy May

To the Purchaser:                       The address set forth on the signature page attached hereto or to such other address as any of them, by notice to the other may designate from time to time.

13.  **Attorney's Fees**.  In the event that there is any controversy or claim arising out of or relating to this Agreement, or to the interpretation, breach or enforcement thereof, and any action or arbitration proceeding is commenced to enforce the provisions of this Agreement, the prevailing party shall be entitled to a reasonable attorney's fee, including the fees on appeal, costs and expenses.

14.  **Oral Evidence**.  This Agreement constitutes the entire Agreement between the parties and supersedes all prior oral and written agreements between the parties hereto with respect to the subject matter hereof.  Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated orally, except by a statement in writing signed by the party or parties against which enforcement or the change, waiver discharge or termination is sought.

15.  **Section Headings**.  Section headings herein have been inserted for reference only and shall not be deemed to limit or otherwise affect, in any matter, or be deemed to interpret in whole or in part any of the terms or provisions of this Agreement.

*[Signature Pages Attached]*

5

IN WITNESS WHEREOF the parties hereto have set their hand and seals as of the above date.

**Seller:**

Ecoark, Inc.

By: _____

Name: Jay Puchir
Title: Chief Executive Officer

**Ecoark:**

BitNile Metaverse, Inc.

By: _____

Name: Randy S. May
Title: Chief Executive Officer

**Purchaser:**

Zest Labs Holdings, LLC

By: _____

Name: Gary Metzger
Title: Manager

6

Docusign Envelope ID: 6AD598E1-E3F8-4DEA-929E-B4C33G780FFE

# Exhibit 2

**UNITED STATES**

**SECURITIES AND EXCHANGE COMMISSION**

**Washington, D.C. 20549**

# FORM 8-K

**CURRENT REPORT**

Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

Date of Report (Date of earliest event reported): September 1, 2023

# BITNILE METAVERSE, INC.

(Exact name of registrant as specified in its charter)

| Nevada | 001-40701 | 30-0680177 |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Commission File Number) | (I.R.S. Employer Identification No.) |

303 Pearl Parkway Suite 200, San Antonio, TX 78215
(Address of principal executive offices) (Zip Code)

(800) 762-7293
(Registrant's telephone number, including area code)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common Stock, $0.001 par value | BNMV | The Nasdaq Capital Market |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

0009

Docusign Envelope ID: 6AD598F1-E3F8-4DEA-929E-B4C33G780FFF

**Item 1.01    Entry into a Material Definitive Agreement.**

On August 25, 2023, the board of directors (the "**Board**") of BitNile Metaverse, Inc. (the "**Company**") approved a spin-off of the Company's wholly owned subsidiary Zest Labs, Inc. ("**Zest Labs**").

Pursuant to a stock purchase agreement (the "**SPA**"), the Company has agreed to sell all its outstanding shares of Zest Labs to Zest Labs Holdings, LLC, ("**Zest Holdings**") a new entity specifically created for this spin-off (the "**Transaction**"). The purpose of Zest Holdings is to preserve and monetize ongoing lawsuits involving Zest Labs, as of November 15, 2022, including Zest Labs' lawsuit against Walmart, Inc. (the "**Pending Litigation**").

The Transaction is also intended to fulfill the Company's previous commitment to spin-off Zest Labs to those shareholders who held the Company's common stock as of November 15, 2022 ("**Record Date Holders**"). After the Pending Litigation is settled or adjudicated, Zest Holdings is required to distribute a minimum of 95% of the net proceeds to the Record Date Holders. Additionally, the Board highlighted that the Transaction would alleviate the Company of roughly $800,000 in liabilities related to the Pending Litigation.

The foregoing summary description of the terms of the SPA may not contain all information that is of interest to the reader. For further information regarding specific terms and conditions of the SPA, the complete text is incorporated herein as Exhibit 10.1.

**Item 9.01    Financial Statements and Exhibits.**

**(d)        Exhibits:**

| Exhibit No. | Description |
|---|---|
| 10.1 | Stock Purchase Agreement dated as of August 28, 2023, between Zest Labs, Inc. and Zest Labs Holdings, LLC. |
| 104 | Cover Page Interactive Data File (embedded within the Inline XBRL document and included in Exhibit 101). |

-2-

0011

Docusign Envelope ID: 6AD598E1-E3F8-4DEA-929E-B4C33G780FFF

## SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**BITNILE METAVERSE, INC.**

Dated: September 1, 2023

/s/ Henry Nisser

Henry Nisser
President and General Counsel

-3-

0012

Docusign Envelope ID: 6AD593F1-E3F8-4DEA-929E-B4C33G780FFF

# Exhibit 3

LOCAL NEWS

# Walmart to pay **$222.7M** in retrial loss to Zest Labs over trade secrets

Zest Labs wins retrial against Walmart, securing $222.7 million after alleging tech theft and evidence concealment.



