TRAVIS F. CHANCE, ESQ., Nevada Bar No. 13800
tchance@bhfs.com
SARAH K. VOEHL, ESQ., Nevada Bar No. 16646
svoehl@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106
Telephone: (702) 382-2101
Facsimile: (702) 382-8135

DHAIVAT H. SHAH, ESQ. (will comply with LR IA 11-2)
ds@grellas.com
ROBERT H. O'LEARY, ESQ. (will comply with LR IA 11-2)
ro@grellas.com
GRELLAS SHAH LLP
550 California St., Suite 1040
San Francisco, CA 94104
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

*Attorneys for Defendants*
*Zest Labs Holdings, LLC and Gary Metzger*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RISKON INTERNATIONAL, INC., f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC. a Nevada Corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation; <br><br> Plaintiffs, <br><br> v. <br><br> ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; AND GARY METZGER, an individual; <br><br> Defendants. | Case No.: 2:25-cv-02042-APG-NJK <br><br> **DEFENDANTS' MOTION TO DISMISS** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Judge: Hon. Andrew P. Gordon <br><br> Complaint Filed: October 7, 2025 <br><br> **CONFIDENTIAL DOCUMENT FILED UNDER SEAL** |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## **TABLE OF CONTENTS**

Page (s)

MOTION TO DISMISS ............................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.    INTRODUCTION .......................................................................... 1

II.   SUMMARY OF FACTUAL ALLEGATIONS ..................................... 3

    A.    RiskOn Was A Holding Company, And Zest Labs Was One Of Its Operating Businesses ........................................................... 3

    B.    In 2018, RiskOn And Zest Labs File Trade Secret Litigation Against Walmart ................................................................. 4

    C.    In July 2022, RiskOn Discloses Its Plan To Spin Off All Operating Businesses Including Zest Labs ................................. 4

    D.    In 2023, Zest Holdings Is Formed And Enters Into The Stock Purchase Agreement ("SPA") To Acquire Zest Labs From RiskOn ........ 5

    E.    In August 2025, The Walmart Litigation Concludes ...................... 6

    F.    The Role Of The Depository Trust Company ("DTC") ................... 6

    G.    The October 7 Shareholder Update ......................................... 7

    H.    The Complaint ..................................................................... 7

III.  LEGAL STANDARDS ................................................................... 8

    A.    Rule 12(b)(6) Pleading Standard ............................................. 8

    B.    The Heightened Pleading Standard In Rule 9(b) Applies ............... 9

    C.    Governing Law ................................................................... 10

IV.  ARGUMENT ............................................................................. 10

    A.    All Claims Should Be Dismissed Because Plaintiffs Have Merely Pled That Zest Holdings Is Performing Its Obligations Under The SPA ........ 11

        1.    The Complaint Alleges That Zest Holdings Prosecuted The Walmart Litigation ....................................................... 11

        2.    The Complaint Alleges That Zest Holdings Is Required To Make A Distribution To RiskOn's Stockholders "Of Record" – Which Includes DTC .................................................. 11

        3.    The Complaint Does Not Plausibly Plead That The DTC Will Keep The Money ....................................................... 13

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

i

          4.   Expenditures By Zest Holdings Are Allowed By The SPA ...................15

   B.   Plaintiffs' Claims Fail For Additional Reasons ...............................17

       1.   Breach Of Contract ..................................................17

       2.   Breach Of The Implied Contractual Covenant Of Good Faith And Fair Dealing.................................................18

       3.   Tortious Breach Of The Covenant Of Good Faith And Fair Dealing.......19

       4.   Accounting .........................................................20

       5.   Constructive Trust..................................................21

       6.   Replevin ...........................................................21

       7.   Declaratory Relief .................................................22

   C.   Claims Against Metzger Must Be Dismissed For Additional Reasons ..........23

V.   CONCLUSION ....................................................................24

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1

## TABLE OF AUTHORITIES

2

<b>CASES</b> Page (s)

3
*In re Amerco Deriv. Litig.*,
    127 Nev. 196, 228 P.3d 681 (2011) ....................................................... 10

4

*In re Appraisal of Dell Inc.*,
5    No. CV 9322-VCL, 2015 WL 4313206 (Del. Ch. July 13, 2015) ........................... 6

6
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................... 8, 22
7

*Asian Am. Entm't Corp., Ltd. v. Las Vegas Sands, Inc.*,
8    324 Fed. App'x. 567 (9th Cir. 2009) ....................................................... 10

9
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................... 8, 22
10

*Bernard v. Rockhill Dev. Co.*,
11    734 P.2d 1238 (Nev. 1987) ....................................................... 17

12
*Bly–Magee v. State of Cal., et al.*,
    236 F.3d 1014 (9th Cir. 2001) ....................................................... 10
13

*Consol. Generator–Nev., Inc. v. Cummins Engine Co., Inc.*,
14    114 Nev. 1304, 971 P.2d 1251 (1998) ....................................................... 10

15
*Cook v. Cook*,
    112 Nev. 179, 912 P.2d 264 (1996) ....................................................... 19
16

*Covington Bros. v. Valley Plastering, Inc.*,
17    93 Nev. 355, 566 P.2d 814 (1977) ....................................................... 18

18
*Cueto-Reyes v. All My Sons Moving Company of LV*,
    No. 2:09-cv-2299-ECR-RJJ, 2010 WL 11579989 (D. Nev. Apr. 5, 2010) ...............20
19

*Donovan v. Flamingo Palms Villas, LLC*,
20    No. 08-cv-01675-RCJ-RJJ, 2010 WL 1006717 (D. Nev. Mar. 15, 2010) ............... 9

21
*Ene v. Graham*,
    546 P.3d 1232 (Nev. 2024) ....................................................... 23, 24
22

*Franks v. Lens.com*,
23    No. 24-cv-00724-JAD-NJK, 2024 WL 4279246 (D. Nev. Sept. 23, 2024) ............. 9

24
*Fung Ying Leung v. Mortg. Elec. Registration Sys., Inc.*,
    No. 2:12-cv-1393-JCM-VCF, 2013 WL 237225 (D. Nev. Jan. 22, 2013) .............22
25

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*,
26    No. 04-cv-1199 DAE–GWF, 2009 WL 10692668 (D. Nev. Oct. 5, 2009) .............20

27
*Giles v. General Motors Acceptance Corp.*,
    494 F. 3d 865 (9th Cir. 2007) ....................................................... 19
28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

DEFENDANTS' MOTION TO DISMISS

*Godfrey v. Gilsdorf,*
    86 Nev. 714, 476 P.2d 3 (1970) ................................................................................21

*Great Am. Ins. Co. v. Gen. Builders, Inc.,*
    113 Nev. 346, 934 P.2d 256 (1997) ..........................................................................19

*Hatfield v. Halifax PLC,*
    564 F.3d 1177 (9th Cir. 2009) ..................................................................................10

*Hilton Hotels Corp. v. Butch Lewis Prods., Inc.,*
    107 Nev. 226, 808 P.2d 919 (1991) ..........................................................................18

*Horwitz v. Sw. Forest Indus., Inc.,*
    612 F. Supp. 179 (D. Nev. 1985) ..............................................................................12

*JPMorgan Chase Bank, N.A. v. KB Home,*
    632 F. Supp. 2d 1013 (D. Nev. 2009) ......................................................................21

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ....................................................................................9

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988 (9th Cir. 2018) ......................................................................................9

*Klein v. Freedom Strategi Partners, LLC,*
    595 F. Supp. 2d 1152 (D. Nev. 2009) ......................................................................19

*Leavitt v. Leisure Sports, Inc.,*
    103 Nev. 81, 734 P.2d 1221 (1987) ..........................................................................20

*LFC Marketing Group, Inc. v. Loomis, et al.,*
    116 Nev. 896, 8 P.3d 841 (2000) ..............................................................................23

*McDermott Inc. v. Lewis,*
    531 A.2d 206 (Del. 1987) ..........................................................................................12

*Merriam v. Demoulas Super Markets, Inc.,*
    464 Mass. 721, 727 (Mass. 2013) ............................................................................20

