Travis F. Chance, Esq., Nevada Bar No. 13800
tchance@bhfs.com
Sarah K. Voehl, Esq., Nevada Bar No. 16646
svoehl@bhfs.com
Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone:    702.382.2101
Facsimile:    702.382.8135

Dhaivat H. Shah, Esq. (admitted *pro hac vice*)
ds@grellas.com
Robert H. O'Leary, Esq. (admitted *pro hac vice*)
ro@grellas.com
Grellas Shah LLP
550 California St., Suite 1040
San Francisco, CA 94104
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

*Attorneys for Counterclaim Plaintiff*
ZEST LABS HOLDINGS, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RISKON INTERNATIONAL, INC. f/k/a BITNILE METAVERSE, INC. and/or ECOARK HOLDINGS, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual,<br><br>Defendant. | Case No.  2:25-cv-02042-APG-NJK<br><br><br>**ZEST LABS HOLDINGS, LLC'S COUNTERCLAIM**<br><br>Judge: Andrew P. Gordon |
| ZEST LABS HOLDINGS, LLC, a Nevada limited liability company,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>RISKON INTERNATIONAL, INC., a Nevada corporation<br><br>Counterclaim Defendant. | |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

Counterclaim plaintiff Zest Labs Holdings, LLC ("Zest Holdings"), by and through its undersigned counsel, alleges as follows against counterclaim defendant RiskOn International, Inc. ("RiskOn"):

## THE PARTIES

1.     Zest Holdings is a Nevada limited liability company formed in 2023.  Gary Metzger, Zest Holdings' sole member, is a citizen of Florida.  Therefore, Zest Holdings is a citizen of Florida.

2.     RiskOn is a Nevada corporation incorporated in 2007.  RiskOn is a holding company.  It was formerly known as BitNile Metaverse, Inc., and before that Ecoark Holdings, Inc.  RiskOn's stock traded on the Nasdaq Stock Market until it was suspended from trading on February 28, 2024 and delisted on May 31, 2024.  Since its delisting, RiskOn has traded on the over-the-counter ("OTC") market.  RiskOn made regular public filings with the United States Securities and Exchange Commission ("SEC") until July 2024.

## JURISDICTION AND VENUE

3.     The Court has subject matter jurisdiction over Zest Holdings' counterclaims under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy requirement is met.  This Court also has subject matter jurisdiction over Zest Holdings' counterclaims under 28 U.S.C. § 1367 because the counterclaims are so related to the claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

4.     The Court has personal jurisdiction over RiskOn because it is a Nevada corporation with its principal place of business in Las Vegas, Nevada.

5.     Venue is proper in this judicial district because RiskOn maintains its principal places of business in this district.  *See* 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

**A.     The Zest Labs Spin-Off**

6.     Zest Labs, Inc. ("Zest Labs") was a start-up company that RiskOn acquired in 2013.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

7.      Zest Labs conceived of the Zest Fresh Solution for use in produce supply chain logistics. This technology had the potential to reduce food waste by predicting when food would expire by combining and analyzing data from every stage of the supply chain to constantly recalculate the predicted shelf life of produce using machine learning. It promised to help reduce billions of dollars in produce from being thrown into the garbage while simultaneously helping the environment.

8.      In 2018, RiskOn and Zest Labs sued Walmart Inc. ("Walmart") for alleged theft of trade secrets (the "Walmart Litigation"). In 2021, a jury awarded Zest Labs and RiskOn $115 million in damages. Walmart subsequently moved for, among other things, a new trial.

9.      In July 2022, while Walmart's post-verdict challenges were ongoing, RiskOn disclosed in a public filing with the SEC that it "plan[ned] to distribute all of our operating assets to our stockholders as dividends." At that time, Zest Labs was among the operating assets of RiskOn.

10.      On August 12, 2022, RiskOn disclosed in a public filing with the SEC further details of this plan to distribute all of its operating assets to its shareholders:

> [RiskOn] has decided it is in the best interests of its shareholders that it divest all of its operating assets through a series of spin-offs or stock dividends to [RiskOn]'s shareholders. . . . [RiskOn]'s goal is to complete these spin-offs in calendar 2022 and acquire a new business prior to the last spin-off so it does not become a shell corporation. Because all spin-offs require the transactions or the subsidiaries to be registered with the Securities and Exchange Commission, [RiskOn] may not complete all spin-offs in 2022.

