UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RISKON INTERNATIONAL, INC.; EOCARK, INC.; and HYPERSCALE DATA, INC., <br><br> Plaintiffs <br><br> v. <br><br> ZEST LABS HOLDINGS, LLC, and GARY METZGER, <br><br> Defendants <br><br> AND ALL RELATED COUNTERCLAIMS | Case No.: 2:25-cv-02042-APG-NJK <br><br> **Order Granting Plaintiffs' Motion for Preliminary Injunction in Part and Denying Plaintiffs' Motion for Temporary Restraining Order as Moot** <br><br> [ECF Nos. 17, 18] |

The parties in this case dispute the method of distribution of settlement proceeds derived from separate litigation between Walmart, Inc. and non-party Zest Labs, Inc. (Zest Subsidiary). Plaintiff RiskOn International, Inc. was a publicly traded company whose shareholders are owed the settlement proceeds.[1] Plaintiff Hyperscale Data, Inc. owns 85% of the voting stock of RiskOn. Plaintiff Ecoark, Inc. is RiskOn's wholly owned subsidiary that formerly owned Zest Subsidiary. Defendant Zest Holdings, LLC currently owns Zest Subsidiary, thereby controlling the settlement proceeds from the Walmart litigation. Zest Holdings' sole member is defendant Gary Metzger. The plaintiffs have sued the defendants for breach of contract, among other claims, alleging that the defendants' proposed distribution of the Walmart proceeds violates the agreement that transferred Zest Subsidiary from Ecoark to Zest Holdings. They move for a

---

[1] RiskOn was formerly known as BitNile Metaverse, Inc. and Ecoark Holdings, Inc. ECF No. 1-1 at 2.

preliminary injunction and a temporary restraining order to prohibit the defendants from spending or transferring any of the Walmart proceeds.

## I.   FACTUAL BACKGROUND

Zest Subsidiary sued Walmart in 2018, alleging theft of trade secrets. ECF No. 1-1 at 35. Zest Subsidiary won a jury verdict against Walmart in 2021, but Walmart successfully moved for a new trial in 2023. *Id.*

While the Walmart litigation was ongoing, RiskOn developed a plan to transfer Zest Subsidiary such that RiskOn and Ecoark no longer owned it. *Id.* at 3-4. RiskOn and Ecoark assigned all their claims against Walmart to Zest Subsidiary. *Id.* at 4. Metzger, then a member of RiskOn's Board of Directors, formed Zest Holdings to acquire Zest Subsidiary, oversee the Walmart litigation, and distribute any proceeds from the litigation to RiskOn's shareholders. *Id.* at 4. On August 25, 2023, RiskOn, Ecoark, and Zest Holdings entered into a Stock Purchase Agreement (SPA) transferring all shares of Zest Subsidiary to Zest Holdings. *Id.* at 18-19. The SPA established that Zest Holdings was "formed for the benefit of [RiskOn's] security holders entitled to participate" in the "distribution" of the "net proceeds" of the Walmart litigation, and that the "transfer" of Zest Subsidiary to Zest Holdings "will facilitate the distribution of net proceeds derived from [the Walmart] litigation to the Record Date Owners and is consistent with the expectations of such Record Date Owners." *Id.* at 18. The SPA defines "Record Date Owners" to be RiskOn's "security holders of record as of November 15, 2022." *Id.*

Zest Subsidiary and Walmart reached a settlement in the trade secrets litigation in July 2025. *Id.* at 6. Zest Holdings has begun paying out of those proceeds several fees and costs associated with the trade secrets litigation, including paying the litigation funder, counsel, taxes, and other expenses and fees. ECF Nos. 31-7 at 8; 32-2 at 8. After Zest Holdings finishes paying

its remaining litigation expenses, it will distribute the remaining funds (the net proceeds) to the Record Date Owners. ECF No. 32-2 at 8. Zest Holdings intends to retain 5% of the net proceeds as compensation for prosecuting and monetizing the claims in the Walmart litigation. *Id.* The rest it plans to distribute to the Record Date Owners by distributing it pro rata to the stockholders listed on RiskOn's stock ledger on November 15, 2022. ECF Nos. 1-1 at 7; 32-1 at 37.

