Travis F. Chance, Esq., Nevada Bar No. 13800
tchance@bhfs.com
Sarah K. Voehl, Esq., Nevada Bar No. 16646
svoehl@bhfs.com
Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone:    702.382.2101
Facsimile:    702.382.8135

Dhaivat H. Shah, Esq. (admitted *pro hac vice*)
ds@grellas.com
Robert H. O'Leary, Esq. (admitted *pro hac vice*)
ro@grellas.com
Grellas Shah LLP
550 California St., Suite 1040
San Francisco, CA 94104
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

*Attorneys for Defendants*
ZEST LABS HOLDINGS, LLC and GARY METZGER

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RISKON INTERNATIONAL, INC., a Nevada corporation; ECOARK, INC., a Delaware corporation; and HYPERSCALE DATA INC., a Delaware corporation,<br><br>            Plaintiffs,<br><br>vs.<br><br>ZEST LABS HOLDINGS, LLC, a Nevada limited liability company; and GARY METZGER, an individual,<br><br>            Defendants. | Case No. 2:25-cv-02042-APG-NJK<br><br>**DEFENDANTS ZEST LABS HOLDINGS, LLC AND GARY METZGER'S OPPOSITION TO WILLIAMS SIMONS & LANDIS PC AND FRED I. WILLIAMS' MOTION TO INTERVENE**<br><br>Judge: Andrew P. Gordon |
| ZEST LABS HOLDINGS, LLC, a Nevada limited liability company,<br><br>            Counterclaim Plaintiff,<br><br>vs.<br><br>RISKON INTERNATIONAL, INC., a Nevada corporation<br><br>            Counterclaim Defendant. | |

## I.  INTRODUCTION

The Motion To Intervene ("Motion") by Proposed Intervenors Williams Simons & Landis PC and Fred I. Williams (collectively, "WSL") is a procedural overreach that should be denied.

First, WSL has no interest in the subject matter of this action—the rights and obligations that the parties to the Stock Purchase Agreement ("SPA"), Zest Labs Holdings, LLC ("Zest Holdings") and RiskOn International, Inc. ("RiskOn"), owe to each other.  WSL is not a party to the SPA, is not entitled to anything under the SPA, and has no valid interest in Zest Holdings' and RiskOn's rights and duties to each other under the SPA.  And the issues to be decided in this case, i.e., the manner of distribution of litigation proceeds to RiskOn shareholders of a particular record date, have nothing to do with the quantum of any potential contractual claim by WSL.

Instead, the Motion asserts a generalized economic interest in collecting a future judgment against Zest Holdings and RiskOn.  At one time, WSL was counsel for Zest Labs, Inc. ("Zest Labs," and together with Zest Holdings, "Zest") and RiskOn in their trade secret misappropriation lawsuit against Walmart, Inc. ("Walmart").  WSL charged Zest over $13 million dollars in hourly fees for its work, which included serving as lead counsel in a jury trial held in 2021.  The trial court, however, set aside that verdict because it determined in post-trial proceedings that WSL had made significant misrepresentations to the court.

With Bartko Pavia LLC ("Bartko") as trial counsel in a second trial held in 2025, Zest Labs and RiskOn obtained a jury verdict followed by a settlement.  In January 2026, Zest filed malpractice and related claims against WSL and a predecessor law firm in Texas state court, and WSL filed breach of contract and related claims against Zest, RiskOn, and Bartko in United States District Court for the Western District of Texas.  WSL claims it is entitled to receive a percentage of the Walmart settlement as a contingency fee award on top of the millions it already received in hourly compensation.  Zest asserts that WSL is not entitled to any additional fees because of its misconduct and that WSL owes significant compensation for the legal malpractice it committed.  Unless and until the Texas courts reject Zest's malpractice claim and rule in

WSL's favor on its contract claim, WSL lacks a significant protectable interest—required for intervention of right in the Ninth Circuit.

Second, permissive intervention would inflict undue delay to these proceedings and undermine judicial economy. If WSL is permitted to intervene, this Court may be forced to wade into complex questions of Texas attorney malpractice law, fee forfeiture law, unconscionability of the underlying fee agreement, and legal malpractice allegations that are pending in Texas (or delay this case for another court to resolve these issues). All of those issues go to the heart of whether WSL has a right to any funds, which is the basis for the sweeping relief that WSL requests in the Motion. Whether WSL is owed money (or owes money to Zest) is being litigated in Texas. Importing a foreign malpractice dispute into this Nevada contract interpretation case would cause undue delay, duplicative proceedings, and waste judicial resources.

The Motion should be denied.

## II. BACKGROUND

### A. WSL's Role in the Walmart Trade Secret Litigation

In 2018, Zest Labs and RiskOn brought claims against Walmart for misappropriating trade secrets. Ex. 1, ¶¶ 28-30. Walmart had previously filed a provisional patent application that contained the trade secrets in question. *Id.*, at ¶ 26. One of the issues in dispute was whether Zest Labs had taken steps to protect its trade secrets by trying to stop the public release of Walmart's provisional patent application. *Id.*, at ¶ 43. Before Walmart's provisional patent became public, Walmart produced the patent application to WSL in discovery. *Id.* To rebut Walmart's argument that Zest Labs had failed to protect its trade secret after WSL received the patent application in discovery, WSL submitted a declaration to the court attesting under oath that it had not reviewed the patent application before it became public. *Id.* The court relied on WSL's representations to rule that Walmart could not argue to the jury that Zest Labs had failed to protect its trade secret by not trying to stop publication of the patent. *Id.* As it later turned out, however, WSL's declaration contained misrepresentations—WSL had reviewed the patent application before it became public. *Id.* at ¶¶ 46-47.

The court ruled that it was considering sanctions against WSL and plaintiffs because of WSL's conduct:

> The Court is considering sanctions against Plaintiffs and Plaintiffs' former counsel, WSL, Michael Simons, Todd Landis, Jonathan Hardt, and Fred Williams for misrepresentations to the Court about Plaintiffs' and their counsels' knowledge of the Bohling patent application. The misrepresentation was made at various times to the Court about the timing of their knowledge of Walmart's application for the Bohling patent before trial, including docket entry # 247. In reliance on the misrepresentation or misrepresentations, the Court refused to allow Walmart to argue to the jury that Zest knew about the patent application and did not attempt to stop its publication. Walmart should have been allowed to make that argument at trial. The Court has found that Zest's failure to disclose that it had notice of Walmart's patent application before it was published was material and not merely cumulative or impeaching and that this evidence would probably produce a different result at trial. The Court has the inherent authority and authority under Rule 11 to order a party and its attorneys to pay sanctions in the form of attorneys' fees reasonably incurred because of a misrepresentation. In addition, the Court has authority pursuant to 28 U.S.C. § 1927 to order an attorney to personally pay the opposing party's attorneys' fees where the attorney's conduct has multiplied the proceedings unreasonably.

Ex. 4.

After the issue of WSL's misrepresentations to the court came to light, Bartko replaced WSL as trial counsel for Zest Labs and RiskOn. Ex. 2, at ¶ 36; Ex. 3. The possibility of sanctions against WSL and plaintiffs remained open while the parties retried the trade secret case. A settlement was reached after a second jury verdict in Zest's favor. Compl. ¶ 16, ECF No. 1-1. The trial did not resolve the question of sanctions against WSL, but the order of dismissal entered after the settlement also dismissed any remaining sanctions claims or motions. Ex. 5 ("This Order includes dismissal of any sanctions claims or motions that either party may have against the other or their attorneys.").

**B.      The Claims in This Action**

In 2023, RiskOn spun off its subsidiary Zest Labs to the newly formed Zest Holdings by entering into the SPA between RiskOn, its subsidiary Ecoark, and Zest Holdings. Compl. ¶ 13, ECF No. 1-1. The SPA transferred ownership of Zest Labs to Zest Holdings and obligated Zest Holdings to make a distribution to RiskOn's shareholders of record as of November 15, 2022,

3

if the Walmart trade secret litigation produced a financial recovery. The SPA required the parties to cooperate with one another to complete the transactions contemplated by the SPA. Compl., Ex. A at §§ 7.1-7.2, ECF. No. 1-1.

The Complaint filed by RiskOn alleges that Zest Holdings and Mr. Metzger are in breach of the SPA because they have not yet made a distribution. Compl. ¶¶ 20, 21, 30, ECF No. 1-1. The Complaint alleges further that Defendants are obligated under the cooperation provision in the SPA to provide RiskOn with an accounting of all expenses that Zest Holdings has incurred. Compl. ¶¶ 17, 19, ECF No. 1-1.

Zest Holdings has filed a counterclaim against RiskOn. Counterclaim, ECF No. 45. In the counterclaim, Zest Holdings alleges that RiskOn breached the SPA's cooperation provision by not providing its stockholders' list. Counterclaim, ¶¶ 17-18, 33, 35, 52, ECF No. 45.

### C. Zest Sues WSL for Malpractice; WSL Sues to Recover Its Purported Contingency Fee

Zest Labs and Zest Holdings have brought claims against WSL and Vinson & Elkins ("V&E")[1] for negligence and breach of fiduciary duty based on their misconduct during the Walmart trade secret litigation, *Zest Labs, Inc., et al., v. Vinson & Elkins, LLP, et al.*, Case No. 2026-01330 (D. Ct. Harris Cty. Tx.) (the "Malpractice Action"). Ex. 1. The complaint in that action alleges that despite charging Zest more than $13 million in fees, WSL and V&E made misrepresentations to the court, engaged in rampant overbilling, and failed to raise a damages claim that would have approximately *doubled* the size of the verdict. Ex. 1, at ¶¶ 51, 52, 54-59. The Malpractice Action was filed in the District Court of Harris County, Texas, removed to U.S. District Court for the Southern District of Texas, and remanded by stipulation back to the Harris County court, where it is currently pending.

WSL has brought claims against RiskOn, Zest, and Bartko based on the purported failure to pay WSL's purported contingent fee and other compensation allegedly triggered by a recovery in the Walmart litigation, *Williams Simons & Landis PC v. RiskOn International, Inc., et al.*,

---

[1] V&E was initially hired as Zest's counsel, but the partners handling the matter left V&E to form WSL.

4

Case No. 26-cv-00034 (W.D. Tex.) (the "Fee Action"). Ex. 2. The Fee Action was filed and is currently pending in the U.S. District Court for the Western District of Texas.

### III. ARGUMENT

#### A. WSL Is Not Entitled to Intervene as a Matter of Right

An applicant for intervention as a matter of right must establish, among other things, that "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; [and] (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest[.]" *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *accord Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011). The burden is on the applicant to establish that all elements have been met. *See U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). "Failure to satisfy any one of the requirements [of Rule 24(a)(2)] is fatal to the application, and [the Court] need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

An intervenor has a "significant protectable interest" "if the interest is protected by law and there is a relationship between the legally protected interest and the plaintiff's claims." *Id*. "An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly*, 159 F.3d at 410. If the interest is economic, the "interest must be concrete and related to the underlying subject matter of the action." *Alisal*, 370 F.3d at 919. An interest that is speculative and contingent on the occurrence of multiple subsequent events will not support intervention. *See State of Montana v. U.S. E.P.A.*, 137 F.3d 1135, 1142 (9th Cir. 1998); *Silver v. Babbitt*, 166 F.R.D. 418, 427 (D. Ariz. 1994).

The Court must deny WSL's motion to intervene as of right because WSL has not and cannot establish the first two elements.

#### 1. WSL's Interest in Additional Fees is Speculative

An interest sufficient for intervention must be "direct, *non-contingent*, and substantial." *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981) (emphasis added). Here, WSL asserts a contingency fee interest in settlement proceeds from the Walmart trade secret litigation,

5

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

but the validity of WSL's contingency fee interest is currently being litigated in two separate Texas proceedings in state and federal court. Zest contends the contingency fee was forfeited under Texas law due to WSL's termination for cause and because the fee is unconscionable. Zest also contends that any such fee is more than offset by WSL's malpractice and breach of fiduciary duty. Ex. 1 (Texas state court complaint alleging damages of approximately $200 million).

This Court cannot permit intervention premised on a fee interest that is being challenged. Unless and until WSL obtains a judgment in Texas declaring that its contingent fee interest survived after Zest and RiskOn terminated WSL, WSL has no established right to these funds. Rule 24 was not designed to allow non-parties to intervene and freeze assets based on a *contested, unadjudicated* claim that is actively being litigated in another jurisdiction. *See City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) ("'the intervenor cannot rely on an interest that is wholly remote and speculative'" (citation omitted)). Allowing intervention here would effectively prejudge the Texas cases or force this Court to adjudicate the validity of a contingent fee interest that turns on another state's law.

### 2. WSL Is Merely a Prospective Creditor

The Ninth Circuit has held that a mere economic interest in the collectability of a prospective future debt is insufficient for intervention. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (denying intervention where creditor sought to ensure defendant retained assets to pay a debt); *Hawaii-Pacific Venture Capital Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977) (holding no right to intervene based on the fact that the outcome of a case may increase or decrease the collectability of a third-party's claim against a party).

WSL is not a party to the SPA. Its only goal is to ensure Zest has sufficient funds to pay a potential future judgment in the Fee Action. Under *Alisal Water*, this generalized financial interest "is several degrees removed from the subject matter of [the] litigation" and does not support intervention of right. *Id.* at 920. WSL's due process rights are fully protected in other pending litigation. The *Alisal* court's explanation is particularly apt here:

> A mere interest in property that may be impacted by litigation is not a passport to participate in the litigation itself. To hold otherwise would create a slippery slope where anyone with an interest in the property of a party to a lawsuit could bootstrap that stake into an interest in the litigation itself.

*Id.* at 920; *see City of Emeryville*, 621 F.3d at 1259 ("'the intervenor cannot rely on an interest that is wholly remote and speculative'" (citation omitted)).

WSL's stated goal here is not to litigate the SPA, but merely to freeze Zest's assets to secure a *possible* future judgment in the Fee Action. Under *Alisal Water* and the weight of persuasive authority, this generalized and contingent financial interest as a prospective creditor "is several degrees removed from the subject matter of [the] litigation" and does not support intervention of right. *See Alisal Water*, 370 F.3d at 920.

### 3. WSL's Interest Is Unrelated to the SPA

The Motion should also be denied because WSL's purported interest does not relate to the underlying subject matter of this litigation—the rights and obligations RiskOn and Zest owe each other under the SPA. WSL's intervention Motion acknowledges that the subject of this action is the rights and duties among Zest and RiskOn under the SPA when it summarizes the issues currently before the Court as "rais[ing] threshold issues concerning the interpretation of the SPA." Mot. at 8:14-15. WSL is not a party to the SPA and does not claim any rights under the SPA. WSL's fee interest will not be impaired by the Court's rulings in this action about the disputed aspects of the SPA.

The Motion suggests that the Court's resolution of the disputed questions in this action concerning the SPA would impact any purported rights WSL may have to collect fees if it eventually prevails in the Fee Action. It will not. While the Court here may need to decide the *method of distribution* required of Zest by the SPA and the *accounting rights and cooperation obligations* RiskOn has under the SPA, the answers to those disputed issues will not impact WSL's ability to collect a judgment if it eventually prevails in the Fee Action. *See Blake v. Pallan,* 554 F.2d 947, 954 (9th Cir. 1977) (holding an intervenor could not show that his interest would be impaired when he was free to simply bring another action to protect that interest). Notably, the quantum of WSL's purported contingency fee claim is not measured by either the

method of distribution to RiskOn's shareholders, or the amount of such distribution.

### B. Permissive Intervention Under Rule 24(b) Should Be Denied Due to Lack of Common Questions and Undue Delay

"An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly*, 159 F.3d at 412. If an applicant satisfies these threshold requirements, the court must consider "whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.* (citing Fed. R. Civ. Proc. 24(b)(2)). The Court should also consider judicial economy. *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989).

WSL does not satisfy the requirements for permissive intervention.

WSL's claim does not share common questions of law or fact with the Complaint and Counterclaim between Zest and RiskOn alleging breaches of the obligations under the SPA. The Motion explains that WSL's Fee Action concerns WSL's purported right to contingent fees from its prior representation of Zest. There are no common questions of law or fact with this action, which concerns the rights and duties RiskOn and Zest owe each other under the SPA. The Motion for permissive intervention must be denied for failure to establish the threshold requirement of common questions of law or fact. *See Donnelly*, 159 F.3d at 412.

Moreover, even if a common question of law or fact were shown, intervention should be denied because it would lead to undue delay, prejudice, and waste of court and party resources. Allowing intervention would require this Court to preside over an entirely separate merits determination regarding whether WSL has a right to additional fees despite its termination for cause in the Walmart trade secret litigation and whether its fee claim is entirely offset by the malpractice it committed. That analysis involves inquiries wholly unrelated to the dispute here between RiskOn and Zest about their rights and obligations under the SPA. Forcing the existing parties to pause their litigation while this Court (or another one) analyzes the nuances of Texas attorney fee forfeiture law, unconscionability, legal malpractice, and breach of fiduciary duty would result in substantial prejudice, undue delay, and waste court resources.

WSL admits in Footnote 1 of its Motion that it "does not seek to adjudicate issues already before the Court" but seeks intervention merely to protect its contingent fee interest "while" litigating the merits in Texas. That admission confirms intervention should be denied because WSL's involvement would contribute nothing to the resolution of the actual case before this Court. Judicial economy dictates that WSL's fee/malpractice dispute remain in Texas, where the relevant law applies and the parties are already joined. What WSL is actually seeking is a prejudgment attachment in connection with its Fee Action. *See* Mot. 16:18-17:6. It would be especially prejudicial and wasteful for this Court to entertain and rule on such a request in connection with an unrelated action involving different facts, claims, and parties.

## IV.  CONCLUSION

WSL seeks to intervene based on a contingent, disputed economic interest that is the subject of active litigation in another forum. Intervention would require this Court to improperly prejudge the outcome of the Texas litigation or conduct a prejudice-inducing trial within a trial regarding fee forfeiture and malpractice. Zest therefore respectfully requests that the Court deny the Motion to Intervene.

Respectfully Submitted,

Dated: February 13, 2026        BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: */s/ Travis F. Chance*
Travis F. Chance, Esq. (NV Bar No. 13800)
Sarah K. Voehl, Esq., (NV Bar No. 16646)
100 N City Parkway, Suite 1600
Las Vegas, NV 89106
Email(s):    tchance@bhfs.com
             svoehl@bhfs.com

GRELLAS SHAH LLP
Dhaivat H. Shah, Esq. (*pro hac vice*)
Robert H. O'Leary, Esq. (*pro hac vice*)
550 California Street, Suite 1040
San Francisco, CA 94104
Email(s):    ds@grellas.com
             ro@grellas.com

*Attorneys for Zest Labs Holdings, LLC and Gary Metzger*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **DEFENDANTS ZEST LABS HOLDINGS, LLC AND GARY METZGER'S OPPOSITION TO WILLIAMS SIMONS & LANDIS PC AND FRED I. WILLIAMS' MOTION TO INTERVENE** was served via electronic service on February 13, 2026, to all parties on the CM/ECF service list.

*/s/ Paula Kay*
An employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP