1  TRAVIS F. CHANCE, ESQ., Nevada Bar No. 13800
   tchance@bhfs.com
2  SARAH K. VOEHL, ESQ., Nevada Bar No. 16646
   svoehl@bhfs.com
3  BROWNSTEIN HYATT FARBER SCHRECK, LLP
   100 North City Parkway, Suite 1600
4  Las Vegas, Nevada  89106
   Telephone:      702.382.2101
5  Facsimile:      702.382.8135

6  DHAIVAT H. SHAH, ESQ. (admitted *pro hac vice*)
   ds@grellas.com
7  ROBERT H. O'LEARY, ESQ. (admitted *pro hac vice*)
   ro@grellas.com
8  GRELLAS SHAH LLP
   550 California St., Suite 1040
9  San Francisco, CA 94104
   Telephone: (408) 255-6310
10 Facsimile: (408) 255-6350

11 *Attorneys for Defendants*
   *Zest Labs Holdings, LLC and Gary Metzger*
12
                        **UNITED STATES DISTRICT COURT**
13
                             **DISTRICT OF NEVADA**
14

15 RISKON INTERNATIONAL, INC., f/k/a     | Case No.: 2:25-cv-02042-APG-NJK
   BITNILE METAVERSE, INC. and/or        |
16 ECOARK HOLDINGS, INC. a Nevada        | **DECLARATION OF ROBERT H.**
   Corporation; ECOARK, INC., a Delaware | **O'LEARY IN SUPPORT OF**
   corporation; and HYPERSCALE DATA      | **DEFENDANTS' OPPOSITION TO**
17 INC., a Delaware corporation;         | **MOTIONS TO INTERVENE**

18              Plaintiffs,              | Judge:  Hon. Andrew P. Gordon

19        v.                            | Complaint Filed:  October 7, 2025

20 ZEST LABS HOLDINGS, LLC, a Nevada
   limited liability company; AND GARY
21 METZGER, an individual;

22              Defendants.

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## DECLARATION

I, Robert H. O'Leary, declare:

1.      I am an attorney with the law firm of Grellas Shah LLP, counsel for Defendants Zest Labs Holdings, LLC and Gary M. Metzger.  I am a member in good standing of the bar of the State of California and have been admitted *pro hac vice* in the District of Nevada in connection with this action.

2.      The purpose of this declaration is to provide the Court with exhibits relevant to Defendants' Opposition to Third-Parties Williams Simons & Lind PC and Fred. I Williams Motion to Intervene, filed herewith.  I have personal knowledge of the matters set forth below and, if called upon to do so, could and would testify competently to the matters described below

3.      **Exhibit 1** is a true and correct copy of Plaintiff's Original Complaint filed in *Zest Labs, Inc., et al., v. Vinson & Elkins, LLP, et al.*, Case No. 2026-01330 (D. Ct. Harris Cty. Tx.).

4.      **Exhibit 2** is a true and correct copy of Plaintiff's Original Complaint filed in *Williams Simons & Landis PC v. RiskOn International, Inc., et al.*, Case No. 26-cv-00034 (W.D. Tex.).

5.      **Exhibit 3** is a true and correct copy of the Order issued December 22, 2023 in *Zest Labs, Inc., et al., v. Walmart Inc.*, Case No. 18-cv-500 (E.D. Ark.).

6.      **Exhibit 4** is a true and correct copy of the Order issued October 23, 2024 in *Zest Labs, Inc., et al., v. Walmart Inc.*, Case No. 18-cv-500 (E.D. Ark.).

7.      **Exhibit 5** is a true and correct copy of the Order of Dismissal issued August 12, 2025 in *Zest Labs, Inc., ept al., v. Walmart Inc.*, Case No. 18-cv-500 (E.D. Ark.).


I declare under penalty of perjury under the laws of the United States of America and the State of Nevada that the foregoing is true and correct.  Executed this 13th day of February, 2026 in Berkeley, California.


By:      */s/ Robert H. O'Leary*
          Robert H. O'Leary

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**INDEX OF EXHIBITS**

1.    **Exhibit 1**:  Plaintiff's Original Complaint filed in *Zest Labs, Inc., et al., v. Vinson & Elkins, LLP, et al.*, Case No. 2026-01330 (D. Ct. Harris Cty. Tx.).

2.    **Exhibit 2**: Plaintiff's Original Complaint filed in *Williams Simons & Landis PC v. RiskOn International, Inc., et al.*, Case No. 26-cv-00034 (W.D. Tex.).

3.    **Exhibit 3**:  Order issued December 22, 2023 in *Zest Labs, Inc., et al., v. Walmart Inc.*, Case No. 18-cv-500 (E.D. Ark.).

4.    **Exhibit 4**:  Order issued October 23, 2024 in *Zest Labs, Inc., et al., v. Walmart Inc.*, Case No. 18-cv-500 (E.D. Ark.).

5.    **Exhibit 5**:  Order of Dismissal issued August 12, 2025 in *Zest Labs, Inc., ept al., v. Walmart Inc.*, Case No. 18-cv-500 (E.D. Ark.).

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

O'LEARY DECL. ISO DEFENDANTS' OPP. TO MOT. TO INTERVENE

Exhibit 1

(Plaintiff's Original Complaint filed in *Zest Labs, Inc., et al., v. Vinson & Elkins, LLP, et al.*, Case No. 2026-01330 (D. Ct. Harris Cty. Tx.))

1/8/2026 1:17 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 109819058
By: Christopher Matthews
Filed: 1/8/2026 1:17 PM

CAUSE NO. _____

| | | |
|---|---|---|
| ZEST LABS, INC. f/k/a INTELLEFLEX CORPORATION and ZEST LABS HOLDINGS, LLC | § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| V. | § § | HARRIS COUNTY, TEXAS |
| VINSON & ELKINS, LLP; WILLIAMS SIMONS & LANDIS, PC; FRED WILLIAMS, MICHAEL SIMONS; TODD LANDIS, and JONATHAN HARDT | § § § § § | |
| *Defendants.* | § | \_\_\_\_ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, Zest Labs, Inc. f/k/a Intelleflex Corporation and Zest Labs Holdings, LLC (collectively, "Zest"), complain of Defendants Vinson & Elkins, LLP ("V&E") and Williams Simons & Landis, PC ("WSL"), Fred Williams, Michael Simons, Todd Landis, and Jonathan Hardt (collectively, "Defendants") as follows:

### SUMMARY OF THE DISPUTE

1.      This action arises out of Defendants' prior engagement as counsel for Zest in a bet-the-company trade secret misappropriation case against Walmart, Inc.

2.      Zest is a technology company. It spent over $140 million researching and developing technology that extends the shelf-life of food and reduces food waste. Zest marketed its technology to Walmart, but instead of licensing the technology from Zest, Walmart misappropriated it for its own use.

3.      Zest hired V&E and litigation ensued.

4.      Defendants bungled the representation of Zest from the start, failing to seek the most basic, obvious relief to which Zest was entitled. V&E handled the vast majority of the work

developing the case and finalizing the damage model, ultimately billing Zest over $7.7 million (on top of seeking an additional contingent fee interest) and employing over 20 billing timekeepers on the file.

5.     Lead counsel for Zest – Williams, Simons, Landis, and Hardt – then saw an opportunity for an even larger payday by striking out on their own to form a separate law firm and taking the case with them. They formed WSL and went on to charge Zest another $5.6 million through trial (on top of their own share of a contingent fee interest).

6.     Zest initially obtained a $105 million judgment against Walmart after an eight-day trial.  However, the judge overseeing the case determined that Zest's counsel intentionally misled the Court in a sworn affidavit on a key issue and set aside the judgment as a sanction.

7.     The Court permitted Zest to hire new counsel to re-try the case (at additional cost to Zest, of course), but the damages Zest could seek in the second trial were capped as a result of Defendants' prior failure to properly develop the case and, in particular, their failure to seek Zest's research and development costs as damages.

8.     The second trial against Walmart resulted in a larger verdict, but still between $67.3 million and $200 million less than what Zest should have recovered had Defendants sought the most basic and obvious relief available under the law for a trade secret misappropriation case – research and development costs.

9.     Defendants also breached their fiduciary duties to Zest by grossly overbilling for their services. Their fees should be disgorged.

10.     This lawsuit is necessitated by Defendants' refusal to accept responsibility for their misconduct and failure to abide by their obligations as counsel to Zest.

Certified Document Number: 124493177 - Page 2 of 15

## THE PARTIES

11.     Plaintiff Zest Labs, Inc. is a Nevada corporation with its principal place of business in Florida.

12.     Plaintiff Zest Labs Holdings, LLC is a Nevada limited liability company with a principal place of business in Florida.

13.     Defendant V&E is a Texas limited liability partnership with a principal place of business in Houston, Texas. It may be served with process at 845 Texas Ave., Suite 4700, Houston, Texas 77002.

14.     Defendant WSL is a Texas professional corporation with its principal office in Austin, Texas. It may be served with process through its registered agent, Fred Williams, at 106 East Sixth Street, Suite 900-168, Austin, Texas 78701.

15.     Defendant Fred Williams is an individual who resides in Austin, Texas. He may be served at 106 East Sixth Street, Suite 900-168, Austin, Texas 78701 or wherever he may be found.

16.     Defendant Michael Simons is an individual who resides in Austin, Texas. He may be served at 200 Congress Ave., Unit 29A, Austin, Texas 78701 or wherever he may be found.

17.     Defendant Todd Landis is an individual who resides in Dallas, Texas.  He may be served at 6019 Prestonshire Ln., Dallas, TX 75225 or wherever he may be found.

18.     Defendant Jonathan Hardt is an individual who resides in Austin, Texas. He may be served at 712 W. 14th St., Ste A, Austin, TX 78701 or wherever he may be found.

## JURISDICTION AND VENUE

19.     Venue is proper in Harris County, Texas pursuant to Texas Civil Practices & Remedies Code 15.002(a)(3), because it is where Defendant V&E's principal office is located. Venue is also proper insofar as a substantial part of the events or omissions giving rise to Plaintiffs'

Certified Document Number: 124493177 - Page 3 of 15

claims occurred in Harris County. Tex. Civ. Prac. & Rem. C. 15.002(a)(1).

20.     The amount in controversy exceeds the jurisdictional minimum of this Court.

<u>DISCOVERY LEVEL</u>

21.     Zest intends to conduct discovery under Level 3 of the Texas Rule of Civil Procedure 190.4.

<u>FACTS</u>

**A.  Zest Researches and Develops "Zest Fresh" and Markets the Technology to Walmart.**

22.     Zest began developing a technology-based process to reduce fresh food waste in the grocery industry in 2010.  It poured over $140 million into that effort.  The technology increases retail grocer margins by significantly reducing post-harvest losses through dynamic updates about actual product freshness on each pallet of food to ensure a maximum shelf-life for food sold in stores.

23.     In 2014, Zest marketed its technology, known as "Zest-Fresh", to Walmart, and the parties entered a Confidentiality Agreement and Document of Understanding, and later entered a Mutual Confidentiality and Non-Disclosure Agreement, to ensure that Zest's trade secrets remained protected.

24.     Over the ensuing months, Zest gave numerous presentations and exchanged emails with Walmart executives regarding its Zest-Fresh technology. At the same time, Walmart was developing its own technology-based process to preserve fresh produce and avoid food waste.

25.     Walmart then agreed to pilot Zest Fresh in 2016.  Zest continued to provide Walmart details and information about its technology throughout the pilot program and into 2017.

26.     Walmart terminated its business relationship with Zest Fresh on November 9, 2017. The very next day, on November 10, 2017, Walmart filed its own provisional patent application

Certified Document Number: 124493177 - Page 4 of 15

covering technology to prevent food waste and soon thereafter announced the launch of its own technology-based processes to reduce food waste that it called "Eden."

27.     Stunned by the revelation of Eden and its obvious similarity to Zest Fresh on the heels of Walmart terminating its relationship with Zest, Zest retained V&E to investigate its legal rights.

**B. Zest Hires V&E and Files Suit.**

28.     Zest formally engaged V&E by letter dated July 31, 2018. The letter states that "[V&E] will represent Zest Labs in prosecuting its claims against Wal-Mart Stores, Inc. and Walmart, Inc. (collectively "Walmart") regarding, [sic] claims related to Walmart's improper use of Zest Labs trade secret technology including its Zest Fresh solution, which tracks the freshness of food in the supply chain and reduces fresh food shrink…"

29.     V&E's engagement letter further provided that V&E was to be compensated on an hourly rate basis *and* contingent fee basis.

30.     V&E prepared and filed a lawsuit for Zest against Walmart on August 1, 2018. It alleged that Walmart committed Trade Secret Misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*., Trade Secret Misappropriation under the Arkansas Trade Secrets Act, and Breach of Contract.[1]

**C. V&E Develops Damage Models and Draft Jury Verdict Form.**

31.     V&E put swarms of lawyers on the case, racking up millions of dollars in fees. As part of its earliest work on the case, V&E devoted substantial attention to the damage models that

---

[1] V&E also alleged Conversion, Unfair Competition by Misappropriation, Fraud, Breach of Implied Covenant of Good Faith and Fair Dealing, and Unjust Enrichment, but those claims were summarily dismissed by the Court as a matter of law.

Zest would pursue in the case. V&E has 95 separate time entries in its billing records related to analyzing and developing damage models for Zest's claims. V&E selected a damages expert and worked closely with him to finalize the damage numbers for Zest.

32.     V&E also drafted a jury verdict form and instructions outlining damages available to Zest at an eventual trial. V&E's time records reveal that it worked on the verdict form on 6/28/2018, 7/3/2018, 7/16/2018, 7/20/18, 7/22/2018, 8/3/2018, 8/4/2018, 8/17/18 ("review the model jury instructions for Zest Labs' cause of actions and verdict forms"), 8/17/18 ("confer internally regarding jury instructions and verdict forms"); 9/17/18 (Review draft jury instructions and verdict form").

33.     Despite the millions of dollars V&E charged for its work, V&E made a fundamental error. Its lawyers focused exclusively on lost profits, reasonable royalty, and food waste savings as damage models and did not even consider, much less pursue, the most obvious and critical damage theory available to Zest under the law – Zest's research and development costs.

34.     Including research and development costs as a damage model is step one in any trade secret misappropriation case, especially when such costs are as high as they were at Zest. The model is relatively easy to prove, because all of the necessary information is at Zest, and it is therefore very difficult for a defendant to attack it as a viable theory of recovery.  The investment dollars can also be framed as a defendant's instant gain, because it was able to avoid spending those dollars to obtain the technology. Research and development costs provide a concrete, hard dollar damage model that is compelling, easy to prove, and straightforward to explain to a jury.

35.     In fact, research and development costs is such an elementary and obvious damages theory that it is explicitly provided for as damages in the Defend Trade Secrets Act Model Jury Instructions, the Arkansas Model Jury Instructions Measure of Damages – Misappropriation of

Certified Document Number: 124493177 - Page 6 of 15

Trade Secrets (Civil AMI 2604), and approved by the Arkansas Supreme Court, which has explained, "[T]he development and labor costs … are clearly part of the fair-market value of the trade secrets, and [Defendant] gained a benefit by using these trade secrets without paying for their development. Because of this, [Defendant] was unjustly enriched by its use of the [trade secrets] without having to contribute to the time, effort, and cost of their development." *R.K. Enters., LLC v. Pro-Comp Mgmt., Inc.*, 372 Ark. 199, 207 (2008).

36.     Federal courts across the country have endorsed the research and development damage model in trade secret cases. "[T]he actual development costs of the plaintiff [can be] the complete measure of damages." *Univ. Computing Co. v. Lykes–Youngstown Corp.*, 504 F.2d 518, 538 (5th Cir. 1974); also see *GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 499 (5th Cir. 2016) ("The costs a plaintiff spent in development … can be a proxy for the costs that the defendant saved."); *accord PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 163 (3d Cir. 2022) (plaintiff's research and development costs are "indicative of the costs … avoided by misappropriating the fruits" of plaintiff's work); *Bourns, Inc. v Raychem Corp.*, 331 F.3d 704, 709-710 (9th Cir. 2003) (affirming district court's damages award of $9 million after relying on evidence that the plaintiff's development cost was $3 million per year and that the defendant saved at least three years of development costs).

37.     By contrast, the reasonable royalty damage model that V&E pursued is disfavored. It is subject to attack and all manner of unknowns such as what a willing buyer and seller would have agreed to in connection with licensing the subject technology. It is also subject to apportionment arguments along the lines that any success of the technology was the result of the defendant's marketing, brand, and other features, not necessarily the technology itself.

Certified Document Number: 124493177 - Page 7 of 15

38.     Lost profits are also often difficult to prove and sustain through legal challenges by trade secret defendants for similar reasons. In this case, lost profits were especially suspect, because Zest had not previously earned profits. V&E's third damage theory, savings from the reduced food waste that Walmart allegedly realized from using Zest's technology, also suffered from speculation, because Walmart contributed other technology and processes – beyond Zest's technology – to reduce food waste. Establishing the line at which Zest's technology prevented food waste at Walmart versus what savings resulted from Walmart's other processes, was dubious.

39.     As should have been expected by V&E, the Court ultimately drastically reduced Zest's reasonable royalty damage model and struck Zest's damages expert witness' opinions regarding lost profits and cost savings from the reduction of food waste. V&E's myopic focus on the *estimated commercial* value of Zest Fresh to the exclusion of its *actual investment* value was inexcusable and fell far below the applicable standard of care.   In any trade secret case, but especially a case of this magnitude for Zest and one in which it had invested nearly $150 million in Zest-Fresh, V&E's failure to develop and pursue those research and development costs as an alternative damage model constitutes clear malpractice.

40.     Any competent trade secret litigator would have included research and development costs as an alternative damage theory, but V&E failed to even consider it, much less include it in its expert's opinions or draft jury verdict form.

### D.  V&E Lawyers Start Their Own Firm, Take the Zest Case, and Lie to the Court.

41.     After completing fact discovery, solidifying the damage models to pursue, and largely completing the expert analysis related to damages over the course of a year and half at V&E, the lead lawyers handling the Zest case started their own firm beginning January 1, 2020. Williams, Simons, Landis and Hardt formed WSL and took the Zest case with them.

42.     WSL replaced V&E as counsel of record, but V&E retained a portion of its contingent fee interest in the case and continued monitoring its progress.

43.     Zest moved for partial summary judgment on Walmart's alleged misuse of Zest's trade secret. Walmart responded, arguing that Zest had consented to the use by Walmart, because it knew about Walmart's provisional patent application, which had been produced in discovery to Zest's lawyers. Zest's lawyers replied to Walmart's "consent" defense by filing a sworn affidavit that they had not actually seen the provisional patent application in discovery before the patent was published by the U.S. Patent Office.  The affidavit was false, but Walmart and the Court took Zest's lawyers at their word, and Walmart did not pursue a consent defense at trial on that basis.

**E.  Zest's First Trial Against Walmart.**

44.     Zest tried its case against Walmart for 8 days. It submitted a jury verdict form that, consistent with V&E's prior damages analysis, failed to seek Zest's research and development costs.

45.     The jury returned a verdict in favor of Zest, and the Court entered a judgment in the amount of $110 million.  The jury awarded $60 million as damages based upon a reasonable royalty damages theory and $50 million as exemplary damages.

46.     WSL and its lawyers then sought to recover attorney's fees but without any support for the request in the form of time records. Walmart demanded to see the time records, which is commonly required in connection with any fee request, and the Court promptly ordered WSL to provide its time records to Walmart. During the course of reviewing those records, Walmart discovered that Zest's lawyers had, indeed, seen and reviewed its provisional patent application during the course of discovery – contrary to the sworn affidavit they submitted to the Court.

Certified Document Number: 124493177 - Page 9 of 15

47.     Walmart moved for sanctions. After additional briefing and argument on the issue, the Court withdrew the judgment in favor of Zest. It permitted Zest to obtain new counsel to re-try the case, which Zest did.  The new trial was to be a re-do, without adding any new theories and issues, except for the consent defense that Walmart could raise based upon Zest's lawyers having seen and reviewed the provisional patent application before publication.

**F.  Zest's Second Trial Against Walmart.**

48.     Almost immediately upon their engagement, Zest's new counsel recognized V&E's failure to develop or pursue the research and development cost damages model.  Zest's replacement counsel attempted to add the research and development cost damages theory, but the Court warned the parties that the second trial would be a re-do, mirroring the same issues raised in the first trial. The Court denied additional discovery, but the new counsel introduced evidence at trial regarding Zest's research and development costs and sought to include the element of damages in their draft jury verdict form.

49.     Walmart opposed the alternative research and development cost damages request on the basis that it had not been previously disclosed or pursued in the case, and the Court ultimately refused to submit any damages question or instructions to the jury regarding Zest's research and development costs.

50.     The jury again returned a verdict in favor of Zest on the basis of a reasonable royalty amount and awarded exemplary damages based upon 2x the actual damages, this time for a total of nearly $220 million ($72.7 million in actual damages and $150 million in punitive damages).[2]

---

[2] The jury actually awarded more in punitive damages than permissible under the 2x actual damage cap.

Certified Document Number: 124493177 - Page 10 of 15

51.     While the verdict was higher than the first trial, it was still at least $67.3 million short of what Zest should have recovered had Defendants pursued the $140 million research and development costs as an actual damages model.  But without that damage model in Zest's expert report, interrogatory responses, or in the record from the first trial, Zest's new counsel was unable to pursue those additional, real damages that Zest suffered in the second trial.  Moreover, Zest was unable to seek an additional $130 million in exemplary damages. While punitive damages are capped at 2x actual damages, that cap would have been much higher had the research and development cost actual damages been available to Zest.  All told, Zest could have, and likely would have, recovered a $420 million judgment, not a $220 million judgment, absent Defendants' malpractice had the jury applied the same 2x multiplier in awarding punitive damages.

**G.  Defendants' Excessive and Unconscionable Billing.**

52.     Defendants charged Zest over $13 million for their work on the underlying case against Walmart. The fees include excessive hourly rates, charges for unreasonable time spent on basic tasks, unnecessary duplicative billing, inflated time spent on the case, all to say nothing of how much Zest could have saved by simply seeking the most obvious and basic damage model available to it.

53.     Incredibly, over 17 different associates worked on the case, and, by way of just one example, Defendants charged for 200 hours of preparing for a deposition and 19.9 additional hours preparing the witness for the deposition, while the witness testified under oath that he prepared with counsel for only 6 hours. More than doubling actual hours spent appears to be commonplace throughout Defendants' billing records.

Certified Document Number: 124493177 - Page 11 of 15

## CAUSES OF ACTION

### COUNT 1: NEGLIGENCE

54.     Plaintiffs incorporate by reference and re-allege each of the allegations contained in the foregoing paragraphs.

55.     Defendants were obligated to perform their legal services with the same degree of skill, care, attention, effort, and diligence that a reasonably prudent lawyer would use in handing a trade secret misappropriation case. By the conduct outlined above, including by failing to develop and seek recovery of Plaintiffs' research and development costs, Defendants failed to abide by the applicable standard of care.

56.     Defendants' negligence proximately caused Plaintiffs substantial damages.

### COUNT II:  BREACH OF FIDUCIARY DUTY

57.     Plaintiffs incorporate by reference and re-allege each of the allegations contained in the foregoing paragraphs.

58.     As Zest's legal counsel, Defendants owed Plaintiffs fiduciary duties of loyalty, utmost good faith, fair, honest dealing, integrity of the strictest kind, and the obligation to refrain from self-dealing.

59.     Defendants breached their fiduciary duties to Zest by inflating their billable hours and charging excessive fees for their legal services. These breaches proximately caused Plaintiffs damages and resulted in a wrongful benefit to Defendants such that their fees should be forfeited.

### EXEMPLARY DAMAGES

60.     Plaintiffs incorporate by reference and re-allege each of the allegations contained in the foregoing paragraphs.

Certified Document Number: 124493177 - Page 12 of 15

61.     Defendants' breaches of fiduciary duty were willful and done with malice and/or gross negligence. Defendants are therefore liable for exemplary damages.

## VICARIOUS LIABILITY

62.     At all material times, the individual Defendants Williams, Simons, and Landis were partners at V&E and then at WSL. Defendant Hardt was a senior associate at V&E and later a partner at WSL.  The liability of the individual Defendants and the law firms of V&E and WSL is therefore vicarious and joint and several. All of the Defendants, whether acting directly, indirectly or vicariously through agents, partners or employees, acted as attorneys for Plaintiffs at all times material to the causes of action asserted herein.

## TOLLING OF LIMITATIONS

63.     Any applicable statute of limitations must be tolled in accordance with the Hughes Tolling Rule, fraudulent concealment, agreement by the parties, and equitable estoppel.

## RULE 47 STATEMENT OF DAMAGES

64.     Plaintiffs seek damages over $1,000,000.

## REQUEST FOR DISCLOSURE

65.     Pursuant to Texas Rule of Civil Procedure 194, Plaintiff requests that each Defendant disclose the information and material described in Rule 194.2(a) - (l) within 50 days of service of this request.

## REQUEST FOR JURY TRIAL

66.     Plaintiff demands a trial by jury and has paid the applicable fee simultaneously with the filing of this Petition.

**<u>PRAYER</u>**

Plaintiffs pray for a final judgment against Defendants that includes the following relief:

    a.  all categories of damages recoverable at law or equity, including compensatory, actual, direct, and incidental damages resulting from Defendants' conduct and breaches;

    b.  fee forfeiture;

    c.  exemplary damages;

    d.  pre-judgment and post-judgment interest;

    e.  court costs, and

    f.  all other relief to which Plaintiffs are entitled, whether at law or in equity.

Dated: January 8, 2026

Respectfully submitted,

**WYNNE LAW PLLC**

    /s/ David E. Wynne
David E. Wynne
Texas State Bar No. 24047150
Ken Wynne
Texas State Bar No. 22110000
1800 Bering Dr., Suite 1075
Houston, TX 77057
713-227-8835 (office)
713-227-6205 (facsimile)
dwynne@wynnepllc.com
kwynne@wynnepllc.com

Certified Document Number: 124493177 - Page 14 of 15

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Linda Parish on behalf of David Wynne
Bar No. 24047150
lparish@wynnepllc.com
Envelope ID: 109819058
Filing Code Description: Petition
Filing Description: Plaintiffs' Original Complaint
Status as of 1/8/2026 1:19 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David Wynne | | dwynne@wynnepllc.com | 1/8/2026 1:17:30 PM | SENT |
| Kenneth Wynne | | kwynne@wynnepllc.com | 1/8/2026 1:17:30 PM | SENT |
| Linda Parish | | lparish@wynnepllc.com | 1/8/2026 1:17:30 PM | SENT |



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   <u>January 9, 2026</u>


Certified Document Number:        <u>124493177 Total Pages:  15</u>


Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS


**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

Case 2:26-cv-00426ARGDocument Document Filed 01/09/26 Page 1 of 1

1/8/2026 1:17:30 PM
Marilyn Burgess — District Clerk
Harris County
Envelope No: 109819058
By: MATTHEWS, CHRISTOPHER O
Filed: 1/8/2026 1:17:30 PM

CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY)*: _____ Court *(FOR CLERK USE ONLY)*: _____

STYLED ____ ZEST LABS, INC., et al vs VINSON & ELKINS, LLP, et al

*(e.g. John Smith v. All American Insurance Co. In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| **Name:** David E. Wynne | **Email:** dwynne@wynnepllc.com | **Plaintiff(s)/Petitioner(s):** ZEST LABS, INC., et al | ☒ Attorney for Plaintiff/Petitioner ☐ Pro Se Plaintiff/Petitioner ☐ Title IV-D Agency ☐ Other: |
| **Address:** 1800 Bering Dr., Suite 1075 | **Telephone:** 713.227.8835 | | |
| **City/State/Zip:** Houston TX 77057 | **Fax:** 713.227.6205 | **Defendant(s)/Respondent(s):** VINSON & ELKINS, LLP, et al | **Additional Parties in Child Support Case:** **Custodial Parent:** _____ **Non-Custodial Parent:** _____ **Presumed Father:** _____ |
| **Signature:** /s/ David E. Wynne | **State Bar No:** 24047150 | | |

*(Attach additional page as necessary to list all parties)*

**2. Indicate case type, or identify the most important issue in the case** *(select only 1)*:

| Civil | | | Family Law |
|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** / **Post-judgment Actions (non-Title IV-D)** |

| Contract | Injury or Damage | Real Property | Marriage Relationship | Post-judgment Actions (non-Title IV-D) |
|---|---|---|---|---|
| *Debt/Contract* ☐ Consumer/DTPA ☐ Debt/Contract ☐ Fraud/Misrepresentation ☐ Other Debt/Contract: | ☐ Assault/Battery ☐ Construction ☐ Defamation *Malpractice* ☐ Accounting ☒ Legal ☐ Medical ☐ Other Professional Liability: | ☐ Eminent Domain/ Condemnation ☐ Partition ☐ Quiet Title ☐ Trespass to Try Title ☐ Other Property: | ☐ Annulment ☐ Declare Marriage Void *Divorce* ☐ With Children ☐ No Children | ☐ Enforcement ☐ Modification—Custody ☐ Modification—Other |
| *Foreclosure* ☐ Home Equity—Expedited ☐ Other Foreclosure ☐ Franchise ☐ Insurance ☐ Landlord/Tenant ☐ Non-Competition ☐ Partnership ☐ Other Contract: | ☐ Motor Vehicle Accident ☐ Premises *Product Liability* ☐ Asbestos/Silica ☐ Other Product Liability List Product: _____ ☐ Other Injury or Damage: | **Related to Criminal Matters** ☐ Expunction ☐ Judgment Nisi ☐ Non-Disclosure ☐ Seizure/Forfeiture ☐ Writ of Habeas Corpus— Pre-indictment ☐ Other: | **Title IV-D** ☐ Enforcement/Modification ☐ Paternity ☐ Reciprocals (UIFSA) ☐ Support Order | |
| | | | **Other Family Law** ☐ Enforce Foreign Judgment ☐ Habeas Corpus ☐ Name Change ☐ Protective Order ☐ Removal of Disabilities of Minority ☐ Other: | **Parent-Child Relationship** ☐ Adoption/Adoption with Termination ☐ Child Protection ☐ Child Support ☐ Custody or Visitation ☐ Gestational Parenting ☐ Grandparent Access ☐ Parentage/Paternity ☐ Termination of Parental Rights ☐ Other Parent-Child: |

| Employment | Other Civil | |
|---|---|---|
| ☐ Discrimination ☐ Retaliation ☐ Termination ☐ Workers' Compensation ☐ Other Employment: | ☐ Administrative Appeal ☐ Antitrust/Unfair Competition ☐ Code Violations ☐ Foreign Judgment ☐ Intellectual Property | ☐ Lawyer Discipline ☐ Perpetuate Testimony ☐ Securities/Stock ☐ Tortious Interference ☐ Other: |

| Tax | Probate & Mental Health | |
|---|---|---|
| ☐ Tax Appraisal ☐ Tax Delinquency ☐ Other Tax | *Probate/Wills/Intestate Administration* ☐ Dependent Administration ☐ Independent Administration ☐ Other Estate Proceedings | ☐ Guardianship—Adult ☐ Guardianship—Minor ☐ Mental Health ☐ Other: |

**3. Indicate procedure or remedy, if applicable** *(may select more than 1)*:

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court ☐ Arbitration-related ☐ Attachment ☐ Bill of Review ☐ Certiorari ☐ Class Action | ☐ Declaratory Judgment ☐ Garnishment ☐ Interpleader ☐ License ☐ Mandamus ☐ Post-judgment | ☐ Prejudgment Remedy ☐ Protective Order ☐ Receiver ☐ Sequestration ☐ Temporary Restraining Order/Injunction ☐ Turnover |

**4. Indicate damages sought** *(do not select if it is a family law case)*:

☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☐ Over $100, 000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
☒ Over $1,000,000



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   <u>January 9, 2026</u>

Certified Document Number:          <u>124493178 Total Pages:  1</u>

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Exhibit 2

(Plaintiff's Original Complaint filed in *Williams Simons & Landis PC v. RiskOn International, Inc., et al.*, Case No. 26-cv-00034 (W.D. Tex.))

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **WILLIAMS SIMONS & LANDIS PC,** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No.** <u>1:26-cv-00034</u> |
| | § | |
| | § | |
| **RISKON INTERNATIONAL, INC. F/K/A** | § | |
| **ECOARK HOLDINGS, INC., ECOARK,** | § | |
| **INC., ZEST LABS HOLDINGS LLC, ZEST** | § | |
| **LABS, INC., F/K/A INTELLEFLEX CORP.,** | § | |
| **AND BARTKO PAVIA LLP,** | § | |
| | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

Plaintiff Williams Simons & Landis PC ("**WSL**" or "**Plaintiff**") files this Original Complaint ("**Complaint**") against RiskOn International, Inc. (formerly known as Ecoark Holdings, Inc.), Ecoark, Inc., Zest Labs Holdings LLC, Zest Labs, Inc. (formerly known as Intelleflex Corporation) (collectively, "**Claimant-Defendants**"), and Bartko Pavia LLP (collectively, "**Defendants**") on personal knowledge as to the facts concerning itself and on information and belief as to all other facts as follows:

# I.
## PRELIMINARY STATEMENT

1.    This action arises from Claimant-Defendants' refusal to pay earned and contractually owed attorneys' fees and expenses to Williams Simons & Landis PC ("**WSL**") for legal services that produced extraordinary results, including landmark jury verdicts and a massive settlement against Walmart Inc. After securing the benefit of WSL's work, Claimant-Defendants undertook a concerted course of conduct to avoid payment, conceal settlement proceeds, and place assets beyond WSL's reach.

2.    WSL was retained to prosecute high-stakes litigation on behalf of Claimant-Defendants against Walmart, Inc. ("**Walmart**") under written engagement agreements that expressly provided for payment of fees and expenses, including contingent compensation triggered by any recovery. WSL fulfilled its obligations, advancing the litigation through trial and obtaining a nine-figure verdict, preserving claims through retrial, all of which generated immense value for Claimant-Defendants. Rather than honor their contractual commitments once recovery was achieved, Claimant-Defendants refused to pay, in conjunction with Bartko withheld critical information regarding settlement proceeds and restructured their affairs in an effort to circumvent WSL's contractual and equitable rights.

3.    Moreover, after WSL's entitlement to fees accrued, Claimant-Defendants transferred ownership interests, diverted or concealed settlement proceeds, and enlisted successor entities and Bartko to interfere with WSL's contractual rights. These actions were designed to prevent WSL from learning of, tracing, or recovering fair compensation.

4.    This lawsuit seeks to enforce written agreements, recover unpaid fees and expenses, and obtain equitable relief necessary to account for and trace settlement proceeds wrongfully withheld. At its core, this case is straightforward: Claimant-Defendants obtained the benefit of

WSL's work, realized substantial recoveries, and now refuse to pay what they owe. Texas law does not permit clients, their successors, or their agents to retain the fruits of legal services while evading contractual and equitable obligations. WSL brings this action to recover the compensation it earned and to ensure that Defendants are held accountable under Texas law.

## II.
## THE PARTIES

5.  Plaintiff is a Texas professional entity licensed and registered to do business in the State of Texas with its principal office located in Austin, Travis County, Texas.

6.  Defendant RiskOn International, Inc., formerly known as Ecoark Holdings, Inc., ("**Ecoark Holdings**") is a Nevada corporation with its principal place of business in Las Vegas, Nevada, that may be served with process through its registered agent, Corporate Creations Network Inc., 112 North Curry Street, Carson City, NV, 89703, USA.[1]

7.  Defendant Ecoark, Inc., ("**Ecoark**") is a Delaware corporation. Ecoark may be served with process through its successor entity, Zest Lab Holdings, LLC, at 112 North Curry Street, Carson City, NV, 89703.[2]

8.  Defendant Zest Labs Holdings LLC, ("**Zest Holdings**") is a Nevada limited liability company with its principal place of business in Nevada, that may be served with process at its registered agent, Corporate Creations Network Inc., 112 North Curry Street, Carson City, NV, 89703, USA.

---

[1] Ecoark Holdings was the parent of Ecoark, Inc., and a party to the agreement between Ecoark, Inc. and Zest Labs, Holdings, LLC, dated August 25, 2023, that facilitated the sale of Zest Labs, Inc. to Zest Labs, Holdings, LLC.

[2] At the time of the execution of the contracts and the wrongful conduct at issue in this case, Ecoark was the parent company of Zest Labs, Inc. On or about August 25, 2023, Ecoark sold 100% of its outstanding share of capital stock of Zest Labs, Inc. to Zest Lab Holdings, LLC.

9.      Defendant Zest Labs, Inc., formerly known as Intelleflex Corporation, ("**Zest Labs**") is a Delaware corporation, with its principal place of business in San Jose, California, that may be served with process at its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.[3]

10.     Defendant Bartko Pavia LLP ("**Bartko**") is a New York limited liability partnership, with its principal place of business in San Francisco, California, that may be served with process at its registered agent, The Partnership, 555 Madison Avenue, 11th Floor, New York, New York 10022.

### III.
### RELEVANT NON-PARTIES

11.     Vinson & Elkins, LLP ("**V&E**"), a law firm with its headquarters located at Texas Tower, 845 Texas Avenue, Suite 4700, Houston, Texas 77002.

12.     Walmart, Inc., a company with its headquarters located at 702 SW 8th Street in Bentonville, Arkansas 72716.

### IV.
### JURISDICTION

13.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks damages well in excess of $10 million.

---

[3] At the time of the execution of the contracts and the conduct giving rise to this action, Zest Labs was a subsidiary of Ecoark, Inc. Zest Holdings now wholly owns Zest Labs.

14.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's state-law claims because those claims form part of the same case or controversy as the claims over which this Court has original jurisdiction.

15.     Defendants are subject to personal jurisdiction in Texas because they purposefully availed themselves of the privilege of conducting business in Texas, including, without limitation, by:

    a.   entering into and performing contracts with a Texas law firm headquartered in Austin;

    b.   directing communications, misrepresentations, and payment obligations into Texas;

    c.   maintaining corporate headquarters and principal operations in Texas during key periods relevant to the claims; and

    d.   intentionally interfering with Texas-based contracts and directing tortious conduct at a Texas plaintiff, with knowledge that the injury would occur in Texas.

16.     The exercise of personal jurisdiction over Defendants comports with the Texas long-arm statute and with the requirements of due process under the United States Constitution.

**V.**
**VENUE**

17.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events and/or omissions giving rise to this action occurred within the Western District of Texas, including, without limitation, by:

    a.   negotiation and execution of the relevant engagement agreements;

    b.   performance of legal services by Plaintiff from its Austin headquarters;

    c.   direction of fraudulent misrepresentations and payment-related communications into Austin; and

    d.   Plaintiff's suffering of financial injury in this District.

18.     The Austin Division is a proper and convenient venue because Plaintiff is headquartered in Austin, Travis County, Texas, and because many of the witnesses, documents, and operative facts relevant to this dispute are located in or connected to this Division.

**VI.**
**FACTUAL BACKGROUND**

**a.     Prelude: Claimant-Defendants Retain WSL to Pursue High-Stakes Litigation**

19.     In early 2018, a representative for Zest Labs and Ecoark Holdings contacted Fred I. Williams seeking representation in connection with matters involving potential trade secrets claims against Walmart, Inc. Mr. Williams relayed the situation to his law partners at V&E.

20.     Over the ensuing months, Mr. Williams and his colleagues began evaluating the potential claims. Shortly thereafter, Claimant-Defendants formally retained V&E to investigate and prosecute their claims against Walmart.

21.     After several weeks of discussion, the Parties agreed to a hybrid fee structure: part contingent, part funded through third party litigation financing. Under the agreement, the law firm was expressly entitled to retain any fees paid by the funder regardless of the outcome.

22.     Thereafter, V&E (including the law partners who would later come to represent Claimant-Defendants in their lawsuits against Walmart and Deloitte Consulting LLP ("**Deloitte**") at WSL) began to assess the relevant legal issues.

23.     On or about July 31, 2018, Claimant-Defendants entered into a contract via an engagement letter with V&E for legal representation in a trade secret lawsuit against Walmart ("**Walmart Case**"). The engagement letter among Ecoark Holdings, Zest Labs, and V&E is herein after referred to as the "**Walmart V&E Agreement**". The Walmart V&E Agreement provides that the representation will be handled partially on a contingent fee basis while another portion of the fees will be paid by Harbour Litigation Funding (the "**Funder**") under an Investment Agreement—

irrespective of the outcome of the case. The agreement provides that the law firm is entitled to keep any fees paid by the Funder.

24.    The Walmart V&E Agreement provides that if Claimant-Defendants discharge the law firm and later obtain a "Recovery," the clients agree to pay the firm "in addition to the fees and expenses [the firm] received from the Funder, a reasonable contingency fee, plus any unreimbursed portion of any expenses and other costs, related to the legal service [the firm] provide prior to [its] discharge."

25.    On or about August 1, 2018, Ecoark Holdings, Zest Labs, and V&E entered into an Investment Agreement with Harbour Fund IV, LLC ("**Harbour**"), to provide litigation funding for the Walmart Case. The only parties that could "breach" the Investment Agreement are Ecoark Holdings, Zest Labs, and Harbour. The Investment Agreement provided for total attorneys' fees and costs in the amount of $11,245,000. Specifically, the agreement provided for $9,015,000 in total attorneys' fees with $330,000 allocated for fees of local counsel, and $2,230,000 in total costs with $1,225,000 allocated for expert costs.

26.    For more than a year, V&E zealously worked on the Walmart case. On or about November 22, 2019, Ecoark Holdings Chairman Randy May and Zest CEO Peter Mehring met with the Mr. Williams and two other lawyers who were planning to depart V&E by the end of 2019. They discussed that upcoming departure and the fact that the lawyers intended to open their own firm, which would become WSL. Eager to ensure that they could continue to receive exemplary legal services, Zest Labs and Ecoark Holdings orally agreed to retain the new law firm to represent the plaintiffs in the Walmart Case and WSL promised zealous advocacy.

### b. Paradise: WSL Delivers Extraordinary Results

27. On or about January 2020, attorneys Fred I. Williams, Michael Simons, and Todd Landis, former V&E attorneys who worked on the Walmart Case, opened the doors to their own firm, WSL. Through WSL, the three attorneys provide high caliber legal services designed to cater to the unique needs of clients engaging in complex commercial disputes. Having recognized the value created by WSL, Claimant-Defendants immediately sought to retain their services. On or about January 4, 2020, WSL was formally retained by Claimant-Defendants, as one of the firm's inaugural clients, to represent them in the Walmart Case. The contract via engagement letter was on the same terms as had been agreed between the clients and V&E in the V&E Walmart Agreement. The engagement agreement among Ecoark Holdings, Zest Labs, and WSL for the Walmart Case herein after referred to as the "**WSL Walmart Agreement**".

28. Thereafter, on or about February 14, 2020, Claimant-Defendants "irrevocably direct[ed] that all Proceeds received pursuant to the Proceedings [in the Walmart Case] shall be paid to the client account of Williams Simons & Landis PLLC and disbursed accordingly" as required by Schedule 6 to the Investment Agreement.

29. From its retention in January 2020 through 2024, WSL devoted extraordinary time, skill, and resources to the Walmart Case, advocating for its clients and delivering exceptional results.

30. On April 13, 2021, less than three years after their initial engagement, **WSL delivered on its promises**. WSL obtained a $115 million jury verdict and judgment in the case against Walmart in Walmart's home forum. To avoid paying the judgment, Walmart levied numerous allegations against Claimant-Defendants, and their lawyers in an attempt to escape liability.

        **i.**      **Claimant-Defendants Enter into Contract with WSL for Deloitte Case.**

31.     Following this achievement, WSL was contacted by Claimant-Defendants about representing them in a previously filed lawsuit against Deloitte (the "**Deloitte Case**"). At the time, Claimant-Defendants were eager to continue working with WSL on cases in hopes that they could replicate their previous success. In an effort to persuade WSL to take on this additional case, Claimant-Defendants represented to WSL that they had $500,000 set aside to pay WSL's fees and expenses in the case against Deloitte.

32.     Relying on Claimant-Defendants' assurances, WSL expanded the scope of their representation via the engagement letter dated March 1, 2023. The engagement agreement among Ecoark Holdings, Zest Labs, and WSL for the Deloitte Case herein after referred to the "**Deloitte Agreement**". WSL thereafter provided substantial legal services in connection with the Deloitte matter.

33.     The relevant fee terms in the Deloitte Agreement provide that Zest Labs and Ecoark Holdings "will pay WSL $500,000 on an hourly basis. The Deloitte Agreement provides that WSL may use these funds for expenses related to the Lawsuit, or may bill [Zest Labs and Ecoark Holdings] for WSL's fees on a monthly basis."

34.     From the date of its retention in the Deloitte Case until the case was dismissed, WSL provided professional legal services of significant value to its clients and zealously advocated for the best outcome. Despite these efforts, full payment was not made.

**c.**     **Trouble in Paradise: Claimant-Defendants Contrive Reasons Not to Pay Earned Fees.**

35.     Beginning in 2023, Claimant-Defendants claimed that they lacked funds to pay the outstanding invoices for WSL's work in the Deloitte Case.

36.     On December 22, 2023, the Arkansas court ordered a new trial against Walmart set for 2025. Claimant-Defendants retained Defendant Bartko and others as new counsel in 2024 to represent the plaintiffs at retrial. WSL dutifully assisted the new lawyers in taking over the Walmart Case.

37.     In early 2024, Bartko Co-Managing Partner Patrick Ryan initiated a telephone conversation with Fred I. Williams. During that call, Mr. Ryan asked if WSL would agree to waive its claim over its entitlement to fees in an amount exceeding *__$10 million__* accrued in the Walmart Case—Mr. Williams declined. Mr. Williams also disclosed to Mr. Ryan that Claimant-Defendants also owed WSL for approximately $300,000 in legal fees incurred in the Deloitte Case and expressed willingness to be practical in resolving the issues of fees and expenses due and payable to WSL.  Mr. Ryan did not respond at any time thereafter.

38.     Later, in August 2024, after years of repeatedly praising and expressing appreciation for WSL's work in the Walmart Case, Claimant-Defendants claimed dissatisfaction as a pretext to not pay WSL.

39.     Claimant-Defendants hired a Texas lawyer to suggest strategic claims of negligence, which were directed to current and former partners of WSL and V&E in Texas. Those complaints were unfounded and constituted a transparent attempt to gain leverage in Claimant-Defendants quest to avoid paying for legal services provided by WSL and others.

40.     However, WSL's quality proved irreplaceable. On May 13, 2025, an Arkansas jury returned a $223 million verdict in favor of the plaintiffs in the retrial of the Walmart Case—**using the same evidentiary record originally created by WSL**. Thereafter, on August 12, 2025, following settlement of the entire dispute against Walmart, the Arkansas court dismissed that case with prejudice and entered no sanctions in response to Walmart's previous requests for same.

d.   **Paradise Lost: Defendants Leave WSL High and Dry.**

41.     While Zest Labs, Ecoark Holdings, and Walmart refuse to disclose the amount of their settlement, on information and belief, it involves a multi-million-dollar payment from Walmart. That payment triggers the right of WSL to be paid additional amounts for its work and expenses in the Walmart Case in an amount to be determined by the Court.

42.     Despite demand, representatives of Claimant-Defendants have refused to make payment for WSL's work and expenses in both the Walmart and Deloitte Cases. Their refusal is a transparent and baseless money grab to avoid the financial obligations of their clients and of their clients' affiliates, investors, and co-conspirators. However, WSL's quality and impact on the resolution of those cases are undeniable and inseparable from the outcome.

43.     WSL's legal services were a substantial factor in producing the verdicts, leverage, and settlement proceeds obtained in the Walmart litigation, and Defendants' continued refusal to account for or remit those proceeds has caused and continues to cause substantial harm to WSL.

## VII.
## CAUSES OF ACTION

### COUNT I:  BREACH OF CONTRACT – WALMART CASE
### (AGAINST ZEST LABS, ECOARK HOLDINGS, AND ZEST HOLDINGS)

44.     WSL repeats and re-alleges all prior paragraphs by reference.

45.     WSL, Zest Labs, Inc., and Ecoark Holdings, Inc. entered into a valid, binding, and enforceable written contract in the form of the WSL Walmart Engagement Agreement (the "**WSL Walmart Agreement**").

46.     Under the WSL Walmart Agreement, WSL agreed to provide extensive legal services in exchange for payment of attorneys' fees and expenses, including contingent fees triggered upon any recovery obtained in the Walmart litigation.

47. All conditions precedent to Claimant-Defendants' obligation to pay, and WSL's right to payment, under the WSL Walmart Agreement have occurred, been satisfied, or have been waived, including the achievement of a recovery in the Walmart litigation and WSL's performance of the legal services giving rise to its contractual fee entitlement.

48. WSL fully performed, or in the alternative substantially performed, all of its material obligations under the WSL Walmart Agreement, including investigating, prosecuting, and advancing the Walmart litigation through trial, post-trial proceedings, and retrial preparation resulting in extraordinary verdicts and settlement with Walmart.

49. Claimant-Defendants materially breached the WSL Walmart Agreement by, among other things:

    a. failing and refusing to pay attorneys' fees and expenses owed to WSL;

    b. failing to pay WSL's contingent fee and other compensation triggered by recovery in the Walmart litigation; and

    c. refusing to account for or disclose settlement proceeds necessary to calculate and satisfy WSL's contractual fee rights.

50. Despite demand, Claimant-Defendants have failed and refused to cure their breaches.

51. As a direct and proximate result of Claimant-Defendants' breaches, WSL has suffered damages in an amount to be determined at trial, including unpaid attorneys' fees, contingent fees, reimbursable expenses, interest, and other damages recoverable under Texas law.

52. WSL is entitled to recover its reasonable and necessary attorneys' fees incurred in enforcing the WSL Walmart Agreement pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 et seq., and hereby presents and tenders its claim for such fees.

53.    At least as of August 15, 2024, Defendant Zest Labs Holdings LLC ("**Zest Holdings**") acquired all issued and outstanding ownership interests in Zest Labs, Inc., assumed or continued the business operations and benefits arising from the Walmart litigation, and accepted the benefits of WSL's legal services, including the recovery generated thereby.

54.    As a result, Zest Holdings is liable for the breaches alleged herein as a successor in interest, under theories including express or implied assumption of liabilities, continuation of enterprise, and receipt of benefits under the contract, and is therefore jointly and severally liable for WSL's damages.

### COUNT II:  BREACH OF CONTRACT – DELOITTE CASE
### (AGAINST ZEST LABS, ECOARK HOLDINGS, AND ZEST HOLDINGS)

55.    WSL repeats and re-alleges all prior paragraphs by reference.

56.    WSL, Zest Labs, Inc., and Ecoark Holdings, Inc. entered into a valid, binding, and enforceable written contract in the form of the Deloitte Engagement Agreement, pursuant to which WSL agreed to provide legal services in connection with the Deloitte litigation in exchange for payment of attorneys' fees and expenses, including up to $500,000 in hourly fees and reimbursable costs.

57.    All conditions precedent to WSL's right to payment under the Deloitte Agreement have occurred, been satisfied, or have been waived, including WSL's provision of legal services, issuance of invoices, and Defendants' receipt and acceptance of those services.

58.    WSL fully performed, or in the alternative substantially performed, all material obligations required of it under the Deloitte Agreement, including providing extensive legal services that advanced and preserved Claimant-Defendants' claims in the Deloitte litigation.

59.     Claimant-Defendants' materially breached the Deloitte Agreement by, among other things, failing and refusing to pay attorneys' fees and expenses owed to WSL, including invoiced fees and expenses totaling less than $500,000, despite prior representations that funds had been set aside for that purpose.

60.     Claimant-Defendants' failure to pay was not the result of any billing dispute or performance deficiency, but a refusal to honor their payment obligations after receiving the full benefit of WSL's services. Despite demand, Claimant-Defendants have failed and refused to cure their breaches.

61.     As a direct and proximate result of Claimant-Defendants' breaches, WSL has suffered damages in an amount to be determined at trial, including unpaid attorneys' fees, reimbursable expenses, interest, and other damages recoverable under Texas law.

62.     WSL is entitled to recover its reasonable and necessary attorneys' fees incurred in enforcing the Deloitte Agreement pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 et seq., and hereby presents and tenders its claim for such fees.

63.     At least as of August 15, 2024, Defendant Zest Labs Holdings LLC ("**Zest Holdings**") acquired all issued and outstanding ownership interests in Zest Labs, Inc., continued the business operations and benefits associated with the Deloitte litigation, and accepted the benefits of WSL's legal services provided under the Deloitte Agreement.

64.     As a result, Zest Holdings is liable for the breaches alleged herein as a successor in interest, under theories including express or implied assumption of liabilities, continuation of enterprise, and receipt of benefits under the Deloitte Agreement, and is therefore jointly and severally liable for WSL's damages.

## COUNT III:  TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
## (AGAINST BARTKO)

65.     WSL repeats and re-alleges all prior paragraphs by reference.

66.     There is a valid and enforceable contract in the form of the WSL Walmart Agreement.

67.     Bartko was aware of the existing WSL Walmart Agreement that was entered into among WSL, Ecoark Holdings, and Zest Labs. Bartko was also aware of the Deloitte Agreement that was entered into among WSL, Ecoark Holdings, and Zest Labs; it is a valid and enforceable contract.

68.     Bartko, through its conduct and communications with Defendants, intentionally induced Claimant-Defendants to breach the WSL Walmart Agreement and the Deloitte Agreement by refusing to pay WSL and interfering with the required payment for its performance of legal services under the agreements. Bartko has refused to provide details about the settlement in the Walmart Case, including the amount of the settlement payment by Walmart. Bartko is refusing to provide this information for the purpose of preventing WSL from collecting payment for the legal services it provided under the WSL Walmart Agreement. Bartko and the Claimant-Defendants entered into an agreement providing Bartko a larger payment for its legal services provided in the Walmart Case, if payment for WSL's legal services provided under the WSL Walmart Agreement was not made or not made in full.  Bartko has refused to allow WSL to be paid for the legal services it rendered under the WSL Walmart Agreement and the Deloitte Agreement despite having received or controlled settlement funds from the Walmart Case through its trust account.

69.     Bartko was not merely advising Claimant-Defendants but actively controlling settlement funds, structuring payment priority, and refusing disclosure to benefit itself. This conduct was adverse to Claimant-Defendants' contractual obligations with Plaintiff.

70.     Bartko had an independent pecuniary motive to ensure that WSL was not paid to increase their take from the Walmart Case. Indeed, Bartko sought to get WSL to "walk away" from any compensation and otherwise took actions to ensure it received all of the attorney share of the settlement funds.

71.     Bartko's conduct was not undertaken in good-faith representation of its clients, but instead was outside the scope of legitimate legal services and motivated by Bartko's own independent pecuniary interests. Bartko acted as a direct economic competitor to WSL for a finite pool of settlement proceeds and knowingly prioritized its own compensation at the expense of WSL's vested contractual rights.

72.     Bartko's interference with the WSL Walmart Agreement and the Deloitte Agreement was intentional and without justification. But for Bartko's interference with and control over the settlement funds, WSL would have been paid its share.

73.     Bartko acted willfully, knowingly, and with callous indifference to WSL's rights. Bartko's conduct was driven by self-enrichment and involved deception, concealment, and misuse of its position as counsel to divert funds owed to another law firm. Such conduct warrants the imposition of exemplary damages under Texas law.

74.     WSL has suffered actual damages as a result of the breach of the WSL Walmart Agreement, including, at a minimum, nonpayment of fees and expenses owed under that agreement.

75.     WSL has suffered actual damages or loss as a result of the breach of the Deloitte Agreement, including, at a minimum, nonpayment of fees and expenses owed under that agreement.

76.    WSL has been damaged in an amount to be determined by the jury and further seeks punitive and exemplary damages as permitted by Texas law.

**COUNT IV: UNJUST ENRICHMENT**
**(AGAINST ALL DEFENDANTS)**

77.    WSL repeats and re-alleges all prior paragraphs by reference.

78.    This claim is ***pleaded strictly in the alternative*** to WSL's breach-of-contract claims, and only to the extent that any Defendant contends it is not bound by, did not assume, or is not liable under the written engagement agreements governing WSL's legal services.

79.    WSL conferred substantial, direct, and measurable benefits upon Defendants, including but not limited to:

    a.    the creation, prosecution, and preservation of valuable legal claims;

    b.    the procurement of extraordinary jury verdicts and settlement leverage; and

    c.    the generation of settlement proceeds and other recoveries derived from WSL's legal work.

80.    Defendants knowingly accepted, used, and retained these benefits, including by receiving, controlling, or benefiting from settlement proceeds and recoveries generated through WSL's services.

81.    Defendants obtained and retained these benefits under inequitable and wrongful circumstances, including through the concealment or diversion of settlement proceeds, interference with WSL's contractual rights, fraudulent transfers, and refusal to compensate WSL after recovery was achieved.

82.    Defendants' enrichment occurred at WSL's expense, as WSL has not been paid the reasonable value of the services and benefits it provided despite Defendants' retention and use of those benefits.

83. Under principles of equity and good conscience, Defendants should not be permitted to retain the benefits conferred by WSL without payment, and it would be unjust and inequitable for Defendants to do so.

84. As a result of Defendants' unjust enrichment, WSL has suffered damages in an amount to be determined at trial, including at least the reasonable value of the benefits conferred and retained by Defendants.

**VIII.**
**PRAYER FOR RELIEF**

85. **WHEREFORE**, WSL demands that judgment be entered against Defendants, jointly and severally, as follows:

   a. Actual damages in an amount to be determined at trial, including unpaid attorneys' fees, contingent fees, reimbursable expenses, and other compensatory damages recoverable under Texas law;

   b. Pre-judgment and post-judgment interest as permitted by law;

   c. Reasonable and necessary attorneys' fees incurred by WSL in prosecuting this action, pursuant to: (1) Tex. Civ. Prac. & Rem. Code § 38.001 et seq.; and (2) any other applicable statutory or equitable basis;

   d. Costs of court and taxable litigation expenses as allowed by law;

   e. An order requiring Defendants to provide a full and complete accounting of settlement proceeds, litigation recoveries, and fund transfers relating to the Walmart litigation;

   f. Exemplary and punitive damages, where permitted by law, for Defendants' willful, malicious, fraudulent, and tortious conduct; and

   g. Such other legal or equitable relief as the Court deems just and proper.

## IX.
### DEMAND FOR A JURY TRIAL

86.     WSL demands trial by jury on all issues so triable.


Dated:  January 8, 2026                    Respectfully submitted,


                                           **BREWER ATTORNEYS &
                                           COUNSELORS**

                                           By: */s/ Joshua H. Harris*
                                           William A. Brewer, III
                                           (Bar No. 02967035)
                                           wab@brewerattorneys.com
                                           Joshua H. Harris
                                           (Bar No. 2417306)
                                           jkh@brewerattorneys.com

                                           **Brewer, Attorneys & Counselors**
                                           1717 Main St., Suite 5900
                                           Dallas, TX 75201
                                           Tel: 214-653-4000

                                           ***Attorneys for Plaintiff Williams Simons &
                                           Landis PC***

Exhibit 3

(Order issued December 22, 2023 in *Zest Labs, Inc., et al., v. Walmart Inc.*, Case No. 18-cv-500 (E.D. Ark.))

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

ZEST LABS, INC., et al                         PLAINTIFFS

V.                   4:18CV00500 JM

WALMART INC.                           DEFENDANT

## <u>ORDER</u>

Pending are Walmart's Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for Remittitur or a New Trial (ECF No. 407);  Walmart's Motion to Dismiss, or Alternatively, for a New Trial and Accompanying Sanctions, and for Attorney's Fees (ECF No. 507); and Walmart's Motion to Unseal the Motion to Dismiss, or alternatively, for a New Trial and Accompanying Sanctions, and for Attorney's Fees and the Accompanying Brief (ECF No. 511).

Federal Rule of Civil Procedure 59(e) permits a party to move to alter or amend a judgment, upon a timely motion. *See* Fed. R. Civ. P. 59(e). A district court has broad discretion in determining whether to grant or deny a motion to alter or amend under Rule 59(e*). See U.S. v. Metro. St. Louis Sewer Dist*., 440 F.3d 930, 933 (8th Cir. 2006). Such motions are intended to correct manifest errors of law or fact, or to present newly discovered evidence. *See id.* The standard for Rule 59(e) and Rule 60(b)(2) motions, which seek relief from a final judgment or an order due to newly discovered evidence, are the same. *See id.*

To prevail, the movant must show: (1) the evidence was discovered after the proceeding; (2) due diligence was exercised to discover the evidence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence is such that it would likely produce a

different result. *See U.S. Xpress Enter., Inc. v. J.B. Hunt Transp., Inc.,* 320 F.3d 809, 815 (8th Cir. 2003).

As stated previously, Zest's failure to disclose that it had notice of Walmart's patent application before it was published is evidence that Walmart could not have discovered prior to trial. Walmart exercised due diligence to discover the evidence. However, the evidence was not made available to Walmart until Zest filed its motion for attorneys' fees on April 27, 2021. Regardless of the motive or lack thereof, the Court finds that Zest's failure to disclose that it had notice of Walmart's patent application before it was published was material and not merely cumulative or impeaching. After reviewing the post-trial discovery and having presided over the trial, the Court finds that this evidence would probably produce a different result at trial. After review of the pending motions, the thorough briefing of the issues, and the law, the Court finds that Walmart's motion for new trial pursuant to Rule 59 and Rule 60(b)(2) should be granted.

Walmart's motion for sanctions and attorneys' fees is taken under advisement. Walmart's motion to dismiss is taken under advisement. The parties are ordered to mediation within ninety (90) days before a private mediator or United States Magistrate Judge Patricia S. Harris.

Walmart's motion to unseal the Motion to Dismiss, or Alternatively for New Trial, and the Accompanying Brief is granted. The motion and brief do not include privileged material and there is no compelling reason to override the public's right to access the documents.

In conclusion, Walmart's Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for Remittitur or a New Trial (ECF No. 407) and Walmart's Motion to Dismiss, or Alternatively, for a New Trial and Accompanying Sanctions, and for Attorney's Fees (ECF No. 507) are GRANTED in part and DENIED in part. The Motion to Unseal (ECF No. 511) is GRANTED. The Clerk is directed to unseal ECF Nos. 507 and 508.

IT IS SO ORDERED this 22nd day of December 2023.

_____
UNITED STATES DISTRICT JUDGE

Exhibit 4

(Order issued October 23, 2024 in *Zest Labs, Inc., et al., v. Walmart Inc.*, Case No. 18-cv-500 (E.D. Ark.))

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**ZEST LABS, INC., et al**                                    **PLAINTIFFS**

**V.**                              **4:18CV00500 JM**

**WALMART INC.**                                     **DEFENDANT**

## ORDER

Pending are the motions to clarify filed by Plaintiffs and Plaintiffs' former counsel, Williams, Simons and Landis ("WSL"), Plaintiffs' motion for limited discovery and to modify scheduling order, and Walmart's motion for summary judgment.

Potential Sanctions

The Court is considering sanctions against Plaintiffs and Plaintiffs' former counsel, WSL, Michael Simons, Todd Landis, Jonathan Hardt, and Fred Williams for misrepresentations to the Court about Plaintiffs' and their counsels' knowledge of the Bohling patent application. The misrepresentation was made at various times to the Court about the timing of their knowledge of Walmart's application for the Bohling patent before trial, including docket entry # 247. In reliance on the misrepresentation or misrepresentations, the Court refused to allow Walmart to argue to the jury that Zest knew about the patent application and did not attempt to stop its publication. Walmart should have been allowed to make that argument at trial. The Court has found that Zest's failure to disclose that it had notice of Walmart's patent application before it was published was material and not merely cumulative or impeaching and that this evidence would probably produce a different result at trial. The Court has the inherent authority and authority under Rule 11 to order a party and its attorneys to pay sanctions in the form of attorneys' fees reasonably incurred because of a misrepresentation. In addition, the Court has

authority pursuant to 28 U.S.C. § 1927 to order an attorney to personally pay the opposing party's attorneys' fees where the attorney's conduct has multiplied the proceedings unreasonably.

In conclusion, the motions to clarify filed by Plaintiffs and WSL (ECF Nos. 566 and 570) are GRANTED. Walmart is directed to file the underlying invoices for the attorneys' fees requested by the Court. The remaining motions will be ruled upon separately.

IT IS SO ORDERED this 23rd day of October, 2024.

_____
James M. Moody Jr.
United States District Judge

Exhibit 5

(Order of Dismissal issued August 12, 2025 in *Zest Labs, Inc., ept al., v. Walmart Inc.*, Case No. 18-cv-500 (E.D. Ark.))

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

ZEST LABS, INC. f/k/a INTELLEFLEX
CORPORATION; ZEST LABS HOLDINGS
LLC, and RISKON INTERNATIONAL,
INC.,

                Plaintiffs,

v.                                    No. 4:18-CV-500-JM

WALMART INC. f/k/a WAL-MART
STORES, INC.,

                Defendant.

/

## ORDER OF DISMISSAL

Having considered the Stipulation of Dismissal (Dkt. 816) submitted by plaintiffs Zest
Labs, Inc. f/k/a Intelleflex Corporation, Zest Labs Holdings LLC, and Riskon International, Inc.,
(collectively "Zest") and defendant Walmart Inc. f/k/a Wal-Mart Stores, Inc. ("Walmart"), and
good cause appearing therefor, the Court approves the Stipulation of Dismissal, and Orders that
the above-captioned action is dismissed with prejudice pursuant to Fed.R.Civ.P. 41(a)(1), each
side to bear its or their own fees and costs, including attorneys' fees. This Order includes
dismissal of any sanctions claims or motions that either party may have against the other or their
attorneys.

The Clerk is directed to close the case.

**IT IS SO ORDERED**

DATED:  August 12th, 2025

                                    The Hon. James M. Moody