*Credit: AP*
(AP Photo/Charles Krupa, File)

Close Ad



IN OTHER NEWS

**Chris Brown's Memphis concert canceled**

BENTONVILLE, Ark. — Walmart has been ordered to pay $222.7 million in a retrial case won by technology company Zest Labs on May 13, 2025, according to the U.S. District Court for the Eastern District of Arkansas.

0014

Docusign Envelope ID: 6AD598F1-E3F8-4DEA-929E-B4C33G780FFF

The years-long feud dates back to 2018 when Zest Labs alleged that Walmart "stole Zest's revolutionary technology and incorporated it into a patent that was later published, destroying Zest's trade secret," according to Arkansas Business.



ADVERTISEMENT

SCROLL TO CONTINUE WITH THE CONTENT

In the original trial, Zest Labs was awarded $115 million, but U.S. District Judge James Moody Jr. set it aside when new evidence came out, prompting a retrial.

Zest Labs alleged that Walmart had concealed "crucial evidence that would have greatly aided Zest" during the trial. Now, the retrial again ruled in favor of Zest.

Zest was awarded $72,700,000.00 in compensatory damages and $150,000,000.00 in punitive damages, totaling the $222.7 million, according to court records.

Walmart released the following statement regarding the case:

*"We strongly disagree with the verdict and believe it's not supported by the facts. Zest Lab's unethical behavior has compromised the integrity of this case from the start. We expect our suppliers to uphold the highest ethical standards and will continue to advocate for fairness and justice, including pursuing an appeal and post-trial motions."*

0015

**Forget Furosemide, Use This Household Item To Help Drain Edema Fluid**

Forget Furosemide, Use This Household Item To Help Drain Edema Fluid

**WellnessGuide** | Sponsored

Learn more

**Just Add 1 Drop Of This Household Item To Any Dark Spot and Wait 3 Minutes**

Soak Your Dark Spots With This One Thing (Trending Morning Routine)

**WellnessGuide** | Sponsored

Learn more

**Mother demands apology after Florida teacher's birthday gesture toward student**

WATN

**Tennessee Supreme Court again denies City of Memphis request for stay in union suit**

WATN

LOADING NEXT ARTICLE...

# Exhibit 4

Docusign Envelope ID: 6AD598F1-E3F8-4DEA-929E-B4C33G780FFF

# Walmart reaches settlement with food waste tech company



Grocery Dive, an Industry Dive publication  ·  Grocery Dive  ·  Industry Dive

**Jeff Wells**
July 30, 2025 • 2 min read

**In this article:**

WMT +0.62% ☆

*This story was originally published on* Grocery Dive. *To receive daily news and insights, subscribe to our free daily* Grocery Dive *newsletter.*

Walmart has agreed to a settlement with Zest Labs, the food waste technology company that first sued the retailer seven years ago over claims it stole trade secrets.

Docusign Envelope ID: 6ADF98F1-E3F8-4DEA-929E-B4C33G780FFF



**Capital**One

Earn a $250 bonus with 360 Checking. No fees, no minimums. Terms apply.

**360 CHECKING**
Member FDIC

OPEN ACCOUNT

**Capital**One

**360 PERFORMANCE**

**3.40**% APY ⓘ

As of 10/01/2025 | Member FDIC

OPE

Sponsors of **GO**BankingRates

The deal brings to a close a complex legal battle that just months ago resulted in a federal jury ordering Walmart to pay Zest Labs more than $222 million. Walmart said at the time it would appeal that verdict, but this week's settlement rules out that option.

Judge James M. Moody of the U.S. District Court for the Eastern District of Arkansas said in a Monday filing that he had been notified that the two sides reached a settlement. Walmart stated to Arkansas Business that it and Zest Labs "agreed to a confidential settlement that resolves all issues between them."

Zest sued Walmart in 2018, claiming Walmart had stolen its cold-chain management technology that extends produce shelf life. The tech company said it showed the technology to Walmart executives in 2014 and entered into a confidential agreement a few months later. Walmart eventually released a solution called Eden that Zest said closely resembled its invention.

## Edema Is Not From Salty Food. Meet the Real Enemy of Swollen Legs

FootRenew

In 2021, a jury awarded Zest $115 million, but in 2023, Judge Moody granted a new trial at Walmart's request after learning that Zest withheld relevant evidence. The plan to force a second showdown backfired for Walmart. In May, a federal jury ordered the retailer to pay Zest $222.7 million, which includes $72.7 million for trade secret misappropriation and $150 million for exemplary damages.

"Zest's technology had the potential to reduce approximately 30-33% waste of perishable foods in half. But Walmart's misuse of Zest's trade secret has hindered our ability to achieve the necessary scale to

0019

make a substantial impact and help feed the world," Gary Metzger, manager of Zest Labs, said in a May statement.

Docusign Envelope ID: 6ADF98F1-E3F8-4DEA-929F-B4C33G780FFF

## Recommended Reading

- Walmart to pay tech company $222M over trade secret misappropriation

 View Comments

Terms and Privacy Policy   Privacy Dashboard



# Recommended Stories



### 4 Retirement Planning Tips Robert Kiyosaki Swears By
GOBankingRates · 10h ago



### Retirees, Get Ready for This Unpleasant Medicare Surprise in 2026
Motley Fool · 1d ago



### $4 Stock Tapping Into the $1.2 Trillion AI Boom
Ad · Bullseyealerts



### When will mortgage rates go down to 5%?
Yahoo Personal Finance · 5h ago

0020

Electronically Filed
10/21/2025 1:13 PM
Steven D. Grierson
CLERK OF THE COURT

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,
Ecoark, Inc., and Hyperscale Data, Inc.*

**EIGHTH JUDICAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation;<br><br>        Plaintiffs,<br><br>v.<br><br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual;<br><br>        Defendants. | Case No. A-25-929990-B<br><br>Dept. No. 9<br><br>**MOTION TO ASSOCIATE JOSEPH M. CALDER JR. AS COUNSEL PURSUANT TO SCR 42**<br><br>**[HEARING REQUESTED]** |

Pursuant to Nevada Supreme Court Rule 42 (SCR 42), Plaintiffs moves the court for an Order permitting Joseph M. Calder Jr. of the law firm Olshan Frome Wolosky LLP to practice before this Court for this matter only.

Dated: this 21st day of October 2025.

HOWARD & HOWARD ATTORNEYS PLLC

- 1 -

4908-8199-4612, v. 1                    Case Number: A-25-929990-B

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ Todd E. Kennedy, Esq
Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International, Ecoark, Inc., and Hyperscale Data, Inc.*

## POINTS & AUTHORITIES

SCR 42 provides, in part:

A lawyer who has been retained to represent a client in this state in an action or proceeding set forth in subsection 1(a) of this rule may file a written application to appear as counsel in that action or proceeding if the following conditions are met:

(a) The lawyer is not a member of the State Bar of Nevada;
(b) The lawyer is not a resident of the State of Nevada;
(c) The lawyer is not regularly employed in the State of Nevada;
(d) The lawyer is not engaged in substantial business, professional, or other activities in the State of Nevada;
(e) The lawyer is a member in good standing and eligible to practice before the bar of any jurisdiction of the United States; and
(f) The lawyer associates an active member in good standing of the State Bar of Nevada as counsel of record in the action or proceeding.

This Motion is supported by the following:

Exhibit A:    Verified Application For Association of Counsel;

Exhibit B:    Certificate of Good Standing From The State of New York;

Exhibit C:    State Bar of Nevada Statement; and,

Exhibit D:    Proposed Order.

- 2 -

4908-8199-4612, v. 1

The attached exhibits demonstrate that the requirements of SCR 42 are met and the Court should grant the Plaintiffs' Motion and allow Mr. Calder to be associated as counsel.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ Todd E. Kennedy, Esq
Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International, Ecoark, Inc., and Hyperscale Data, Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to Nev. R. Civ. P, 5(b) and Administrative Order 14-2, the undersigned hereby certifies that on October 21, 2025, a true and correct copy of the foregoing **MOTION TO ASSOCIATE JOSEPH M. CALDER JR. AS COUNSEL PURSUANT TO SCR 42** was served electronically to all parties of record listed on the E-Service Master List via the Court's electronic filing system and via e-mail to:

Dhaivat Shah <ds@grellas.com>

*/s/ Kelly O. McGee*
An Employee of Howard & Howard Attorney's, PLLC

- 3 -

4908-8199-4612, v. 1

# EXHIBIT A

## Suzy Moore

| | |
|---|---|
| **From:** | SBN Website <noreply@nvbar.org> |
| **Sent:** | Monday, October 13, 2025 8:41 AM |
| **To:** | Prohac; Suzy Moore; Mary Jorgensen; sbnprohacs@gmail.com |
| **Subject:** | New Pro Hac Submission |

A new pro hac application has been submitted.

### Case Information

**Name of Court**

Eighth Judicial District Court

**Case No. (Required for all state court cases).**

A-25-929990-B

**Dept. No. (Required for all state court cases).**

9

**Plaintiff**

RiskOn International, Inc.; Ecoark, Inc.; Hyperscale Data, Inc.

**Defendant (Enter N/A if the case caption does not include a defendant).**

Zest Labs Holdings, LLC; Gary Metzger

### Petitioner Information

**Name - First, Middle, Last, Suffix**

Joseph, Michael, Calder, Jr.

**Petitioner is an attorney at law and a member of the law firm: (enter firm name)**

Olshan Frome Wolosky, LLP

**Firm Address**

1325 Avenue of the Americas
New York, New York 10019
United States
Map It

**Telephone No. xxx-xxx-xxxx**

212-451-2267

**Petitioner's Email**

jcalder@olshanlaw.com

**Petitioner has been retained personally or as a member of the above named law firm to provide legal representation in connection with the above-named matter by:**

RiskOn International, Inc.; Ecoark, Inc.; Hyperscale Data, Inc.

**Select all state(s) in which you are an attorney in good standing and regularly practice law. Hold ctrl key to select multiple states. The highlight lines may disappear but the data will be saved. Upload state certificates of good standing below.**

1

- New York

**Upload Certificate(s) of Good Standing, from each state, issued within the past 30 days; do not include certificates from federal courts. If your certificate was emailed to you from your bar or Supreme Court, include the email.**

- Certificate.pdf

**List the court(s) and other state(s) to which you have been ADMITTED to practice AND the date of admission for each. Upload certificate(s) for each state below.**

United States Court of Appeals for the Sixth Circuit (04/27/23)
United States District Court for the Southern District of New York (09/17/2024)
United States District Court for the Eastern District of New York (11/18/24)

**Is Petitioner currently suspended or disbarred in any court?**

No

**Has Petitioner ever received discipline including, but not limited to, suspension or disbarment, by any organization with the authority to discipline attorneys at law? If yes, provide details below.**

No

**Has Petitioner ever had any certificate or privilege to appear and practice before any regulatory administrative body suspended or revoked?**

No

**Has Petitioner, either by resignation, withdrawal, or otherwise, ever terminated or attempted to terminate Petitioner's office as an attorney in order to avoid discipline, disbarment or suspension proceedings?**

No

**Has Petitioner filed an application under Nevada SCR 42 in the past three years?**

No prior applications have been submitted in the past three years by petitioner.

**Nevada Counsel Information**

**Name - First, Middle, Last, Suffix**

Todd E. Kennedy

**Nevada Counsel Bar No.**

6014

**Firm Information**

Howard & Howard Attorneys PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
United States
Map It

**Telephone No. xxx-xxx-xxxx**

702-257-1483

**Nevada Counsel Email**

tek@h2law.com

**Petitioner agrees to comply with the provisions of Nevada SCR 42(3) and (13) and Petitioner consents to the jurisdiction of the courts and disciplinary boards of the State of Nevada in accordance with provisions as set forth in SCR 42(3) and (13). Petitioner respectfully requests that Petitioner be admitted to practice in the above-entitled court for the purposes of this matter only.**

2

- I agree

**Petitioner has disclosed in writing to the client that the applicant is not admitted to practice in this jurisdiction and that the client has consented to such representation.**

- I agree

**Petitioner Affirmations**

- I am the Petitioner in the above-entitled matter.
- I hereby swear and affirm under penalty of perjury that the assertions of this application are true.
- I have received a copy of, read, and will adhere to the Nevada Creed of Professionalism and Civility available on the instruction page.
- I have read Supreme Court Rule (SCR) 42 and meet all requirements contained therein.
- I am not a licensee of the State Bar of Nevada.
- I am not a resident of the state of Nevada.
- I am not regularly employed as a lawyer in the state of Nevada.
- I am not engaged in substantial business, professional, or other activities in the state of Nevada.
- I am a member in good standing and eligible to practice before the bar of any jurisdiction of the United States.
- I have associated a lawyer who is an active licensee in good standing of the State Bar of Nevada as counsel of record in this action or proceeding.
- I have read the foregoing application and know the contents thereof; that the same is true of my own knowledge except as to those matters therein stated on information and belief; and as to the matter I believe them to be true.
- I further certify that I am subject to the jurisdiction of the Courts and disciplinary boards of this state with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the State Bar of Nevada.
- I understand and shall comply with the standards of professional conduct required by members of the State Bar of Nevada;
- I am subject to the disciplinary jurisdiction to the State Bar of Nevada with respect to any of my actions occurring in the course of such appearance.
- The accompanying certificate(s) of standing are copies of original documents which are in my possession.
- I understand the fee paid for this application is non-refundable.

- 

**I will notify my Nevada counsel (Nevada sponsoring attorney) to ensure they submit their Nevada Consent for my application. I understantd my application will NOT be processed without Nevada counsel's signed consent page. The Nevada consent page may be found at https://nvbar.org/pro-hac-vice-nevada-counsel-consent/**

- I understand and agree.

**I understand that by typing my name and clicking "Submit", I am electronically signing this document.**

- I understand and agree.

- 

**Typed Signature**

/s/ Joseph M. Calder Jr.

**Date Submitted**

10/13/2025

**Payment Method**

Credit Card

3

**Name on Credit Card**

Olshan Frome Wolosky

**Credit Card**

Visa
XXXXXXXXXXXXX1133

**Billing Address**

1325 Avenue of the Americas
New York, New York 10019
Map It

**Order**

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| **Expedited Processing $750 (2 - 4 days)** | 1 | $750.00 | $750.00 |
| | | Sub Total | **$750.00** |
| | | Total | **$750.00** |

4

## Suzy Moore

| | |
|---|---|
| **From:** | SBN Website <noreply@nvbar.org> |
| **Sent:** | Monday, October 13, 2025 11:57 AM |
| **To:** | Mary Jorgensen; Prohac; Suzy Moore; sbnprohacs@gmail.com |
| **Subject:** | New Nevada Consent for Pro Hac |

### DESIGNATION, CERTIFICATION AND CONSENT OF NEVADA COUNSEL

**Nevada Counsel Name - First, Middle, Last, Suffix**

Todd Elric Kennedy

**Nevada Counsel Bar No.**

6014

**Nevada Counsel Email**

tkennedy@howardandhoward.com

**Petitioner/Out-of-State Counsel Name**

Joseph Michael Calder Jr.

**Petitioner/Out-of-State Counsel Email**

jcalder@olshanlaw.com

**Case No.**

A-25-929990-B

### SCR 42(14) Responsibilities of Nevada Attorney of Record

**The Nevada attorney of record shall be responsible for and actively participate in the representation of a client in any proceeding that is subject to this rule.**

I agree

**The Nevada attorney of record shall be present at all motions, pre-trials, or any matter in open court unless otherwise ordered by the court.**

I agree

**The Nevada attorney of record shall be responsible to the court, arbitrator, mediator, or administrative agency or governmental body for the administration of any proceeding that is subject to this rule and for compliance with all state and local rules of practice. It is the responsibility of the Nevada counsel to ensure that the proceeding is tried and managed in accordance with all applicable Nevada procedural and ethical rules.**

I agree

**I hereby agree to associate with Petitioner referenced above and further agree to perform all duties and responsibilities as required by Nevada Supreme Court Rule 42.**

I agree

**I understand that by typing my name and clicking "Submit", I am electronically signing this document.**

- I understand and agree.

**Typed Signature**

1

| | |
|---|---|
| Todd E. Kennedy | |
| **Date Submitted** | |
| 10/13/2025 | |

# EXHIBIT B



*Appellate Division of the Supreme Court*
*of the State of New York*
*Second Judicial Department*

———————

I, Darrell M. Joseph, Clerk of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, do hereby certify that

## Joseph M. Calder, Jr.

was duly licensed and admitted to practice as an Attorney and Counselor at Law in all the courts of this State on **August 31, 2020**, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors at Law on file in this office, is duly registered with the Office of Court Administration, and according to the records of this Court is currently in good standing as an Attorney and Counselor-at-Law.



In Witness Whereof, I have hereunto set my hand in the City of Brooklyn on October 8, 2025.

*Clerk of the Court*

CertID-00254441

# EXHIBIT C

STAT

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

Case No. A-25-929990-B
Dept. No. IX

RiskOn International, Inc.

vs.

Zest Labs Holdings, LLC

_____/

## STATE BAR OF NEVADA STATEMENT PURSUANT TO SUPREME COURT RULE 42(3)(b)

THE STATE BAR OF NEVADA, in response to the application of Petitioner, submits the following statement pursuant to SCR42(3):

SCR42(6)**Discretion.** The granting or denial of a motion to associate counsel pursuant to this rule by the court is discretionary. The court, arbitrator, mediator, or administrative or governmental hearing officer may revoke the authority of the person permitted to appear under this rule. Absent special circumstances, repeated appearances by any person or firm of attorneys pursuant to this rule shall be cause for denial of the motion to associate such person.

    (a)    **Limitation.** It shall be presumed, absent special circumstances, and only upon showing of good cause, that more than 5 appearances by any attorney granted under this rule in a 3-year period is excessive use of this rule.

    (b)    **Burden on applicant.** The applicant shall have the burden to establish special circumstances and good cause for an appearance in excess of the limitation set forth in subsection 6(a) of this rule. The applicant shall set forth the special circumstances and good cause in an affidavit attached to the original verified application.

1. DATE OF APPLICATION: 10/13/2025

2. APPLYING ATTORNEY: Joseph Michael Calder, Jr, Esq.

///
///
///

3. FIRM NAME AND ADDRESS: <u>Olshan Frome Wolosky, LLP, 1325 Avenue of the Americas, New York, NY 10019</u>

4. NEVADA COUNSEL OF RECORD: <u>Todd E. Kennedy, Esq., Howard & Howard, 3800 Howard Hughes Pkwy., Ste. 1000, Las Vegas, NV 89169</u>

5. There is no record of previous applications for appearance by petitioner within the past three (3) years.

DATED this October 14, 2025

_____
Suzy Moore
Member Service Admin.
Pro Hac Vice Processor
STATE BAR OF NEVADA

# EXHIBIT D

Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International,
Ecoark, Inc., and Hyperscale Data, Inc.*

**EIGHTH JUDICAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation;<br><br>Plaintiffs,<br><br>v.<br><br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual;<br><br>Defendants. | Case No. A-25-929990-B<br><br>Dept. No. 9<br><br>**ORDER ADMITTING JOSEPH M. CALDER, JR PURSUANT TO SCR 42** |

Before the Court is Plaintiffs RiskOn International, Inc.'s (formerly known as BitNile Metaverse, Inc. and Ecoark Holdings, Inc.), Ecoark, Inc.'s, and Hyperscale Data Inc.'s (collectively "Plaintiffs") Motion to Associate Joseph Calder Jr. as counsel under Nevada Supreme Court Rule 42 on Order Shortening Time.

The Court finds that the Motion includes the verified application, certificate of good standing, and state bar statements as required by SCR 42(3)(c) and that therefore GRANTS the Motion.

HOWARD & HOWARD ATTORNEYS PLLC

- 1 -

IT IS HEREBY ORDERED that the application is GRANTED and Joseph M. Calder, Jr. is admitted to practice in the above-entitled Court for the purpose of the above-entitled matter only.

IT IS FURTHER ORDERED that pursuant to SCR 42(13)(a) pro hac counsel agrees to submit to the jurisdiction of and appear without subpoena for any proceedings required by the Court that relate to their conduct in the above-entitled matter, including motions, depositions, and evidentiary hearings.

_____

Submitted by:

**Howard & Howard Attorneys PLLC**

By: /s/ Todd E. Kennedy, Esq
Todd E. Kennedy, Esq.
Nevada Bar No. 6014
Martin A. Little, Esq.
Nevada Bar No. 7067
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: tek@h2law.com
Email: mal@h2law.com
Email: jwf@h2law.com

*Attorneys for Plaintiffs RiskOn International, Ecoark, Inc., and Hyperscale Data, Inc.*