*Miyayama v. Burke,*
    No. 2:20-cv-01683-DJA, 2022 WL 1665211 (D. Nev. May 25, 2022) ..............9, 10

*Moss v. U.S. Secret Serv.,*
    572 F.3d 962 (9th Cir. 2009) ......................................................................................8

*Okwu v. McKim,*
    682 F.3d 841 (9th Cir. 2012) ....................................................................................24

*Peterson v. Islamic Republic of Iran,*
    No. 10-cv-4518-KBF, 2013 WL 2246790 (S.D.N.Y. May 20, 2013) ......................14

*In re PLX Tech. Inc. S'holders Litig.,*
    No. CV 9880-VCL, 2022 WL 1133118 (Del. Ch. Apr. 18, 2022) ....................14, 15

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

iv

*Rainbow Nav., Inc. v. Pan Ocean Nav., Inc.*,
    535 A.2d 1357 (Del. 1987) ................................................................... 12

*Ramirez v. Gilead Sciences, Inc.*,
    66 Cal. App. 5th 218 (Cal. App. 2021) ................................................. 13

*Sadler v. NCR Corp.*,
    928 F.2d 48 (2d Cir. 1991) ................................................................... 12

*Shaw v. CitiMortgage, Inc.*,
    201 F. Supp. 3d 1222 (D. Nev. 2016) ................................................... 18

*StreamCast Networks, Inc. v. IBIS LLC*,
    No. 05-cv-04239, 2006 WL 5720345 (C.D. Cal. May 2, 2006) ............ 22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ............................................................................... 8

*Universal Ent. Corp. v. Aruse Gaming Am., Inc.*,
    No. 18-cv-00585-RFB-NJK, 2020 WL 2840153 (D. Nev. May 30, 2020) .............. 9

*In re USA Com. Mortg. Co.*,
    No. 2:07-cv-00892-RCJ-GWF, 2009 WL 10679115 (D. Nev. Sept. 18, 2009) ...... 20

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................... 9, 10

*Virgin Valley Water Dist. v. Paradise Canyon LLC*,
    567 P.3d 962 (Nev. 2025) ..................................................................... 13

*Walker v. State Farm Mut. Auto. Ins. Co.*,
    259 F. Supp. 3d 1139 (D. Nev. 2017) ................................................... 17

*Wright, et al., v. Farello, et al.*,
    C.A. No. 2024-0306-KSJM, 2025 WL 3012956 (Del. Ch. Oct. 27, 2025) ............ 14

**STATUTES**

Nevada Revised Statutes:

    17.120 ................................................................................................ 21, 22

    78.010 .................................................................................................... 12

    78.012 .................................................................................................... 12

    78.105 ................................................................................................. 6, 12

    86.376 ................................................................................................ 23-24

    104.8101 ................................................................................................. 13

    104.8102 ................................................................................................. 14

    104.8505 ................................................................................................. 14

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

# OTHER AUTHORITIES

Fed. R. Civ. P.:

    9(b) ...................................................................................................... 9, 10

    12(b)(6) ................................................................................................. 1, 8

17 C.F.R.:

    § 240.17a-1 .............................................................................................. 15

    § 240.17a-3 .............................................................................................. 15

    § 240.17a-4 .............................................................................................. 15

Uniform Commercial Code:

    § 8-102 ..................................................................................................... 14

    § 8-505 ..................................................................................................... 14

Black's Law Dictionary (12th ed. 2024):

    *Proceeds* .................................................................................................. 16

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

DEFENDANTS' MOTION TO DISMISS

**TABLE OF ABBREVIATIONS**

| Short Form | Full Meaning |
|---|---|
| RiskOn | Plaintiff RiskOn International, Inc., known as Bitnile Metaverse, Inc. before November 2023, and as Ecoark Holdings, Inc. before March 2023. |
| Ecoark | Plaintiff Ecoark, Inc.  Ecoark is a wholly-owned subsidiary of RiskOn. |
| Hyperscale | Plaintiff Hyperscale Data, Inc.  Hyperscale is the current majority owner of RiskOn. |
| RiskOn Group | Plaintiffs RiskOn, Ecoark, and Hyperscale and all of their predecessors. |
| Zest Labs | Zest Labs, Inc., a former subsidiary of Ecoark and RiskOn, and a current subsidiary of Zest Holdings. |
| Zest Holdings | Defendant Zest Labs Holdings, LLC. |
| SPA | The Stock Purchase Agreement dated August 28, 2023 between Zest Holdings, on the one hand, and Ecoark and RiskOn, on the other. |
| Record Date | November 15, 2022. |
| Walmart | Walmart, Inc. |
| Walmart Litigation | The theft of trade secret lawsuit filed by Zest Labs and RiskOn against Walmart. |
| SEC | United States Securities and Exchange Commission |
| DTC | The Depository Trust Company |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

DEFENDANTS' MOTION TO DISMISS

**MOTION TO DISMISS**

Defendants Zest Labs Holdings, LLC and Gary M. Metzger, by and through their attorneys of record of the law firms of Brownstein Hyatt Farber Schreck, LLP and Grellas Shah LLP, hereby submit their Motion to Dismiss Plaintiffs' Complaint (the "Motion") under Fed. R. Civ. P. 12(b)(6) and 9(b) on the grounds that the Complaint fails to state a claim for relief.

This Motion is based on the following memorandum of points and authorities; Defendants' request for judicial notice and the declaration of Robert H. O'Leary and the exhibits thereto, both filed concurrently herewith; the pleadings and papers on file with the Court; and any oral argument and any other matters that the Court may entertain.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The Complaint fails to state any claim for relief.  The factual allegations establish only that Zest Holdings and Mr. Metzger are complying with their obligations under the applicable contract, the SPA.

The relevant terms of the SPA are straightforward and unambiguous.  Zest Holdings is required to make a distribution to RiskOn's stockholders "of record" as of November 15, 2022. This phrase has a very specific legal meaning, as confirmed by the relevant provisions of the Nevada Revised Statutes and the decisional case law from courts around the country: it means the stockholders who are identified on RiskOn's stock ledger, a document that all corporations are required to maintain listing the stockholders and details of the shares they each own.

In 2022, RiskOn was a public company with its stock listed on the Nasdaq stock exchange.  As such, any public market investor with a brokerage account could acquire RiskOn common stock by placing an order with a broker.  Many did so, and as a result, on November 15, 2022, approximately 80% of RiskOn's common stock was owned by public market investors.  In legal parlance, these investors were "beneficial owners" because while they had all the hallmarks of ownership (*i.e.*, they could sell the stock and had the right to the economic benefits flowing from ownership), they were not listed on RiskOn's stock ledger.  A publicly-traded company simply has no ability to keep a list of all of its underlying public market

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

investors. Rather, the system that has developed in the United States is that stock owned by public market investors is reflected on the stock ledgers of publicly traded companies as being owned by Cede & Co., which is a nominee of the DTC. Securities brokers and custodian banks are referred to as DTC participants. The way the system functions, in a nutshell, is that each broker informs the DTC how many shares all of its customers collectively own, and the DTC then compiles the number of shares collectively owned by all the brokers, and DTC's nominee, Cede & Co., holds the legal title to all the shares owned by all the brokerage firms. The result is that the corporation's stock ledger reflects that a single shareholder, Cede & Co., owns all of the stock beneficially owned by public market investors. This is exactly why on November 15, 2022, RiskOn's stock ledger stated that Cede & Co. was the stockholder of record for approximately 80% of the outstanding common stock.

Against this backdrop, it is relatively straightforward what the SPA requires of Zest Holdings—it must make a distribution to the investors identified as stockholders of record on RiskOn's stock ledger as of November 15, 2022, and that includes Cede & Co. as a nominee for the DTC.

The Complaint suggests that doing so will defeat the purpose of the SPA and will send the money into a "black hole" because, according to the Complaint, the DTC and the brokerage firms no longer have the records to identify the beneficial owners of RiskOn as of November 15, 2022. The Complaint offers no plausible factual allegations to support this contention. The securities industry is highly regulated, and the applicable rules and regulations issued by the SEC provide that the DTC must maintain detailed records for five years and that brokers must maintain records for six years. Because November 15, 2022, is less than three years ago, the DTC and brokers are required by law to have the necessary records to identify RiskOn's beneficial owners.

Nor can the DTC or the brokers simply keep the money, as the Complaint asserts without any supporting factual allegations. Here again, the well-established legal rules that govern the securities industry contradict the conclusory allegations. Securities transactions between securities intermediaries and beneficial owners are governed by Article 8 of the Uniform

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  Commercial Code.  The relevant provisions specify that when securities intermediaries such as

2  the DTC and brokerage firms receive a distribution of funds, they must deliver the money to the

3  beneficial owners.  For this reason, it is an established practice for settlement funds in securities

4  litigation matters to be distributed to beneficial owners by means of a direct payment to the DTC.

5  The Complaint also makes the vague allegation that Zest Holdings is making

6  inappropriate expenditures and failing to provide information to Plaintiffs.  This is also defeated

7  by the plain terms of the SPA.  The SPA states that Zest Holdings will distribute "net proceeds,"

8  which is an unambiguous term that means the money remaining after incurring expenses.  The

9  SPA does not give Plaintiffs any specific informational rights.

10  With this irrefutable background, the Complaint has not come close to making well-pled

11  allegations that state a claim for relief.  Stripped of its baseless hyperbole, what the Complaint

12  alleges is that Zest Holdings is in the process of complying with its contractual obligation to

13  make a distribution to RiskOn's stockholders of record as of November 15, 2022.  It is not a

14  breach of any legal duty for Zest Holdings to perform its contractual obligations.  Therefore, the

15  Complaint should be dismissed in its entirety.  Dismissal should be with prejudice because

16  Plaintiffs cannot cure the fundamental defects in their pleading.

17  **II.**     **SUMMARY OF FACTUAL ALLEGATIONS**[1]

18      **A.**     **RiskOn Was A Holding Company, And Zest Labs Was One Of Its**
            **Operating Businesses**

19

20  RiskOn is a holding company that previously owned several operating businesses.

21  Compl. ¶ 1, 9; Ex. 1, at 005; *see also* Exs. 4, at 036; Ex. 6, at 047 (indicating that RiskOn was

22  previously named BitNile Metaverse, Inc., and before that Ecoark Holdings, Inc.).  In 2022,

23  RiskOn was listed on the Nasdaq stock exchange and made regular public filings with the SEC.

24  Ex. 1, at 001.

25

26  [1] The facts are from the Complaint, cited by "Compl. ¶ __," together with documents
    incorporated by reference and facts subject to judicial notice under Defendants' Request for

27  Judicial Notice, filed herewith.  All references to "Ex. __" are to the Exhibits attached to the
    declaration of Robert H. O'Leary, also filed herewith.  For purposes of this Motion only, the

28  Complaint's well-pled factual allegations are presumed true, but not its contentions, conclusions,
    and implausible inferences.

3

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Hyperscale is a RiskOn shareholder, and Ecoark is a RiskOn subsidiary.  Compl. ¶¶ 2-3.

Hyperscale is currently RiskOn's majority shareholder.  *Id.* ¶ 3.

Until August 2023, Zest Labs was a wholly owned subsidiary of RiskOn.  *Id.* ¶ 10, 13.

**B.**    **In 2018, RiskOn And Zest Labs File Trade Secret Litigation Against Walmart**

In 2018, RiskOn and its then-wholly owned subsidiary Zest Labs commenced the

Walmart Litigation by filing a complaint against Walmart for theft of trade secrets.  Compl.

Exhibit 4.  In 2021, a jury found in Zest Labs' favor and awarded Zest Labs and RiskOn $115

million in damages.  *Id.*  Later, Walmart moved for, among other things, a new trial.  *Id.*

**C.**    **In July 2022, RiskOn Discloses Its Plan To Spin Off All Operating Businesses Including Zest Labs**

In July 2022, RiskOn disclosed to shareholders that RiskOn "plan[ned] to distribute all

of our operating assets to our stockholders as dividends."  Ex. 1, at 023.  At that time, Zest Labs

was among the operating assets of RiskOn.  Compl. ¶ 10.  On August 12, 2022, RiskOn disclosed

further details of this plan to distribute all of its operating subsidiaries to its shareholders:

> [RiskOn] has decided it is in the best interests of its shareholders that it divest all
> of its operating assets through a series of spin-offs or stock dividends to
> [RiskOn]'s shareholders. . . .  [RiskOn]'s goal is to complete these spin-offs in
> calendar 2022 and acquire a new business prior to the last spin-off so it does not
> become a shell corporation.  Because all spin-offs require the transactions or the
> subsidiaries to be registered with the Securities and Exchange Commission,
> [RiskOn] may not complete all spin-offs in 2022.

Ex. 2, at 027.

On January 24, 2023, RiskOn stated in an SEC filing that it had decided to make a cash

distribution of the proceeds from Zest Labs' Walmart Litigation to its security holders:

> [RiskOn] previously announced its planned distributions to its security holders,
> pro rata on a fully-diluted basis, of the shares of Common Stock held by or
> issuable to [RiskOn] of . . . Zest[.] . . .  The Zest distribution had a record date
> of November 15, 2022, however [RiskOn] subsequently determined to
> restructure that distribution as a cash distribution of at least 95% of the net
> proceeds received in Zest's litigation, in lieu of distribution [of] the Zest
> Common Stock.  Zest's Articles of Incorporation were amended to provide for
> such cash distribution, which will be subject to final determination of the pending
> lawsuits which were outstanding as of the November 15, 2022 record date.

Ex. 3, at 033.

4

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**D.**     **In 2023, Zest Holdings Is Formed And Enters Into The Stock Purchase Agreement ("SPA") To Acquire Zest Labs From RiskOn**

In July 2023, RiskOn disclosed in its annual report filed with the SEC that it intended to transfer all the common stock of Zest Labs to a new LLC it created, Zest Holdings:

> **[RiskOn] intends to transfer all of the common stock of Zest Labs into Zest Labs Holdings LLC ("Zest Holdings"), a private limited liability company the Company formed** and that will own all of the intellectual property of Zest Labs as well as the rights to any funds obtained from current and future intellectual property litigation by Zest Labs. [RiskOn] also amended the Zest Labs charter to require that it distribute at least 95% of the net proceeds of the pending Zest Labs litigation recoveries, if any, to [RiskOn's] shareholders as of November 15, 2022.

Ex. 5, at 044 (emphasis added).

On August 28, 2023, Ecoark and RiskOn, on the one hand, and Zest Holdings, on the other, entered into the SPA. Compl. ¶ 13. As relevant here, the SPA provides that:

> WHEREAS, [RiskOn], . . . has previously indicated in public filings with the Securities and Exchange Commission that it intends to spin-off the common stock of [Zest Labs] held by [Ecoark] to **[RiskOn's] security holders of record as of November 15, 2022 (the "Record Date Owners")**;
>
> WHEREAS, following the announcement of the spin-off of [Zest Labs], [RiskOn] recognized that [Zest Labs] did not have the revenue to and could not otherwise operate as a public company and determined to instead distribute the net proceeds from certain assets of [Zest Labs], including from the litigation proceeds, to the Record Date Owners, and [Zest Holdings] was formed for the benefit of [RiskOn] security holders entitled to participate in such distribution in the furtherance thereof;
>
> WHEREAS, in order to facilitate the above-described distribution by [RiskOn], and for the other consideration described herein, [Ecoark] desires to sell the Shares to [Zest Holdings], and [Zest Holdings] desires to purchase such Shares from [Ecoark], on the terms set forth in this Agreement and to protect the rights of the Record Date Owners.
>
> . . . the Parties agree as follows:
>
> [Ecoark] hereby acknowledges the valuable consideration in full to be received by [Ecoark], **by virtue of transferring the Shares to [Zest Holdings], which transfer will facilitate the distribution of net proceeds derived from [Zest Labs'] litigation to the Record Date Owners and is consistent with the expectations of such Record Date Owners**. Each party hereto further acknowledges and agrees that it will receive good and valuable consideration for entering into this Agreement.

5

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    Compl. Exhibit 1 (emphasis added).

2         Mr. Metzger signed the SPA in his capacity as the Manager of Zest Holdings.  *Id.*

3         **E.        In August 2025, The Walmart Litigation Concludes**

4         The court granted Walmart's motion for a new trial.  Compl. Exhibits 3, 4.  The matter

5    proceeded to trial, and it was publicly reported in June 2025, that a jury awarded Zest Labs Inc.

6    nearly $223 million.  Compl. ¶ 16.  Soon after, the parties to the litigation reached a confidential

7    settlement.  *Id.*

8         The Complaint alleges, on information and belief, that the settlement with Walmart

9    provided Zest Holdings with a substantial cash payment.  Compl. ¶ 16.  It further alleges that

10   since purportedly receiving the settlement proceeds, Zest Holdings has not yet made a

11   distribution but has engaged professional advisors and provided written updates to RiskOn's

12   shareholders.  Compl. ¶¶ 17, 21.

13        **F.        The Role Of The Depository Trust Company ("DTC")**

14        Corporations are required to maintain a list of their stockholders, also called a stock

15   ledger.  *See, e.g.*, NRS 78.105.  Plaintiffs allege that "approximately 80% of RiskOn's shares"

16   as of November 15, 2022, were reflected on RiskOn's stock ledger as being owned by Cede &

17   Co., a nominee for the DTC.  Compl. ¶ 15, 20.

18        The DTC is not the ultimate owner of any stock.  Compl. ¶ 20.  Rather, the DTC is a

19   central depository that holds securities certificates reflecting the shares owned by its participants,

20   which are the brokerage firms and banks whose customers are the underlying individual public

21   market investors who have purchased or acquired the securities through their accounts with

22   brokerage firms.  Compl. ¶ 20.  Cede & Co. is a partnership used by DTC as its nominee to serve

23   as the record owner identified on public company stock ledgers for the securities deposited with

24   the DTC.  *See In re Appraisal of Dell Inc.*, No. CV 9322-VCL, 2015 WL 4313206, at *6 (Del.

25   Ch. July 13, 2015), *as revised* (July 30, 2015).  Therefore, as was the case with RiskOn, when a

26   public market investor buys a share of stock, "it is now Cede—not the ultimate beneficial owner

27   and not the DTC-participant banks and brokers—that appears on the stock ledger of a . . .

28   corporation."  *Id.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

The Complaint alleges that the DTC "does not maintain records of shares held in individual brokerage accounts," but instead that its records "concern the ownership of shares held by its 'participants[.]'" Compl. ¶ 20.  It alleges that the "DTC's participants have no ability to determine share ownership by individual account holders three years after the fact and often have no records at all concerning the individual accounts held with introducing brokers." *Id.*

G.    **The October 7 Shareholder Update**

The Complaint alleges that Zest Holdings sent an update to RiskOn shareholders on October 7, 2025, which states that:

> 1. <u>Banking and Shareholder Verification</u>. We are pleased to announce that we have engaged Western Alliance Bank to oversee the proper retention and disbursement of Zest Proceeds to the Record Holders.  To facilitate timely access to the Record Holders to their respective funds, Western Alliance Bank has established a dedicated escrow account exclusively for the benefit of the Record Holders.
>
> 2. <u>Remittance Zest Proceeds</u>. We are currently working on the proper dispersal and remittance of the funds to each Record Holder and appreciate your cooperation during this time.  Our aim is to ensure that the dispersal is complete by November 10th, 2025.  We are presently encountering delays as we work to resolve outstanding clarifications related to our tax obligations.
>
> 3. <u>Taxation Obligations</u>. While we have finalized the disbursement process, we have sought a tax opinion for the transaction.  Our objective is to ensure that any taxation of the settlement amount to Zest Labs, Inc., is properly reserved and that all tax consequences of the transaction are understood.  We will likely receive the tax opinion by early next week and will continue with the disbursement process accordingly.

Ex. 7 (referenced in Compl. ¶ 21).

H.    **The Complaint**

Mere hours after this update was sent, the RiskOn Group filed the Complaint in the Eighth Judicial District Court of Clark County, Nevada.   The Complaint's allegations of wrongdoing are:

<u>Failure and Inability to Distribute</u>:  The Complaint alleges that Zest Holdings and Mr. Metzger are in breach of the SPA because they have not yet made a distribution, and that a distribution to RiskOn's shareholders by means of a direct payment to the DTC is impossible. Compl. ¶¶ 20, 30.  The Complaint alleges that if Zest Holdings makes a distribution to the DTC, "DTC will either keep the funds for itself, or distribute them to its participants, who will keep

7

them for themselves." *Id.* ¶ 21.  The Complaint also makes the vague allegation that "Defendants have made clear that they intend to pocket any litigation proceeds returned by DTC and/or if RiskOn's eligible stockholder cannot be located." *Id.* ¶ 22.  (The Complaint does not allege when, where, or how, Defendants said that or who they said that to.)

Fees and Expenses:  The Complaint alleges that Defendants have not provided an accounting of all expenses that Zest Holdings has incurred, and that Zest Holdings is incurring unnecessary expenses.  Compl. ¶¶ 17, 19.  The Complaint does not specify what the excessive expenses are.

Mr. Metzger:  The Complaint makes the conclusory allegation that Mr. Metzger is the alter ego of Zest Holdings.  Compl. ¶ 26(j).  There are no factual allegations whatsoever explaining how Mr. Metzger and Zest Holdings are alter egos.

Based on these allegations, the Complaint asserts claims against Zest Holdings and its manager, Mr. Metzger, for breach of the SPA, breach of the covenant of good faith and fair dealing implied in the SPA, accounting, constructive trust, and replevin.  The Complaint also seeks a declaratory judgment of the parties' rights under the SPA.

On October 22, 2025, Defendants timely and properly removed the Complaint to this Court.

## III.  **LEGAL STANDARDS**

### A.    **Rule 12(b)(6) Pleading Standard**

A district court should grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Bare assertions in a complaint amounting "to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009)) (internal quotation marks omitted).

In ruling on a motion to dismiss, the Court must consider the complaint, documents incorporated by reference, and matters subject to judicial notice.  *See Tellabs, Inc. v. Makor*

8

1    *Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d

2    988, 998 (9th Cir. 2018).

3          **B.**       <u>**The Heightened Pleading Standard In Rule 9(b) Applies**</u>

4          Where fraud is not a claim for relief alleged or a necessary element of a claim, "a plaintiff

5    may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent

6    conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). If a plaintiff

7    makes such allegations, Fed. R. Civ. P. 9(b) applies and a plaintiff must plead "the who, what,

8    when, where, and how" of the misconduct alleged. *Id.* at 1106. General allegations of fraud

9    supported by neutral facts do not meet the heightened pleading standard of Rule 9(b). *See*

10    *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124, 1127 (9th Cir. 2009).

11          Rule 9(b) applies to the Complaint. It alleges: "Defendants have acted in bad faith and

12    in breach of their fiduciary duties in a bid to capture and retain the Walmart Litigation Proceeds

13    that belong to RiskOn's stockholders." Compl. ¶ 23. It further alleges: "Defendants have made

14    clear that they intend to pocket any litigation proceeds" and that to adhere to the corporate form

15    "would sanction a fraud or promote injustice." *Id.* ¶¶ 22-23. What Plaintiffs are alleging is a

16    unified course of conduct by Defendants to take money. That is the essence of fraud, and the

17    Complaint therefore "sounds in fraud" for purposes of Rule 9(b). *See Donovan v. Flamingo*

18    *Palms Villas, LLC*, No. 08–cv–01675–RCJ–RJJ, 2010 WL 1006717, at *6 (D. Nev. Mar. 15,

19    2010) (applying Rule 9(b) where plaintiffs alleged defendants and their shell companies had

20    scheme to raise money from plaintiffs to acquire a development but not provide plaintiff with

21    an ownership interest). The courts in this district routinely apply 9(b) to similar complaints that

22    allege fraudulent conduct. *See, e.g.*, *Miyayama v. Burke*, No. 20-cv-01683-DJA, 2022 WL

23    1665211, *6 (D. Nev. May 25, 2022) (claims for relief for unjust enrichment, conversion, and

24    aiding and abetting breach of fiduciary duty); *Universal Ent. Corp. v. Aruse Gaming Am., Inc*.,

25    No. 18-cv-00585-RFB-NJK, 2020 WL 2840153, at *15 (D. Nev. May 30, 2020) (intentional

26    interference with prospective economic advantage and violation of the Lanham Act); *Franks v.*

27    *Lens.com*, No. 24-cv-00724-JAD-NJK, 2024 WL 4279246, at *5 (D. Nev. Sept. 23, 2024) (trade

28    secret claim). Rule 9(b) is also applicable because Plaintiffs' claim for breach of fiduciary duty

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

9

is analogous to fraud. *See Miyayama*, 2022 WL 1665211 at *6 ("In Nevada, a breach of fiduciary duty is analogous to fraud."); *In re Amerco Deriv. Litig.*, 127 Nev. 196, 228, 252 P. 3d 681, 703 (2011) (same).

Because the Complaint is subject to the heightened pleading standards of Rule 9(b), the Complaint must include detailed allegations that are "specific enough to give defendants notice of the particular misconduct [] so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. State of Cal., et al.*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). Plaintiffs' allegations must include, "'the who, what, when, where, and how' of the misconduct charged[,]" and they must allege "*more* than neutral facts necessary to identify the transaction." *Vess*, 317 F. 3d at 1106 (emphasis in original).

**C.    Governing Law**

When a federal court sits in diversity, it must apply the choice-of-law rules of the forum state. *See, e.g.*, *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009); *Asian Am. Entm't Corp., Ltd. v. Las Vegas Sands, Inc.*, 324 F. App'x. 567, 568 (9th Cir. 2009). The Complaint is premised on a purported breach of the SPA. To determine which state's law to apply to claims based on a breach of contract, Nevada uses the "substantial relationship" test. *Consol. Generator–Nev., Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304, 1307, 971 P.2d 1251, 1253 (1998). Under this test and based on the allegations in the Complaint, Nevada law should govern. Plaintiffs allege that they are Nevada corporations, and that Nevada law applies to the SPA. Compl. ¶¶ 1-3, 7, 38. The allegations in the Complaint provide no basis to conclude otherwise. For purposes of this Motion, therefore, Plaintiffs' claims should be governed by Nevada law.

**IV.    ARGUMENT**

All six of Plaintiffs' claims fail for the overarching reason that the Complaint merely pleads that Defendants are complying with the SPA. The performance of obligations imposed by a contract cannot be a breach of contract. Nor can it support any of Plaintiffs' other claims. For this reason, the entire Complaint should be dismissed.

On top of this foundational defect, Plaintiffs have stated no viable causes of action.

10

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**A.    All Claims Should Be Dismissed Because Plaintiffs Have Merely Pled That Zest Holdings Is Performing Its Obligations Under The SPA**

As relevant to the claims in the Complaint, the SPA requires Zest Holdings to do two principal tasks: prosecute the Walmart Litigation and distribute the net proceeds, if any, to RiskOn's stockholders "of record" as of November 15, 2022. That is what the Complaint alleges Defendants are doing. Therefore, under any pleading standard, Plaintiffs have failed to state any viable cause of action.

### 1.    The Complaint Alleges That Zest Holdings Prosecuted The Walmart Litigation

The Complaint alleges that Zest Holdings prosecuted the Walmart Litigation, consistent with Zest Holdings' obligations under the SPA. The Complaint alleges that in June 2025, during Zest Holdings' ownership of Zest Labs, a $222.7 million verdict was obtained during a second trial against Walmart. Compl. ¶ 16, Exhibit 3. The Complaint further alleges that Zest Holdings later procured a settlement with Walmart that yielded a "significant cash payment." *Id.* Accepting these facts as true for purposes of the Motion, the Complaint pleads that Zest Holdings performed in good faith its contractual duty to manage Zest Labs' litigation against Walmart.

### 2.    The Complaint Alleges That Zest Holdings Is Required To Make A Distribution To RiskOn's Stockholders "Of Record" – Which Includes DTC

As for Zest Holdings' next task under the SPA—to distribute the net proceeds to RiskOn's stockholders "of record" as of November 15, 2022—the Complaint pleads that Zest Holdings is endeavoring to do exactly that. The Complaint alleges that as of November 15, 2022, approximately 80% of RiskOn stock were held in brokerage accounts, and that all of that stock appeared on RiskOn's stock ledger as being owned by Cede & Co., as a nominee for the DTC. Compl. ¶ 20. Plaintiffs allege that Zest Holdings has stated that it intends to issue a payment to the DTC but has not yet done so. *Id.* ¶ 21.

The insurmountable problem Plaintiffs face is that this is precisely what the SPA requires Zest Holdings to do. The SPA expressly requires a distribution directly to the "Record Date

11

Owners." Compl. Exhibit 1, at 0002. The SPA defines the term "Record Date Owners" as "[RiskOn's] security holders *of record* as of November 15, 2022." *Id.* (emphasis added). It is important for the Court to understand the meaning of phrase "of record." As a Nevada corporation, RiskOn's internal affairs are governed by Nevada law. NRS 78.012(2) ("The laws of [Nevada] govern the incorporation and internal affairs of a domestic corporation and the rights, privileges, powers, duties and liabilities, if any, of its directors, officers and stockholders."); *see also Horwitz v. Sw. Forest Indus., Inc.*, 612 F. Supp. 179, 182 (D. Nev. 1985); *McDermott Inc. v. Lewis*, 531 A.2d 206, 215 (Del. 1987). And under Nevada law, "'*Stockholder of record' means a person whose name appears on the stock ledger of the corporation as the owner of record of shares of any class or series of the stock of the corporation. The term does not include a beneficial owner of shares who is not simultaneously the owner of record of such shares as indicated in the stock ledger*." NRS 78.010 (emphasis added). And to drive home the distinction between record holders and beneficial owners, the statute requiring Nevada corporations to maintain a stock ledger states that the ledger shall contain, "only the names, alphabetically arranged, of all persons who are stockholders of record of the corporation, showing their places of residence, if known, and the number of shares held by them respectively. A corporation is not required to keep a list of any person who is a beneficial owner of any shares who is not simultaneously the stockholder of record of such shares, or any other information concerning any person having an interest in the corporation, except for the stock ledger or duplicate stock ledger required by this paragraph." NRS 78.105.

Courts around the country have confirmed that the phrase stockholder "of record" means only the individuals stated on the corporation's stock ledger and does not include beneficial owners. *See, e.g.*, *Rainbow Nav., Inc. v. Pan Ocean Nav., Inc.*, 535 A.2d 1357, 1359 (Del. 1987) (applying Delaware law and explaining that "stockholders of record" are those whose names appear in the company's stock ledger); *Sadler v. NCR Corp.*, 928 F.2d 48, 50 (2d Cir. 1991) (applying New York law and explaining that corporation's "record owners" are indicated in the company's records, while shares held beneficially are reflected in the company's records only

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

12

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

under the names of the nominees used by depository firms); *Ramirez v. Gilead Sciences, Inc.*, 66 Cal. App. 5th 218, 223-224 (2021) (applying California law, and holding that beneficial owners lack standing to make shareholder books and records request because statute granting inspection rights is limited to shareholders "of record").

With this background, when the SPA requires Zest Holdings to make a distribution to RiskOn's stockholders "of record," there can be no doubt that this means the persons and entities on the stock ledger, including Cede & Co. It is also apparent from the face of the SPA that the contracting parties understood the difference between a "record" owner and a "beneficial" owner because in Section 3.1 of the SPA, RiskOn represents and warrants that it is the "record and beneficial owner" of shares. Compl. Exhibit 1, § 3.1.

The SPA is therefore unambiguous that Zest Holdings is required to make a distribution to the stockholders "of record" of RiskOn as of November 15, 2022, and that includes the DTC. When a contract's language is clear and unambiguous, the court must enforce the contract as written. "Ambiguity does not arise simply because the parties dispute the interpretation of a contract[.]" *Virgin Valley Water Dist. v. Paradise Canyon LLC*, 567 P.3d 962, 969 (Nev. 2025).

### 3. The Complaint Does Not Plausibly Plead That The DTC Will Keep The Money

The Complaint alleges that enforcing the SPA as written would defeat its purpose because, purportedly, if Zest Holdings makes a distribution to the DTC, the money will be sent "into a black hole." Compl. ¶ 21. This is an implausible and conclusory allegation contradicted by the basic and well-established legal principles that govern the securities brokerage industry, and is further contradicted by the many court decisions each year that have approved securities litigation settlements with payments to beneficial holders by means of a direct payment to the DTC.

The transfer of stock is governed by Article 8 of the Uniform Commercial Code, which has been enacted in Nevada (among many other places). *See Wright, et al., v. Farello, et al.*, No. 2024-0306-KSJM, 2025 WL 3012956, at *8 n.56 (Del. Ch. Oct. 27, 2025) (noting that transfers of stock of Delaware corporations is governed by U.C.C. Article 8); NRS 104.8101,

13

*et seq.* (enacting U.C.C. Article 8 in Nevada).  Under Article 8, a beneficial owner of a security is defined as an "entitlement holder," and the DTC and the broker dealers and bank custodians are referred to as "securities intermediaries."  U.C.C. § 8-102(7), (14); NRS 104.8102(h), (m). Section 505(b) of Article 8 then provides: "[a] securities intermediary is obligated to its entitlement holder for a payment or distribution made by the issuer of a financial asset if the payment or distribution is received by the securities intermediary."  U.C.C. § 8-505(b); NRS 104.8505(2).

In other words, securities intermediaries such as the DTC and brokerage firms ***must*** transfer any funds they receive to the ultimate entitlement holder and cannot keep the money or allow it to fall into a "black hole," as the Complaint suggests.  *See, e.g.*, *Peterson v. Islamic Republic of Iran*, No. 10-cv-4518-KBF, 2013 WL 2246790, at *4 (S.D.N.Y. May 20, 2013) (citing N.Y. U.C.C.L. § 8-505, and explaining that "[i]n the absence of the federal blocking regimes that froze the account at Citibank, Clearstream would have been obligated to transfer the Blocked Assets to their one true owner—bank Markazi").  Official Comment 1 to this section of the U.C.C. confirms this: "One of the core elements of the securities account relationships for which the Part 5 rules were designed is that the securities intermediary passes through to the entitlement holders the economic benefit of ownership of the financial asset, such as payments and distributions made by the issuer of the financial asset."  U.C.C. § 8-505, Cmt. 1.

Because of this fundamental aspect of the legal structure governing the securities industry, distributing settlement funds to the DTC and its participants for ultimate distribution to the beneficial owners as of a record date several years in the past is an accepted practice.  To take one recent example, in *In re PLX Tech. Inc. S'holders Litig.*, No. CV 9880-VCL, 2022 WL 1133118, at *1, 5, 6 (Del. Ch. Apr. 18, 2022), the court approved a settlement with direct payments to beneficial holders through a direct payment to DTC participants in the first instance as identified in the DTC's records.  In approving this settlement, the court explained that "it will be up to each DTC participant to distribute its share of the settlement consideration to its entitlement holders"—exactly as Article 8 requires.  *Id*. at *6.  Indeed, there are dozens of such settlements approved by courts every year.  *See* Broadridge, 2025 Global Class Action Annual

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    Report, at 6-7 (noting that in 2024, twenty-eight direct payment settlements received final court

2    approval), available online at https://www.broadridge.com/_assets/pdf/bbd-gca-annualreport25-

3    1.29.25-final.pdf (last visited Oct. 29, 2025).

4        The Complaint tries to cast doubt on this basic framework by alleging that the DTC and

5    the brokerage firms no longer have the records to identify the underlying beneficial owners as

6    of November 15, 2022.  Compl. ¶ 22.  This allegation is contradicted by the rules and regulations

7    that govern the securities industry.   The recordkeeping regulations under the Securities

8    Exchange Act of 1934 specify that clearing agencies such as the DTC must keep detailed records

9    for *five years*, and that brokers must keep records of all trading activity in customer accounts for

10   at least *six years*.   *See* 17 C.F.R. § 240.17a-1(a)-(b) (specifying five-year retention for all records

11   of clearing agencies), *id*. § 240.17a-4(a) (specifying six-year retention period for brokerage firm

12   trading records).  In particular, under Rules 17a-3(a)(1) and 17a-4(a), securities brokers must

13   keep "an itemized daily record of all purchases and sales of securities" for at least six years.  17

14   C.F.R. § 240.17a-3(a)(1); *id*. § 240.17a–4(a).  And under Rules 17a-3(9), (17) and 17a-4(b), (e),

15   brokers must also keep customer names and addresses for three years, or six years if the account

16   is owned by a natural person.  17 C.F.R. § 240.17a-3(9), (17); *id*. § 240.17a–4(b), (e).   Under

17   any of these retention periods, the records identifying the beneficial owners of RiskOn stock as

18   of November 15, 2022, are required by law to be retained, which contradicts and renders

19   implausible the allegation in the Complaint that the records are no longer available.[2]

20        **4.        Expenditures By Zest Holdings Are Allowed By The SPA**

21        The Complaint also attacks expenditures by Zest Holdings, alleging that they were either

22   too high (Compl. ¶ 18), not sufficiently explained to RiskOn (*id.*), or duplicative, (*id.* ¶ 19).  The

23   problem with all these allegations is that they are defeated by the unambiguous terms of the

24   SPA.

25

26

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

---

27   [2] The Complaint asserts that Zest Holdings breached the SPA by not trying to obtain records
     identifying beneficial holders earlier.  Compl. ¶ 15.  This is irrelevant because the necessary
28   records are still within the retention periods required by law as of the date of the Complaint.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    The SPA expressly contemplates that Zest Holdings will incur expenses.  It specifies that

2    Zest Holdings should distribute the "net proceeds," which means the amount of proceeds left

3    after subtracting expenses.  *See Proceeds*, Black's Law Dictionary (12th ed. 2024) (defining

4    "net proceeds" as "[t]he amount received in a transaction minus the costs of the transaction").

5    The Complaint acknowledges that Zest Holdings was permitted under the SPA to incur expenses

6    when it alleges that Zest Holdings' contractual duty was to "receive the ***proceeds*** from the

7    Walmart Litigation and distribute the ***net proceeds*** to RiskOn's stockholders."  Compl. ¶ 14

8    (emphasis added).  That Zest Holdings is not distributing the entire proceeds is directly

9    contemplated and sanctioned by the SPA.

10    As for the allegations that Zest Holdings has not sufficiently explained or documented

11    its expenses, there is no provision in the SPA that requires Zest Holdings to provide this

12    information to Plaintiffs.  Moreover, Plaintiff Hyperscale is not a party to the SPA, and Section

13    11 of the SPA provides that, "[n]othing in this Agreement, expressed or implied, is intended to

14    confer on any person other than the Parties or their respective heirs, successors and assigns any

15    rights, remedies, obligations, or other liabilities under or by reason of this Agreement."  Compl.

16    Exhibit 1, at 4–5.

17    The Complaint also alleges that some of Zest Holdings' incurred expenses are

18    unnecessary because Plaintiffs "previously undertook the exercise of locating stockholders for

19    another dividend to RiskOn stockholders and shared their work product."  Compl. ¶ 19.  This

20    vague[3] allegation does not establish that Zest Holdings can ignore the plain terms of the SPA,

21    which require a distribution to stockholders "of record."

22    *        *        *

23    In sum, the Complaint amounts to little more than the basic allegation that Zest Holdings

24    is complying with the SPA, coupled with a litany of unsupported and vague hyperbolic

25

26

27    [3] Curiously missing from the Complaint are key allegations about this topic, such as whether this dividend had the same record date as specified by the SPA, whether the RiskOn Group's "exercise" to locate stockholders was successful, or what the "work product" was that the RiskOn Group shared with Zest Holdings.

28

16

DEFENDANTS' MOTION TO DISMISS

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  assertions.  Under any pleading standard, the Complaint has failed to state any claim and should

2  be dismissed.

3  **B.**  **Plaintiffs' Claims Fail For Additional Reasons**

4  In addition to its overarching defect, each of the claims for relief alleged suffers from

5  additional flaws, which also mandates dismissal.

6  **1.**  **Breach Of Contract**

7  A breach of contract has four elements: "(1) formation of a valid contract;

8  (2) performance or excuse of performance by plaintiff; (3) material breach by the defendant; and

9  (4) damages." *Walker v. State Farm Mut. Auto. Ins. Co.*, 259 F. Supp. 3d 1139, 1145 (D. Nev.

10  2017).  "A breach of contract may be said to be a material failure of performance of a duty

11  arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 135, 734

12  P.2d 1238, 1240 (1987).

13  The Complaint alleges that Zest Holdings and Mr. Metzger have materially breached the

14  SPA by "fail[ing] to distribute the net proceeds from the Walmart Litigation, and [being] unable

15  to distribute a significant portion, estimated at 80%, of those proceeds, to RiskOn stockholders

16  who owned shares as of November 15, 2022."  Compl. ¶ 30.  These allegations do not support a

17  claim for breach because the SPA contains no deadline for Zest Holdings to complete its

18  performance.  Because Zest Holdings has not failed to comply with a deadline for performance,

19  it has not yet breached a contract.  Plaintiffs' breach of contract claim can be dismissed on this

20  basis alone.

21  The Complaint also alleges that Defendants have breached the SPA because they cannot

22  distribute the bulk of the proceeds since Defendants cannot reliably identify the RiskOn

23  stockholders entitled to receive distributions.  Compl. ¶ 15.  As discussed above in Part IV.A.2-

24  3, however, the Complaint's conclusory allegation that Zest Holdings cannot complete a

25  distribution is contradicted by the laws and rules governing the securities industry as well as the

26  dozens of court decisions that have approved securities litigation settlements with direct

27  payments to the DTC.

28  The Complaint's allegations also fail to support any claim for anticipatory breach or

17

repudiation of the agreement. *See Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1248 (D. Nev. 2016) (citations omitted). That type of breach occurs when "one party to the contract, without justification and prior to a breach by the other party, makes a statement or engages in conduct indicating that it will not or cannot substantially perform its duties under the contract." *Id.* at 1250. Anticipatory repudiation of a contract must be "clear, positive and unequivocal." *Covington Bros. v. Valley Plastering, Inc.*, 93 Nev. 355, 360, 566 P.2d 814, 817 (1977). The Complaint does not allege that Zest Holdings has made any such statement. To the contrary, the Complaint alleges that Zest Holdings has stated that it is "currently working on the proper dispersal and remittance of the funds" to RiskOn's "holders of record . . . as of November 15, 2022"—a statement that mirrors almost verbatim the language in the SPA. *See* Compl. Exhibit 1 (stating that Zest Holdings should distribute to RiskOn's "security holders of record as of November 15, 2022"). A party does not repudiate a contract when it tells the other party that it is performing the contract.

### 2. Breach Of The Implied Contractual Covenant Of Good Faith And Fair Dealing

Under Nevada law, every contract or agreement contains an implied promise of good faith and fair dealing. *See Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 232, 808 P.2d 919, 923 (1991). "Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Id*. at 922-23.

The Complaint alleges that Defendants are breaching the implied covenant by improperly depleting the Walmart Litigation proceeds, allegedly intending to "dissipate" the proceeds by making a distribution the DTC, by imposing extraordinary delays, and by unjustly retaining the proceeds. *See* Compl. ¶ 41. The SPA requires Zest Holdings to distribute to the DTC and contemplates that Zest Holdings will incur expenses and distribute the remaining "net proceeds." And as discussed above in Part IV.A, there are no well-pled factual allegations indicating why a distribution to the DTC or the fact that fees are being incurred would defeat

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  the intention and spirit of the SPA.  There are also no well-pled facts establishing "extraordinary

2  delay."  To the contrary, the October 7 shareholder update discussed in Paragraph 21 of the

3  Complaint indicates that Zest Holdings is moving with alacrity and good faith to distribute the

4  net proceeds.  Ex. 7.  That shareholder update also defeats any notion that Defendants are

5  attempting to unjustly retain the net proceeds.

6  **3.    Tortious Breach of the Covenant of Good Faith and Fair Dealing**

7  Nevada recognizes tortious breach of the covenant of good faith and fair dealing only in

8  "'rare and exceptional cases.'"  *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 113 Nev. 346, 354,

9  934 P.2d 257, 263 (1997) (citation omitted).  In addition to the elements of a contractual breach

10  of the covenant, a tortious breach of the covenant requires the existence of a special relationship

11  of trust between the plaintiff and the defendant.  *See Klein v. Freedom Strategi Partners, LLC*,

12  595 F. Supp. 2d 1152, 1162 (D. Nev. 2009).

13  The allegations relating to the "special relationship" between the parties necessary for a

14  tortious breach of the covenant of good faith and fair dealing are contradicted by the SPA.  *See*

15  Compl. ¶¶ 14, 39.  The Complaint alleges that RiskOn and Ecoark sold Zest Labs to Zest

16  Holdings.  Accepting this allegation as true, the parties to the SPA are counterparties to a stock

17  purchase agreement that sold a business.  As sophisticated corporate entities who were

18  represented by professional and experienced agents, they were never in "inherently unequal

19  bargaining positions" that are required for a tortious breach claim.  *Great Am. Ins.*, 113 Nev. at

20  355, 934 P.2d at 263.  Any claim by Hyperscale that it had a "special relationship" with

21  Defendants is defeated by Section 11 of the SPA, which states that "Nothing in this Agreement,

22  expressed or implied, is intended to confer on any person other than the Parties or their respective

23  heirs, successors and assigns any rights, remedies, obligations, or other liabilities under or by

24  reason of this Agreement."  Compl. Exhibit 1, at 4-5.

25  The Complaint does not plead sufficient facts showing any fiduciary duty owed that

26  could support a claim for tortious breach of the implied covenant.  There are certain relationships

27  that are fiduciary in nature as a matter of law.  *See Giles v. Gen. Motors Acceptance Corp.*, 494

28  F. 3d 865, 881 (9th Cir.) (insurers and insured); *Cook v. Cook*, 112 Nev. 179, 183, 912 P.2d 264,

19

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

266 (1996) (attorney and client); *Leavitt v. Leisure Sports Inc*., 103 Nev. 81, 86, 734 P.2d 1221, 1224 (1987) (corporate officers and directors to a corporation)).  The counterparties to an M&A deal such as the one at issue here do not owe fiduciary duties to one another.  Contracting parties' duties to each other are limited by the terms of their contract.  *See In re USA Com. Mortg. Co.*, No. 07-cv-00892-RCJ-GWF, 2009 WL 10679115, at *2 (D. Nev. Sept. 18, 2009) (explaining that the court cannot "read into the Agreements a relationship that was not demonstrated by the parties' use of language," and declining to find a fiduciary obligation where the agreements made no mention of one).

And even if Plaintiffs had alleged facts indicating that Zest Holdings owed fiduciary duties, "where the parties have defined in a contract the scope of their rights and duties in a particular area, good faith action in compliance with that agreement will not implicate a fiduciary duty."  *Merriam v. Demoulas Super Markets, Inc*., 464 Mass. 721, 727 (Mass. 2013).  As discussed above in Part IV.A, the well-pled allegations establish the mere fact that Zest Holdings is performing its obligations under the SPA.  Therefore, the claim for tortious breach of the implied covenant must be dismissed.

### 4.    Accounting

Plaintiffs' claim for accounting must be dismissed because accounting is not an independent cause of action; it is a remedy.  "An accounting is an equitable remedy, not an independent cause of action." *Cueto-Reyes v. All My Sons Moving Co. of LV*, No. 09-cv-2299-ECR-RJJ, 2010 WL 11579989, at *5 (D. Nev. Apr. 5, 2010) (citation omitted).

It is also worth noting that Plaintiffs' accounting claim is a repackaged version of their breach of contract claim, and nothing in the SPA contemplates that Zest Holdings is required to provide an "accounting" of the expenses it incurred.  Because Plaintiffs' purported accounting claim is duplicative of other legally deficient claims, it should be dismissed.  *See G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, No. 04-cv-1199 DAE–GWF, 2009 WL 10692668, at *2 (D. Nev. Oct. 5, 2009) (striking claims for accounting and rescission because they were ancillary to plaintiffs' claim for breach of contract).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

### 5.    Constructive Trust

The Complaint does not allege the required elements for constructive trust, which are (1) that a confidential relationship exists between the parties; (2) retention of legal title by the holder thereof against another would be inequitable; and (3) the existence of such a trust is essential to the effectuation of justice. *See JPMorgan Chase Bank, N.A. v. KB Home*, 632 F. Supp. 2d 1013, 1028 (D. Nev. 2009). As discussed in detail in Part IV.B.3 above, the allegations do not support a fiduciary or special relationship between the parties. Further, the Complaint does not allege that Defendants have asserted or retained ownership over anything in an inequitable manner such that a trust is essential in the interests of justice. The Complaint alleges the opposite—specifically, that Zest Holdings advised Plaintiffs and RiskOn's shareholders that it is in the process of distributing the net proceeds to RiskOn's beneficial shareholders by means of a distribution to the DTC. Compl. ¶ 20-21; Ex. 7. As such, the claim for constructive trust should be dismissed.

### 6.    Replevin

Nevada's replevin statute provides for three avenues of recovery. None of them apply. It first provides:

> In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case a delivery cannot be had, and damages for the detention or the value of the use thereof . . .

NRS 17.120(1); *see also Godfrey v. Gilsdorf*, 86 Nev. 714, 719, 476 P.2d 3, 6 (1970) (replevin is available as a remedy "for the return of property or its value in case a return cannot be had."). Here, there the Complaint does not allege any wrongful possession of personal property on Defendants' part. Indeed, there is no personal property at issue, only money. Application of this section of the statute is nonsensical. The next section provides:

> In an action on a contract or obligation for the direct payment of money, payable in a specified or agreed kind of money or currency, judgment for the plaintiff . . . may follow the contract or obligation, and be made payable in the kind of money or currency therein specified or thereby agreed.

NRS 17.120(2). This section of the statute is also inapplicable because the Complaint does not allege a contract or obligation for Defendants to pay Plaintiffs any sums directly in a specified

21

money or currency, *or at all*.  Finally, the statute provides for recovery:

> [i]n an action against any person for the recovery of money received by such person in a fiduciary capacity . . .

NRS 17.120(3).  As discussed at length in Part IV.B.3 above, the Complaint does not allege facts to support the existence of a fiduciary duty owed by Defendants.  Therefore, the claim for replevin fails.

### 7.    Declaratory Relief

Plaintiffs' claim for declaratory relief should be dismissed because it is duplicative of their other causes of action.  A declaratory relief "claim" fails if "it is duplicative and only asserts violations alleged in the other causes of action already contained in the complaint." *Fung Ying Leung v. Mortg. Elec. Registration Sys., Inc.*, No. 12-cv-1393-JCM-VCF, 2013 WL 237225, at *6 (D. Nev. Jan. 22, 2013) (citation omitted).  "Various courts have held, for example, that, '[w]here determination of [a] breach of contract claim [will] resolve any question regarding interpretation of the contract, there is no need for declaratory relief,' and dismissal of a companion declaratory relief claim is appropriate." *StreamCast Networks, Inc. v. IBIS LLC*, No. 05-cv-04239, 2006 WL 5720345, at *4 (C.D. Cal. May 2, 2006) (citations omitted).  Because Plaintiffs' claim for declaratory relief is duplicative of their other causes of action, it should be dismissed.

### C.    The Claims Against Metzger Must Be Dismissed For Additional Reasons

The Complaint asserts all six of its causes of action against Defendant Gary Metzger based solely on the allegation that Mr. Metzger is the "alter ego" of Zest Holdings, the LLC for which he serves as manager.  The Complaint's conclusory assertion that Metzger and Zest Holdings are each other's alter egos is baseless.  The Complaint merely recites Nevada's statute regarding alter ego liability relating to LLCs.  It contains no factual allegations supporting its legal conclusions. *See* Compl. ¶ 23.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Under Nevada law, "no person other than the limited-liability company is individually liable for a debt or liability of the limited-liability company unless the person acts as the alter ego of the limited-liability company." NRS 86.376(1). Alter ego liability may be found only if "(a) [t]he limited-liability company is influenced and governed by the person; (b) [t]here is such unity of interest and ownership that the limited-liability company and the person are inseparable from each other; and (c) [a]dherence to the notion of the limited-liability company being an entity separate from the person would sanction fraud or promote manifest injustice." *Id.* 86.376(2).

The Complaint does not contain sufficient (or any) facts to show "such unity of interest and ownership that the LLC and the person are inseparable from each other." *Id.* The Complaint does not—because it cannot—allege that Metzger has failed to observe corporate formalities, failed to keep corporate records, commingled Zest Holdings' funds, treated Zest Holdings' funds as his own, improperly diverted funds, or undercapitalized Zest Holdings to the prejudice of creditors. *See LFC Marketing*, 116 Nev. 896, 904, 8 P.3d 841, 847 (2000) (listing factors that show a unity of interest and ownership); *Ene v. Graham*, 546 P.3d 1232, 1237 (Nev. 2024) (explaining that the LLC alter ego test requires facts showing "a lack of observance of corporate formalities [or] maintenance of corporate records, commingling of funds, or prejudice to creditors" (citing *LFC Marketing*, 116 Nev. at 904, 8 P.3d at 847)). The only allegation regarding Metzger personally is that he has purportedly demanded a multi-million dollar fee for his work overseeing Zest Holdings' litigation efforts and distributing the settlement proceeds. *See* Compl. ¶ 17. This allegation is highly misleading and will be disproven at the appropriate time, but even if it is accepted as true, the allegation does not support piercing the corporate veil of Zest Holdings to hold Mr. Metzger liable for its debts as its alter ego. A request for compensation by Mr. Metzger for work done in his role as the manager of Zest Holdings is entirely consistent with the separation of the LLC from himself personally. There is no allegation that Metzger has treated Zest Holdings' funds as his own.

The Complaint also fails to plead sufficient (or any) facts to show that "[a]dherence to the notion of the limited-liability company being an entity separate from the person would

23

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

sanction fraud or promote manifest injustice." NRS 86.376(2)(c). A finding of fraud or manifest injustice typically involves companies that are undercapitalized or in which the individuals have misused the corporate form to the detriment of creditors. *See Ene*, 546 P.2d at 1238 (summarizing cases). The Complaint does not allege anything of that sort here. The only purported "bad faith conduct" alleged in the Complaint in support of its assertion of fraud or manifest injustice is "the formation of Defendant Zest Holdings to acquire Zest Subsidiary and its assets for the express purpose of distributing the Walmart Litigation Proceeds to RiskOn's eligible stockholders." Compl. ¶ 23. But that is merely restating what the SPA provides—it is not a factual allegation showing bad faith by Mr. Metzger.

## V.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety. Because the defects in the Complaint are incurable, dismissal should be with prejudice. *See Okwu v. McKim*, 682 F.3d 841, 846 (9th Cir. 2012) (affirming dismissal with prejudice where plaintiff could not amend to state viable claim).

DATED: October 31, 2025

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Travis F. Chance*
    TRAVIS F. CHANCE, ESQ., Bar No. 13800
    tchance@bhfs.com
    SARAH K. VOEHL, ESQ., Bar No. 16646
    svoehl@bhfs.com

GRELLAS SHAH LLP

    DHAIVAT H. SHAH, ESQ. (will comply with LR IA 11-2)
    ds@grellas.com
    ROBERT H. O'LEARY, ESQ. (will comply with LR IA 11-2)
    ro@grellas.com

    *Attorneys for Defendants*
    *Zest Labs Holdings, LLC and Gary Metzger*

DEFENDANTS' MOTION TO DISMISS

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **DEFENDANTS' MOTION TO DISMISS** was served via electronic service on October 31, 2025, to all parties on the CM/ECF service list.

*/s/ Paula Kay*
An employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101