11.      On January 24, 2023, RiskOn disclosed in a public filing with the SEC that it had decided to make a cash distribution of any future litigation proceeds to its stockholders instead of issuing a dividend of Zest Labs' stock:

> [RiskOn] previously announced its planned distributions to its security holders, pro rata on a fully-diluted basis, of the shares of Common Stock held by or issuable to [RiskOn] of . . . Zest[.] . . . The Zest distribution had a record date of November 15, 2022, however [RiskOn] subsequently determined to restructure that distribution as a cash distribution of at least 95% of the net proceeds received in Zest's litigation, in lieu of distribution [of] the Zest Common Stock. Zest's Articles of Incorporation were amended to provide for such cash distribution, which will be subject to final determination of the pending lawsuits which were outstanding as of the November 15, 2022 record date.

ZEST LABS HOLDINGS, LLC'S COUNTERCLAIM
CASE NO.:  2:25-cv-02042-APG-NJK

12. By this time, RiskOn had determined that Zest Labs was not likely to succeed as a standalone business and the only future cash flows Zest Labs was expected to generate were from a judgment or settlement in its ongoing trade secret litigation.

13. In or around May 2023, RiskOn's chief executive officer, Randy May, asked Mr. Metzger if he would serve as the manager of a new limited liability company that RiskOn intended to form, Zest Holdings, that would act as a spin-off vehicle to acquire Zest Labs and later make a distribution to RiskOn's shareholders. Mr. Metzger agreed, and he signed the formation documents for Zest Holdings that RiskOn's lawyers prepared and presented to him.

14. On July 14, 2023, RiskOn publicly disclosed details of this plan to spin-off Zest Labs to Zest Holdings in its annual report filed with the SEC:

> [RiskOn] intends to transfer all of the common stock of Zest Labs into Zest Labs Holdings LLC ("Zest Holdings"), a private limited liability company [RiskOn] formed and that will own all of the intellectual property of Zest Labs as well as the rights to any funds obtained from current and future intellectual property litigation by Zest Labs. [RiskOn] also amended the Zest Labs charter to require that it distribute at least 95% of the net proceeds of the pending Zest Labs litigation recoveries, if any, to [RiskOn's] shareholders as of November 15, 2022.

15. On August 25, 2023, Ecoark, Inc.[1] ("Ecoark") and RiskOn, on the one hand, and Zest Holdings, on the other, signed the Stock Purchase Agreement ("SPA"). A true and correct copy of the SPA is attached hereto as **Exhibit A**. Mr. May signed the SPA on behalf of RiskOn, and Mr. Metzger signed the SPA on behalf of Zest Holdings. Like the formation documents for Zest Holdings, the SPA was drafted by RiskOn and its lawyers.

16. Under the SPA, Ecoark agreed to sell and Zest Holdings agreed to purchase all of the outstanding shares of Zest Labs. Ecoark acknowledged in the SPA that it received valuable consideration in full "by virtue of transferring the shares to the Purchaser." The SPA further stated that the transfer of shares would "facilitate the distribution of net proceeds derived from [Zest Labs'] litigation to the Record Date Owners." The SPA defines "Record Date Owners" as RiskOn's "security holders of record as of November 15, 2022."

---

[1] Ecoark, Inc. is a wholly-owned subsidiary of RiskOn that actually held the shares of Zest Labs prior to the SPA.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

17.     Section 7.1 of the SPA provides that "[i]f any further action is necessary or desirable to carry out the purposes of this Agreement, each of the Parties will take such further action (including the execution and delivery of such further instruments and documents) as the other Party may request."

18.     Under Section 7.2 of the SPA, Ecoark further covenants that it will "at the request of [Zest Holdings], execute, acknowledge and deliver to [Zest Holdings] without further consideration, all such further assignments, conveyances, consents and other documents, and take such other action as [Zest Holdings] may reasonably request" to "otherwise [] consummate or effectuate the transactions contemplated by this Agreement."

B.     **Stockholders "Of Record" and The Role of The Depository Trust Company ("DTC")**

19.     Corporations are required to maintain a list of their stockholders that includes the names, addresses, and share counts of their stockholders.  Virtually all public companies hire a "transfer agent" to maintain their stockholder list.  The stockholders who are on this list are referred to as the stockholders "of record," or the "record owners."  This terminology and the concepts behind it have been in use for well over a century.  Countless court decisions have affirmed this terminology, and it is described in many legal dictionaries and various other publications.  To take one example, Westlaw's "Practical Law" glossary states:

> **Stockholder of Record**
> Also known as shareholder of record, record holder or owner, or registered holder, or owner. The stockholder whose name is listed on the company's books and records as the owner of shares as of a particular date (the record date). A stockholder of record holds stock in a direct relationship with the company and has direct title to the shares, as opposed to a beneficial owner that owns stock indirectly through a broker, dealer, bank or other entity. Beneficial owners holding through a broker, dealer or bank are also said to hold their shares in street name.

20.     As this glossary entry notes, one can be a beneficial owner of a corporation's stock despite not being a stockholder of record.  A beneficial owner is someone who possesses the economic and contractual rights of an owner (*i.e.*, the ability to sell the stock, and the right to receive dividends and payments), but is not listed as the owner on the company's books.

ZEST LABS HOLDINGS, LLC'S COUNTERCLAIM
CASE NO.:  2:25-cv-02042-APG-NJK

21. Beneficial ownership of publicly traded companies such as RiskOn is ubiquitous. Because a public company has no ability to keep track of all the thousands or millions of persons who transact in their stock each day, the system that has developed in the United States is that The Depository Trust Company ("DTC") acts as the record owner for stock that is beneficially owned by public market investors. In brief, the way this system functions is that each brokerage firm and custodian bank informs DTC how many shares its customers own collectively, and DTC then aggregates this information and its affiliated partnership nominee, Cede & Co., holds title to stock certificates representing all of the shares owned by all of the public market investors. DTC, through Cede & Co., is therefore the stockholder of record for trillions of dollars in U.S.-listed equities.

## C. How Distributions to Beneficial Owners Are Made

22. Because the beneficial owners of a company only have a direct relationship with their immediate brokerage firm or custodian bank, neither DTC nor any publicly traded companies have a way to know the identities and shareholdings of their beneficial owners. Instead, a publicly traded company knows only the number of shares for which DTC, through Cede & Co., is a record holder in the company's stock. Likewise, DTC knows only the number of shares allocated to each participant brokerage firm or custodian bank. These participant brokerage firms or custodian banks either have a direct relationship with beneficial owners or, in some instances, they act as conduits between DTC and other introducing brokerage firms that hold the direct relationship with beneficial owners.

23. A company, such as RiskOn, can request that brokerage firms and banks provide a list of beneficial owners. These financial institutions, however, cannot release the identities of the beneficial owners without permission from the beneficial owners. A significant portion of beneficial owners object to the release of their identities. Under the relevant securities regulations, such beneficial owners are referred to as "objecting beneficial owners," and are distinguished from the "non-objecting beneficial owners" (NOBOs) who give permission to allow their identities to be released to the companies they are invested in.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

24.     While companies can request so-called "NOBO lists," such lists are never used to make distributions or provide notices that must go to all beneficial owners. The reason these lists are never used for this purpose is because they are significantly incomplete since a large percentage of beneficial owners are objecting beneficial owners.

25.     The way that companies make dividends and other distributions to their beneficial owners without ever knowing the identities of the beneficial owners is by sending the funds in question to DTC with a letter of instruction. Securities intermediaries like DTC, DTC participants, and introducing brokers are required under the legal provisions that govern their businesses to pass along any funds provided to the ultimate beneficial owner. This is a highly reliable method for making distributions, and DTC successfully processes hundreds of billions of dollars in distributions each year to the beneficial owners of the thousands of U.S. listed public companies.

26.     The reason this distribution mechanism is so reliable is because DTC maintains detailed records of the daily positions of DTC participants, and DTC participants and introducing brokers also maintain detailed daily trading and customer records. DTC is required to keep relevant records for at least five years, and securities brokerage firms are required to keep relevant records for at least six years.

27.     This detailed recordkeeping makes it possible for funds or information to be distributed to the beneficial owners of a company as of a date in the past without advance notice to DTC or the brokerage firms. Such distributions are common in connection with class action litigation by shareholders against public companies, and arise in other contexts, like distributions in connection with a liquidation.

**D.      <u>Zest Holdings Attempts to Proceed With a Distribution, But RiskOn Refuses to Provide the Necessary Records</u>**

28.     In December 2023, the court granted Walmart's motion for a new trial. The matter proceeded to trial, and on May 14, 2025, a jury awarded Zest Labs nearly $223 million. The parties later entered into a confidential settlement agreement.

ZEST LABS HOLDINGS, LLC'S COUNTERCLAIM
CASE NO.: 2:25-cv-02042-APG-NJK

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

29.     In or around August 2025, Zest Holdings began communicating with RiskOn and its stockholders regarding Zest Holdings' plans to distribute the net proceeds of the Walmart Litigation to RiskOn's holders of record as of November 15, 2022, as required by the SPA. Zest Holdings informed RiskOn and its stockholders that it was aiming to ensure that the distribution was completed by November 10, 2025. In furtherance of this distribution, Zest Holdings engaged a leading settlement administrator, Stretto, to oversee the distribution.

30.     To proceed with the distribution, Zest Holdings requires the list of RiskOn's stockholders of record as of November 15, 2022, as maintained by RiskOn's transfer agent. This transfer agent list evidences the total number of common shares outstanding as of November 15, 2022, the name of each stockholder of record, and the holdings of each stockholder of record.

31.     On August 20, 2025, Zest Holdings formally requested that RiskOn provide a list of its record holders as of November 15, 2022. RiskOn did not comply with this request.

32.     On October 30, 2025, a representative from Stretto acting on behalf of Zest Holdings wrote to RiskOn's transfer agent, Pacific Stock Transfer, and requested RiskOn's transfer agent records as of November 15, 2022. On October 31, 2025, Pacific Stock Transfer responded and stated: "My Legal Team has notified me that the request for the list will need to be made directly with the issuer, RiskOn. Please contact them for the requested file."

33.     On November 4, 2025, Zest Holdings invoked Section 7.1 of the SPA and demanded that RiskOn provide the list of its stockholders of record as of November 15, 2022, maintained by RiskOn's transfer agent, Pacific Stock Transfer.

34.     RiskOn did not respond to Zest Holdings' request.

35.     On November 12, 2025, Zest Holdings again requested that RiskOn provide the list of its stockholders of record of November 15, 2022, and advised RiskOn that its refusal to provide the stockholder list constitutes a material breach of Section 7.1 of the SPA. A true and correct copy of this letter is attached as **Exhibit B**.

36.     On November 14, 2025, RiskOn stated that it would not provide the list of its stockholders of record as of November 15, 2022. A true and correct copy of this letter is attached as **Exhibit C**.

7

37.    In its November 14, 2025 letter, RiskOn explained that it was refusing to provide the transfer agent records because Zest Holdings had indicated that it intended to make a distribution to RiskOn's beneficial owners through DTC.

**E.    RiskOn Demands That Zest Holdings Use Flawed and Incomplete Shareholder Records and Pay RiskOn The Significant Portion of Distributable Funds That Cannot Be Distributed Using These Records**

38.    RiskOn has taken the position that Zest Holdings cannot distribute proceeds through DTC, but instead must use records of purported beneficial owners that RiskOn prepared in connection with an unrelated stock dividend spin-off transaction involving a former RiskOn subsidiary called White River.

39.    The White River records do not purport to identify the beneficial owners of RiskOn as of November 15, 2022.  The record date for the White River distribution was September 30, 2022.

40.    Even as to that record date, the beneficial owner records created in connection with the White River distribution are significantly incomplete.  For the White River distribution, a RiskOn representative took transfer agent records as of September 30, 2022, and, for those shares held of record by the DTC, through Cede & Co., the RiskOn representative attempted to directly identify each beneficial owner.  The RiskOn representative was not successful in identifying the beneficial owners because there is no reliable mechanism for a public company like RiskOn to identify all of its beneficial owners.  The RiskOn representative used a highly-flawed and manual process to do something that is fundamentally impossible in our public markets.  This process was so flawed that 30-50% of beneficial owners as of September 30, 2022 were never identified.

41.    For those beneficial owners that the RiskOn representative failed to identify through this manual process, RiskOn kept the stock dividend meant for them.  This resulted in RiskOn reporting in a July 2024 SEC filing that it had not distributed 21.8 million White River shares out of 42.3 million shares that were available for distribution to RiskOn's beneficial owners.  That same SEC filing shows that RiskOn valued the undistributed White River shares at $7,219,765.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

8

ZEST LABS HOLDINGS, LLC'S COUNTERCLAIM
CASE NO.:  2:25-cv-02042-APG-NJK

42. RiskOn is attempting to repeat its playbook here. By insisting that Zest Holdings use the White River records, RiskOn is attempting to engineer a repeat of the obviously flawed process that will result in a failure rate of at least 30-50%. And RiskOn has separately demanded that the pro rata shares of any beneficial owners not identified through the flawed White River records be paid to RiskOn.

43. It would be illogical to use any of the records created in connection with the White River distribution. RiskOn's transfer agent records as of September 30, 2022, the record date for the White River distribution, do not accurately represent the record holders as of November 15, 2022. Zest Holdings has directly asked RiskOn's transfer agent for its record holder list as of November 15, 2022, and the transfer agent stated that it can only provide those records to RiskOn or with RiskOn's authorization.

44. Rather than participating in good faith with Zest Holdings' attempt to make a distribution to all RiskOn beneficial owners through the proper channels, RiskOn is actively trying to prevent this distribution by refusing to provide RiskOn's transfer agent records as of November 15, 2022. RiskOn apparently seeks to block a distribution through DTC because it would result in a complete distribution of proceeds to all beneficial owners as of November 15, 2022, and would not allow RiskOn to cheat beneficial owners out of 30-50% of the proceeds as it did with the stock dividend in the White River transaction.

45. Providing funds to DTC for distribution to beneficial owners is the lawful and proper way to make a distribution to beneficial owners. Therefore, RiskOn does not have a legitimate basis to refuse to provide the transfer agent records.

46. DTC has processes in place that allow issuers to send payments for beneficial owners to the DTC, which then forwards the payments to its participant brokers. DTC's participant brokers are subject to regulations and rules requiring them to maintain customer records and to distribute all payments received to the beneficial owners. A distribution through DTC and its participants is the proper way to make a pro rata distribution to all RiskOn beneficial owners.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

47. By all indications, DTC and its participants can achieve a full pro rata distribution to RiskOn's beneficial owners as of November 15, 2022. Zest Holdings has been undertaking an appropriate due diligence investigation to confirm that Zest Holdings can make a distribution to RiskOn's underlying beneficial owners as of November 15, 2022, by way of a distribution to DTC with a corresponding letter of instruction. In an update published on October 19, 2025, Mr. Metzger informed RiskOn and RiskOn's stockholders that Zest Holdings would not make a distribution to DTC until Zest Holdings received confirmation that the funds will be received by DTC and can be properly distributed to RiskOn's beneficial owners as of November 15, 2022. RiskOn's refusal to cooperate with Zest Holdings and release its transfer agent records impedes Zest Holdings' efforts to continue its due diligence investigation and obtain adequate assurance from DTC that it will accept funds for distribution to RiskOn's beneficial owners as of November 15, 2022.

## COUNTERCLAIM ONE

### [Breach of Contract]

48. Zest Holdings hereby incorporates by reference the allegations in paragraphs 1 through 47 of this Counterclaim as though said paragraphs were fully set forth herein.

49. The SPA constitutes a valid and enforceable contract between RiskOn and Zest Holdings.

50. Zest Holdings has fully performed all conditions, covenants and obligations under the agreement, or the performance of those conditions, covenants and obligations has been prevented or excused by RiskOn's conduct.

51. RiskOn breached the SPA by failing to perform the conditions, covenants and obligations required on its part therein.

52. The SPA obligates Zest Holdings to make a distribution to RiskOn's "holders of record as of November 15, 2022." Zest Holdings cannot perform this obligation unless RiskOn provides the transfer agent records identifying its holders of record as of that date. Section 7.1 of the SPA obligates RiskOn to take such further action "including the execution and delivery of such further instruments and documents" as Zest Holdings may request. Further, Section 7.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

of the SPA specifies that RiskOn's wholly owned subsidiary, Ecoark, shall deliver any such documents and take other action as Zest Holdings may request to "consummate or effectuate the transactions" contemplated by the SPA. Under these provisions, RiskOn's obligation to provide its transfer agent records as of November 15, 2022 to Zest Holdings is clear, definite, and certain.

53. RiskOn breached the SPA by not providing Zest Holdings with the list of RiskOn's stockholders of record as of November 15, 2022, maintained by RiskOn's transfer agent after Zest Holdings requested the list.

54. The purpose of the SPA is to "facilitate the distribution of net proceeds derived from [Zest Labs'] litigation to the Record Date Owners," defined as RiskOn's "security holders of record as of November 15, 2022. The list of RiskOn's stockholders of record as of November 15, 2022 is necessary for Zest Holdings to carry out this purpose.

55. As a direct and proximate result of RiskOn's breach, Zest Holdings has suffered damages in an amount to be proven at trial

56. Under Section 13 of the SPA, Zest Holdings is entitled to recover its reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

## COUNTERCLAIM TWO

**[Alternative Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing]**

57. Zest Holdings hereby incorporates by reference the allegations contained in Paragraphs 1 through 47 of this Counterclaim as though said paragraphs were fully set forth herein.

58. The SPA constitutes a valid and enforceable contract between RiskOn and Zest Holdings.

59. There is implied in every contract a covenant of good faith and fair dealing.

60. RiskOn has impeded the proper distribution of the funds and breached the implied covenant of good faith and fair dealing by not cooperating with Zest Holdings and releasing its transfer agent records of record holders as of November 15, 2022.

61. If the Court determines that RiskOn's refusal to provide Zest Holdings with the list of RiskOn's stockholders of record as November 15, 2022, does not breach the actual terms

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

of the SPA, then RiskOn's refusal to cooperate with Zest Holdings and provide its transfer agent records constitutes a breach of the implied covenant of good faith and fair dealing.

62.    As a direct and proximate result of RiskOn's breaches of the implied covenant of good faith and fair dealing, Zest Holdings has suffered damages in an amount to be proven at trial.

63.    Under Section 13 of the SPA, Zest Holdings is entitled to recover its reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

**PRAYER FOR RELIEF**

WHEREFORE, Zest Holdings respectfully prays for judgment against RiskOn and in Zest Holdings' favor as follows:

A.    For an award of specific performance under the SPA directing RiskOn to provide Zest Holdings with the list of RiskOn's stockholders of record as of November 15, 2022, maintained by RiskOn's transfer agent, or to take any further action, such as authorization provided to RiskOn's transfer agent, to ensure that Zest Holdings receives such records and any additional documents or information necessary in order for Zest Holdings to proceed with a distribution pursuant to the terms of the SPA;

B.    For an award of the attorneys' fees, costs, and expenses incurred in bringing this action pursuant to Section 13 of the SPA, or any other basis;

C.    For an award of all actual and compensatory damages in an amount to be proven at trial;

D.    For pre-judgment and post-judgment interest as provided for by law; and

E.    For such other, further, and different relief as permitted by law and as the Court deems just and proper.

Dated:  December 9, 2025            GRELLAS SHAH LLP

By:  /s/ Dhaivat H. Shah
Dhaivat H. Shah, Esq. (*pro hac vice*)
Robert H. O'Leary, Esq. (*pro hac vice*)

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By:  /s/ Travis F. Chance
Travis F. Chance, Esq. (NV Bar No. 13800)
Sarah K. Voehl, Esq., (NV Bar No. 16646)

*Attorneys for Counterclaim Plaintiff Zest Labs Holdings, LLC*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **ZEST LAB HOLDINGS, LLC's COUNTERCLAIM** was served via electronic service on December 9, 2025December 9, 2025, to all parties on the CM/ECF service list.

*/s/ Paula Kay*
An employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP

14
ZEST LABS HOLDINGS, LLC'S COUNTERCLAIM
CASE NO.:  2:25-cv-02042-APG-NJK

**INDEX OF EXHIBITS**

**EXHIBIT A:**     Stock Purchase Agreement

**EXHIBIT B:**     Letter dated November 12, 2025 from Zest Holdings requesting RiskOn to provide the list of its stockholders of record

**EXHIBIT C:**     Letter dated November 14, 2025 from RiskOn stating that it would not provide the list of its stockholders of record

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

ZEST LABS HOLDINGS, LLC'S COUNTERCLAIM
CASE NO.:  2:25-cv-02042-APG-NJK