RiskOn's stock ledger states that on the relevant date about 80% of its shares were owned by an entity called Cede & Co., which is a nominee of Depository Trust Company (DTC).[2] ECF No. 1-1 at 7. Both parties agree though that DTC should not ultimately end up with any of the net proceeds. That is because DTC's nominee, though owning legal title to these RiskOn shares, did not own the economic benefits or trading rights of any of RiskOn's stock. DTC is a central clearinghouse registered with the Securities and Exchange Commission that streamlines and settles securities transactions between stockbrokers for virtually every broker dealer in the United States. ECF Nos. 6 at 10; 31-2 at 5. *Whistler Investments, Inc. v. Depository Trust and Clearing Corp.*, 539 F.3d 1159, 1163 (9th Cir. 2008); *In re Appraisal of Dell Inc.*, No. CV 9322-VCL, 2015 WL 4313206, at *5-6 (Del. Ch. July 13, 2015), *as revised* (July 30, 2015).

DTC had legal title to the vast majority of RiskOn's stocks due to reforms Congress implemented to increase the efficiency of trading securities of public companies. *See* David Brooks, *Depository Trust Company and the Omnibus Proxy: Shareholder Voting in the Era of Share Immobilization*, 56 S. Tex. L. Rev. 205, 209-10 (2014). Because RiskOn was a public company with stock listed on the NASDAQ stock exchange, any public market investor with a brokerage account could purchase RiskOn stock by placing an order with a broker. ECF No. 6 at

---

[2] This number is an estimate because Zest Holdings does not have RiskOn's stock ledger as of November 15, 2022, the record date. ECF No. 45-2 at 2. RiskOn has not authorized its transfer agent to release that information to Zest Holdings. ECF Nos. 45-2 at 1-2; 45-3 at 2-3.

3

9. These investors are "beneficial owners" because they could sell and had the economic benefits of the stock, but they did not appear on RiskOn's stock ledger. *See* Brooks, *Depository Trust Company and the Omnibus Proxy: Shareholder Voting in the Era of Share Immobilization*, 56 S. Tex. L. Rev. at 207. Instead, broker-dealers, also called DTC participants, inform the DTC how many shares of RiskOn its customers collectively own. *See id.* at 210. DTC then compiles the number of shares owned by all DTC participants, notifies RiskOn of that number, and DTC's nominee appears on RiskOn's stock ledger as the legal owner of the shares reported by DTC participants that were initially bought by the beneficial owners. *See id.* at 210-11. This makes DTC the "record owner" of the shares. When beneficial owners traded RiskOn shares, their brokers would trade the shares between themselves and then only report to the DTC the net change of the sum of their customers' collective ownership of RiskOn shares at the end of the trading day. *See id.* at 210. DTC records by book entry these net changes in ownership across all brokers, allowing an unlimited number of trades of RiskOn shares between brokers without changing DTC's nominee as the registered owner of the shares on RiskOn's stock ledger. *See id.* at 210-11. That is why RiskOn's stock ledger lists DTC's nominee as the owner of about 80% of RiskOn's stocks because that amount had been bought by public market investors through brokers on November 15, 2022.

The defendants believe that distributing the proper pro rata amount of the net Walmart proceeds to DTC will ultimately lead to the beneficial owners of RiskOn's stock receiving the net proceeds. They state that once DTC receives the net proceeds, it will distribute them proportionally to the brokers based on how many RiskOn stocks each broker's customers held, and then the brokers will distribute the funds to RiskOn's public market investors.

The plaintiffs argue that distributing the net proceeds to DTC will breach the SPA because DTC is not a "Record Date Owner" under the SPA and because DTC is unable to distribute the net proceeds such that the beneficial owners of RiskOn's stock will receive them. They also argue that the defendants' spending of the Walmart proceeds on expenses outside of the distribution to the beneficial owners of RiskOn's stock is excessive and violates the SPA. The plaintiffs move for a temporary restraining order and preliminary injunction based only on their likelihood of success on their breach of contract claim. They seek to prohibit the defendants from spending or transferring any portion of the Walmart proceeds.

## II.     MOTION FOR PRELIMINARY INJUNCTION

To obtain a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

For the reasons set forth on the record in the December 17, 2025 hearing, and as outlined here, I grant a preliminary injunction barring the defendants from making any further distributions of the Walmart proceeds to DTC, the litigation funder, counsel in the Walmart litigation, other parties owed expenses related to the Walmart litigation, or the defendants themselves.[3]

---

[3] The plaintiffs also moved for a temporary restraining order to bar the defendants from distributing any of the Walmart proceeds on the same grounds as their motion for a preliminary

5

1     The plaintiffs have raised a serious question whether transferring the money to DTC will lead to RiskOn's beneficial owners receiving their share of the net proceeds. Both parties agree that the SPA's purpose is to ensure the beneficial owners ultimately receive their proper share of the Walmart proceeds. But the plaintiffs have raised a serious question whether DTC needed notice prior to November 15, 2022 to be able to practically distribute the proceeds to the proper brokers so that those brokers can distribute the proceeds to the proper beneficial owners. There is a likelihood of irreparable injury to the plaintiffs because the defendants do not have assets to compensate the beneficial owners or the plaintiffs if DTC receives the money and it disappears at some point in the distribution process. Because the defendants have already stated they will not distribute any funds to DTC until they have adequate assurance that doing so will ensure the beneficial owners receive their portion, and because they do not have that assurance yet, the defendants are not harmed by an injunction at this stage. ECF No. 31 at 26. So the balance of the equities tips sharply in the plaintiffs' favor. The public interest weighs in favor of halting the transfer of the funds to DTC until there are assurances that RiskOn's beneficial owners will receive their share of the Walmart proceeds through that process. Therefore, I grant a preliminary injunction to prohibit the defendants from transferring any of the Walmart proceeds to DTC.

    I also prohibit the defendants making any further distributions to the litigation funder of the Walmart litigation, counsel in the Walmart litigation (Bartko Pavia), or to other parties owed expenses related to the Walmart litigation. The plaintiffs again have raised serious questions whether any of these payments are excessive or in violation of the SPA because the defendants

---

injunction. I deny the motion for a temporary restraining order as moot as I am granting the preliminary injunction.

6

have refused to turn over specifics of what those entities are owed and what they did to earn those amounts. I find irreparable harm to the plaintiffs that tips sharply in their favor because once any more of these funds are paid out, it will be extremely difficult to get them back. The defendants will experience minimal harm because the injunction provides them a defense from potential legal liability for waiting to pay these expenses. The public interest is served by ensuring the Record Date Owners will receive the maximum payout from the Walmart proceeds to the extent some of these funds are not needed for litigation expenses.

Finally, I grant a preliminary injunction barring the defendants from retaining 5% of the net proceeds. All parties agree that the defendants are owed some compensation for prosecuting the trade secrets litigation against Walmart. However, the plaintiffs have raised a serious question about how much the defendants are owed because neither the SPA nor any other document given to me states the amount the defendants are owed for their work. The same likelihood of irreparable harm applies here as it does in paying out the litigation expenses, such that the balance of the equities tips sharply in the plaintiffs' favor. This again serves the public interest by ensuring the Record Date Owners will receive the maximum payout from the Walmart proceeds.

However, I do not enjoin the defendants from distributing part of the Walmart proceeds to defense counsel in this case or to Stretto, Inc., the legal services firm the defendants retained to distribute the Walmart proceeds. At the December 17 hearing, the plaintiffs agreed to not seek to stop payments to either at this time.

Given there is no harm to the defendants, I waive any need for a security bond under Federal Rule of Civil Procedure 65.

I strongly encourage the parties to communicate with each other to resolve these questions on their own. Both parties are withholding information from the other. An appropriate confidentiality order should protect the defendants' disclosure to the plaintiffs of the fee arrangements with the litigation funder, Bartko Pavia, and other Walmart litigation expenses. Also, with this injunction, the plaintiffs have no reason to believe that providing the list of RiskOn's stockholders of record as of November 15, 2022 to the defendants will cause the defendants to transfer the funds to the DTC at this time. *See* ECF No. 31-7 at 13-14.

### III.  CONCLUSION

I THEREFORE ORDER that the plaintiffs' motion for preliminary injunction **(ECF No. 18) is GRANTED in part.** Defendants Zest Labs Holdings, LLC, and Gary Metzger are hereby **ENJOINED** from further distributing any of the Walmart proceeds to the litigation funder in the Walmart litigation, counsel in the Walmart litigation (Bartko Pavia), other parties owed expenses related to Walmart litigation, or to the defendants themselves.

I FURTHER ORDER that the plaintiffs' motion for a temporary restraining order **(ECF No. 17) is DENIED as moot**.

DATED this 22nd day of December, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE